## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT HOLTON** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| vs. | : | |
| **BOBBY HENON** | : | |
| **and** | : | **NO.  18-2228** |
| **DARIN L. GATTI** | : | |
| **and** | : | |
| **EDWARD JEFFERSON** | : | |
| **and** | : | |
| **CITY OF PHILADELPHIA** | : | |
| **Defendants** | : | |

### SECOND AMENDED COMPLAINT
### JOINING CITY OF PHILADELPHIA

### I.
### JURISDICTION AND VENUE

1.       Jurisdiction is founded upon the Fifth and Fourteenth Amendments of the Constitution of the United States of America, Title 28 United States Code Section 1343(4), Title 28 United States Code Section 1331 and Title 42 United States Code Section 1983.

2.       Venue lies in this District in accordance with Title 28 United States Code Section 1391(b)(1), in that Bobby Henon, Darin L. Gatti, and Edward Jefferson reside in this District. City of Philadelphia, a municipal corporation having home rule, is located within this District.

### II.
### PARTIES

3.       At all times material to the claims set forth in this Complaint, Robert Holton ("Holton") was the owner of real estate in the City and County of Philadelphia, Commonwealth of Pennsylvania, where he operated a scrap metal and automobile salvage business.

4.       Bobby Henon is a member of City Council of the City of Philadelphia, District 6.

5.       Darin L. Gatti is Chief Engineer of the City of Philadelphia, and President, Board of Surveyors of the Philadelphia Streets Department.

6. Edward Jefferson is a Senior Attorney in the Housing and Code Enforcement Unit of the Office of the City Solicitor, City of Philadelphia Law Department.

7. City of Philadelphia is a municipality within the Commonwealth of Pennsylvania that has "Home Rule" as authorized by the laws of Pennsylvania.

## COUNT ONE

### PLAINTIFF vs. DEFENDANTS BOBBY HENON , EDWARD ABRAHAM, DARRIN L. GATTI , CIVIL CONSPIRACY TO DEPRIVE PLAINTIFF OF RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES OF AMERICA

8. Plaintiff owned a tract of land in the City of Philadelphia bounded by Richmond Street to the west, Delaware Avenue to the east, Conrail to the south and the Frankford Creek to the north (hereafter called the "Holton Property"). Plaintiff owned the Holton Property in fee, free and clear of mortgages, liens or other charges, except real estate taxes.

9. The Constitution of the United States, Fifth Amendment provides, in pertinent part: "…nor shall private property be taken for public use without just compensation."

10. Defendant, Henon, issued a press release on May 22, 2018, as follows:

> "On Tuesday, May 22, 2018, Councilmen Bobby Henon and various City and utility agencies shut-down an illegal junkyard. The junkyard is at 4087 Richmond Street. It has been operating on city-owned property for at least nine-years. Councilman Henon learned about this property early in his first term. He has sought to have the junkyard closed ever since." See Exhibit "A".

11. Councilman Henon is a policymaking official of the City of Philadelphia and has been such at all times material to the facts complained of in this action.

12. Plaintiff owns and operates a scrap metal business. The scrap metal is derived from wrecked automobiles and other sources. The Holton Property did not violate zoning ordinances, in that it is located in the least restrictive zoning district. At all times material to the

2

claims asserted in this action, Plaintiff had purchased and paid for all necessary licenses and permits needed to carry on his business with occasional minor exceptions, which when noted, were properly corrected.

13.     Henon, in concert with Defendants Jefferson and Gatti, conspired to unlawfully deprive Plaintiff of a large portion of the Holton Property without payment of just compensation as hereafter alleged.

14.     To effectuate the conspiracy herein alleged, Defendants relocated the lot lines of the Holton Property, took exclusive possession thereof, removed Plaintiff under threat of arrest for defiant trespass, removed valuable scrap metal consisting of damaged motor vehicles, parts and other components, and exercised dominion and control of the Holton Property on behalf of the City of Philadelphia.

15.     Henon's press release also states:

> "The property was fraudulently leased to the junkyard operator (referring to Plaintiff) by the owner of a nearby property. The person did not own the property and had no standing to lease it. The actions of this individual caused the need for a massive clean-up operation."

16.     At all times material to Count One, Plaintiff owned the Holton Property in fee, free and clear, pursuant to a Deed dated November 23, 2004, recorded May 16, 2004, Public Records of the City and County of Philadelphia Document ID No. 51079838 a true copy of which is attached hereto, and marked Exhibit "B", subject to a Declaration of Taking filed in the Court of Common Pleas for Philadelphia County on February 24, 2012 for a small portion of premises 4085 Richmond Street running along the east boundary, a distance of 5,733 square feet.

17.     Henon, a member of the legislative branch of the City of Philadelphia government, conspired with Jefferson and Gatti to carry out an illegal taking of Holton's

3

property in phases by issuance of citations for violations of regulatory ordinances, followed by orders to cease operations, followed by ordering PECO to shut off all power, and when Holton hired electricians to turn power back on, ordering PECO to disconnect entirely. Ultimately, on October 13, 2018, Gatti evicted Holton and caused the City of Philadelphia to relocate the lot lines, change Holton's address and confine him to a small segment that is land –locked.

18.     As a direct and proximate result of the foregoing, Plaintiff has been deprived of his ownership, use and possession of the property described in Exhibit "B" without payment of compensation therefor, in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

19.     As a further direct and proximate result of the foregoing, Plaintiff has lost possessions upon the property, and income derived therefrom, and has incurred attorney's fees to bring and prosecute this action, which are continuing.

**WHEREFORE,** Plaintiff demands judgment of and from Defendants individually, jointly and severally for damages in excess of the sum of One Hundred Fifty Thousand Dollars and reasonable attorney's fees.

## COUNT TWO

### PLAINTIFF vs. CITY OF PHILADELPHIA
### VIOLATION OF FIFTH AMENDMENT,
### CONSTITUTION OF THE UNITED STATES

20.     Plaintiff repeats, re-alleges and incorporates by reference the preceding averments of Count One.

21.     The City of Philadelphia (hereafter "the City") exercises authority over use and occupancy of real estate with its confines.

22.     The City has engaged in taking Plaintiff's property in increments over the past

4

four years by issuing Department of Licenses and Inspections ordinance violation notices where there were none, dispossessing Plaintiff's tenant, Kevin Creeden, issuing cease operations orders, disconnecting electrical service, providing inaccurate testimony in judicial proceedings, removing Plaintiff from use, occupancy and possession of real property owned by Plaintiff, and by confiscating valuable metal parts and salvage owned by Plaintiff.

23.     At all times material to the cause of action alleged herein, the City had actual knowledge of Plaintiff's ownership of property, derived from a Declaration of Taking of Plaintiff's property filed in the Court of Common Pleas for Philadelphia County, February Term 2012 No. 2885, recorded February 24, 2012, Document ID No. 52451525, Department of Records, City of Philadelphia.

24.     Plaintiff has prevailed with respect to all alleged violations of City Licenses and Inspections ordinances in the Court of Common Pleas, Philadelphia, County, Case No. 170902750.

25.     Notwithstanding, the City has taken Plaintiff's real property without offering to pay just compensation in violation of Amendment No. V. of the Constitution of the United States, and has deprived Plaintiff of Property without due process of law.

26.     On October 13, 2018, the City, acting through Defendant Gatti, police and other City workers took possession of Holton's property at 4085 Richmond Street and 3950 North Delaware Avenue using heavy equipment clearing out auto wrecks, trucks, and salvage parts, and removing all trace of Holton's former location.

**WHEREFORE,** Plaintiff demands damages of and from Defendants in an amount in excess of the sum of One Hundred Fifty Thousand Dollars and reasonable attorney's fees.

Date:   January 2**2**, 2019_____

JACK M. BERNARD, ESQUIRE
Attorney for Plaintiff
Attorney I.D. 26643
1550 Beacon Street
Apartment 6G
Brookline, MA 02446
Phone (484) 437-6804
jackbernard@verizon.net

6

# EXHIBIT "A"

http://www.philadelphiaweekly.com/news/amid-fbi-investigation-a-staff-shake-up-for-councilman-henon/article_87fd62a6-5ff6-11e7-b597-8fda54254bd0.html

# Amid FBI investigation, a staff shake-up for Councilman Henon

Max Marin   Jul 3, 2017

Photo: Jinsuk Kim, Monika Shayka/Philadelphia City Council

Three staffers have departed from City Councilman Bobby Henon's nine-person office amid an ongoing FBI investigation into the coun

Henon and John Dougherty, who leads the union (where Henon is also employed), hav than two years. City-funded legal counsel v raid on his office last year.



The departures occurred between March and April, according to City Council payroll; two of the three were recruited away by Mayor Jim Kenney's administration.

Christopher Creelman, who served as former Councilwoman Joan Krajewski's chief of staff before joining Henon's office in 2012, resigned in April. Kenney spokesperson Lauren Hitt said that the administration sought out Creelman to oversee capital projects in the Parks and Recreation department.

"He was recruited because of his 18 years of experience working on (improvements to existing city-owned facilities) projects for two different City Councilmembers," Hitt said via email.

Creelman earned $103,043-a-year as Henon's chief legislative aide. His new annual salary is $99,000.

Kenney's administration also sought out Henon's former communications director, Jolene Byzon, to handle communications the mayor's $500 million Rebuild initiative.

"We reached out to her to see if she would be interested in working on communications and community outreach for Rebuild," Hitt wrote. "She then went through two interviews before she was offered the job."

The third staffer, Christopher Dick, who had been Henon's director of research since 2012, resigned in April in order to continue his education.

Courtney Voss, Henon's longtime chief of staff, said the timing of the departures is coincidental.

"It is not uncommon for City Council staff to depart City Council employment and the Councilman has always encouraged staff to take opportunities to grow professionally and personally," Voss wrote in an email.

Byzon and Creelman did not return requests for comment.

Voss said that the three positions have recently been filled and that she anticipates adding one or two more positions this summer.

Indeed, Council offices have seen plenty of staff shakeups over the years, but the recent departures mean Henon has lost and replaced a third of his staff since the extraordinary August raid. While the Board of Ethics seized documents from former Councilwoman Donna Reed Miller's office in 2011, few political veterans in Philadelphia could recall the last time a council member's office was raided by the FBI.

The city's Law Department retained legal counsel on behalf of Henon's entire staff once news of the investigation became public.

Andrew Richman, chief of staff for City Solicitor Sozi Tulante, confirmed that legal counsel remai͟ on retainer for Henon's remaining staffers, as well as ex-staffers who were employed in the office at the time of the raid.

In addition to his six-figure salary as a Councilmember, Henon holds an untitled position on Local 98's payroll for which he earned $71,711 in 2015. It remains unclear what Henon's exact duties for the building trades union are, although he has said he reports directly to Dougherty.

The FBI had reportedly been wiretapping Henon's and Dougherty's personal phones as part of its investigation for more than a year before the raids last August. Last week, "intercept letters" were sent out to scores of people informing them that their calls with either the Councilman or the union leader had been picked up.

Two other individuals – Marita Crawford, the political director for Dougherty's union, and Joseph Ralston, a former investigator with state Attorney General's Office – were also wiretapped, according to the intercept letter.

Dougherty has maintained the the investigation is a smear campaign on his union. Henon has spoken little of the investigation.

**TWITTER: @MAXMMARIN**

Max Marin

From The Web

# EXHIBIT "B"

Fee Simple Deed

# *This Indenture*   *Made the*   23 rd *day of*

*November* *in the year of our Lord two thousand and four (2004)*

*Between*

**Albert Buoncristiano**

*(hereinafter called the Grantor(s), of the one part, and*

Robert Holton.

*(hereinafter called the Grantee(s), of the other part;*

*Witnesseth   That the said Grantor(s) for and in consideration of the sum of **One Hundred Fifty Thousand dollars and Zero cents, ( $150,000.00)** lawful money of the United States of America, unto him well a nd t ruly p aid b y t he s aid G rantee(s), a t a nd b efore t he s ealing a nd delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents does grant, bargain, sell, alien, enfeoff, release and confirm unto the said Grantee(s)*his heirs *and assigns,*

### SEE ATTACHED EXHIBIT A



**51079838**
**Page: 1 of 5**
12/16/2004 02 42PM

This Document Recorded
12/16/2004    State RTT    1,500 00
02 42PM       Local RTT    4,500 00
Doc Code  D       Commissioner of Records. City of Philadelphia

Doc Id. 51079838
Receipt #. 376101
Rec Fee: 74 50

# EXHIBIT A

**ALL THOSE TWO PARCELS** of land.

**SITUATE** in the 45th Ward of the City of Philadelphia, County of Philadelphia and Commonwealth of Pennsylvania, separately bounded and described according to two Plans of Surveys dated June 24, 1977 made by Barton and Martin Engineers, as follows; viz:

PREMISES "A"
**THE FIRST THEREOF,** designated PAL 101 034:

**BEGINNING** at a point which is located the two following courses and distances from the intersection of the South side of Delaware Avenue (150 feet wide) and the Northeast side of Lewis Street (60 feet wide); (1) along the Northeast side of Lewis Street (60 feet wide) crossing the former Delaware Avenue (150 feet wide) and the former Carbon Street (60 feet wide) North 32 degrees 24 minutes 23 seconds West, 650 feet 0 inches and (2) along the Northwest side of the former Carbon Street (60 feet wide) North 57 degrees 35 minutes 37 seconds East 147 feet 1-3/8 inches to the point of beginning, thence from said point of beginning along the Northwest side of the former Carbon Street (60 feet wide), North 57 degrees 35 minutes 37 seconds East, 42 feet 10-5/8 inches to a point; thence North 32 degrees 24 minutes 23 seconds West, 1,075 feet 0 inches to a point in the center line of former Balfour Street (Myrtle Street) (50 feet wide); thence along the center line of the former Balfour Street, South 57 degrees 35 minutes 37 seconds West, 65 feet 0 inches to a point; thence along a line 50 feet, distant from the center line of the railroad formerly of the Penndel Company, South 32 degrees 24 minutes 23 seconds East, 575 feet 0 inches to a point of curve; thence along a line curving to the left 50 feet distant and radial of the center line of said railroad with a radius of 5,662 feet 6-1/8 inches and an arc distance of 500 feet 7-7/8 inches having a chord bearing of South 34 degrees 56 minutes 21.5 seconds East and a chord distance of 500 feet 5-7/8 inches to a point and place of beginning.

**AND THE SECOND THEREOF,** designated as PAL 101 05-8,

PREMISES "B"
**BEGINNING** at a point distance 220 feet 5-1/8 inches along the former Northwest side of Delaware Avenue (150 feet wide) measured North 57 degrees 35 minutes 37 seocnds East from the intersection of the Northeast side of Lewis Street (60 feet wide) and the Northwest side of Delaware Avenue (150 feet wide) produced; thence from said point of beginning along the former Northwest side of Delaware Avenue (150 feet wide) North 57 degrees 35 minutes 37 seconds East 139 feet 5-7/8 inches to a point; thence along the former Southwest side of Roxborough Street (60 feet wide) North 32 degrees 24 minutes 23 seconds West 440 feet 0 inches to a point; thence along the former Southeast side of Carbon Street (60 feet wide) South 57 degrees 35 minutes 37 seconds West 200 feet 9-1/2 inches to a point; thence along a line curving to the left with a radius of 5,656 feet 1-1/4 inches an arc distance of 444 feet 4-3/8 inches, having a chord bearing South 40 degrees 20 minutes 21 seconds East and a chord distance of 444 feet 3 inches said curve being 50 feet distance and parallel with the center line of the near track of railroad formerly of Penndel Company to the point and place of beginning.

**BEING** known as **4085 Richmond Street.**

2

**BEING** as to Premises "A" and "B" the same premises which Elmer Anderson by Deed dated April 25, 1989 and recorded May 3, 1989 in the County of Philadelphia in Deed Book FHS 1339 Page 361 conveyed unto Albert Duoncristiano, his heirs and assigns, in fee

*3*

*Together* with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, of the said Grantor(s), as well at law as in equity, or otherwise howsoever, of, in, and to the same and every part thereof.

*To have and to hold* the said lot or piece of ground described with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s) his heirs and assigns, to and for the only proper use and behoof of the said Grantee(s) his heirs s and assigns forever.

*And* the said Grantor(s), for himself/herself, his Heirs, Executors, and Administrators does by these presents, covenant, grant, promise and agree, to and with the said Grantee(s), his heirs and assigns, that the said Grantor(s) and his Heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s), his heirs and assigns, against the said Grantor(s) and his Heirs, and against all and every other Person and Persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, or any of them, shall and will WARRANT and forever DEFEND.

*In Witness Whereof,* the said party/parties of the first part to these presents has hereunto set his hand(s) and seal(s).  Dated the day and year first above written.

**Signed, Sealed and Delivered**
**IN THE PRESENCE OF US:**

_____      _____ **Seal**
                              Albert Buoncristiano

_____ **Seal**

_____ **Seal**

_____ **Seal**

Commonwealth of Pennsylvania                    )
                                                ) ss
County of *Phila*                               )

On this, the ___23___ day of ___Nov.___ ___2004___, before me, a Notary Public for the Commonwealth of Pennsylvania, the undersigned Officer, personally appeared **Albert Buoncristiano** known to me (satisfactorily proven) to be the person(s) whose name(s) is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

*Notary Public*

NOTARIAL SEAL
SANDY R. FRATTARELLI Notary Public
City of Philadelphia Phila County
My Commission Expires June 13 2006

# DEED.

**Albert Buoncristiano**

*TO*

Robert Holton

**PREMISES:**   4085 Richmond Street -Premises "A & B"
              Philadelphia City
              Philadelphia, Pennsylvania

T#80,468

*The address of the above-named Grantee*

is   *5035 WORTH ST*
     *PHILA. PA. 19124*
     *On behalf of the Grantee*

5

## CERTIFICATE OF SERVICE

   I hereby certify that a true copy of the foregoing **Plaintiff's Second Amended Complaint** was served upon the below named parties by hand delivery this 22nd day of January 2019.

Meghan Claiborne, Esquire
City of Philadelphia, Civil Rights Unit
1515 Arch Street
Philadelphia, PA 19102
meghan.claiborne@phila.gov
**Counsel for Defendants**

                 JACK M. BERNARD, ESQUIRE
                 Attorney for Plaintiff