## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | **:** | |
| **ROBERT HOLTON,** | **:** | **CIVIL ACTION** |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 18-2228** |
| | **:** | |
| **BOBBY HENON, et al.** | **:** | |
| **Defendants.** | **:** | |
| | **:** | |

### [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, and any response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED**.


BY THE COURT:


_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| **ROBERT HOLTON,** | : | **CIVIL ACTION** |
|         **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 18-2228** |
| | : | |
| **BOBBY HENON, et al.** | : | |
|         **Defendants.** | : | |
| | : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants, Bobby Henon, Darin L. Gatti, Edward Jefferson and the City of Philadelphia ("Defendants"), by and through their undersigned counsel, hereby file this Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"). In support of this Motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court dismiss the claims asserted against them.

Dated:  March 25, 2019                    Respectfully submitted,

                              /s/ *Meghan E. Claiborne*
                              Meghan E. Claiborne
                              Deputy City Solicitor
                              Pa. Attorney ID No. 315918
                              City of Philadelphia Law Dep't
                              1515 Arch Street, 14th Floor
                              Philadelphia, PA 19102
                              215-683-5447 (phone)
                              215-683-5397 (fax)
                              meghan.claiborne@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **ROBERT HOLTON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 18-2228** |
| | : | |
| **BOBBY HENON, et al.** | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Robert Holton ("Plaintiff"), has failed to allege that Defendants, Bobby Henon, Darin L. Gatti ("Mr. Gatti"), Edward Jefferson ("Mr. Jefferson"), and the City of Philadelphia (individually as "the City," and collectively as "Defendants"), caused any violation of Plaintiff's rights or violated any state laws.

The claims in Plaintiff's Second Amended Complaint stem from a long series of events stemming from the City's condemnation of property in 1951 to create a right-of-way for the Frankford Creek, and ending with litigation before both the City of Philadelphia Licensing & Inspection Review Board and the Court of Common Pleas of Philadelphia County. Plaintiff's Second Amended Complaint should be dismissed both because the Court lacks subject matter jurisdiction over Plaintiff's claims and because Plaintiff has failed to adequately state a claim.

As to jurisdiction, this Court lacks subject matter jurisdiction for two reasons. To the extent Plaintiff seeks compensation for an alleged taking, Plaintiff's claim is not ripe and this Court lacks subject matter jurisdiction as Plaintiff has failed to properly exhaust his state court remedies. Second, this Court also lacks jurisdiction to hear Plaintiff's claims under the *Rooker-Feldman* Doctrine.

As to the adequacy of Plaintiff's pleadings, Plaintiff fails to state a claim as the Deed and other documents of public record make clear that Plaintiff is not owner of the land from which he was excluded, and Plaintiff fails to allege sufficient facts to support a claim for conspiracy.

## I.  BACKGROUND

### A.  Plaintiff's Second Amended Complaint.

Plaintiff runs a scrap metal and automobile salvage business on a piece of property owned by Plaintiff and as described in the deed attached to the Plaintiff's Second Amended Complaint (the "Holton Deed").  Second Amend. Comp. at ¶12, Ex. B.

Plaintiff alleges that the Property is "bounded by Richmond Street to the west, Delaware Avenue to the east, Contrail to the south and Frankford Creek to the north." *Id.* at ¶ 8. Plaintiff further alleges that at all relevant times, the Property "did not violate zoning ordinances" and that Plaintiff "had purchased and paid for all necessary licenses and permits needed to carry on his business." *Id.* at ¶12.

Plaintiff claims stem from allegations that Defendants, through a series of improper actions, "took" Plaintiff's Property at the address identified as 4087 Richmond without paying just compensation and caused PECO to turn off Plaintiff's power.  *See id.* at ¶¶ 10, 17. To that end, on October 13, 2018, Mr. Gatti "caused the City of Philadelphia to relocate the lot lines, change Holton's address and confine him to a small segment that is land-locked." *Id.*

Based upon the allegations, Plaintiff brings two claims: (1) one for a taking under the Fifth Amendment (Count Two), and (2) one for conspiracy to commit the alleged taking (Count One).

Plaintiff's Second Amended Complaint omits numerous, critical and publicly available facts that reveal (1) that Plaintiff never owned the land from which he was removed, and (2) that

the City properly enforced a court order to cease operations when it removed Plaintiff from a portion of land on October 13, 2018. To fully understand the present situation requires a review of the history of the property at issue, as well as the various administrative and legal challenges previously asserted by Plaintiff.

**B.     4085 Richmond Deed History.**

As an initial matter, as identified in the Second Amended Complaint, the land at issue is bounded Richmond Street to the west, Delaware Avenue to the east, Conrail to the south and the Frankford Creek to the north.



---

[1] In evaluating a motion to dismiss, a Court may consider documents that are attached to or submitted with the complaint, and any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004)). Federal courts have long deemed it appropriate to take judicial notice of geographical facts such as those observable through resources like Google Maps. *See* Fed. R. Evid. 201(b); *Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) (Jackson, J., dissenting) ("We may, of course, take judicial notice of geography."); *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (taking notice of a Google map and satellite image as a "source whose accuracy cannot reasonably be questioned"); *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 259 n.13 (E.D.N.Y. 2010) (taking judicial notice of geographic information through Google Maps, and collecting similar cases); *United States v. Brown*, 636 F. Supp. 2d 1116, 1124 n.1 (D. Nev. 2009) (same).

It is undisputed that Plaintiff owns a portion of the property as described in the Holton Deed and identified as 4085 Richmond Street ("4085 Richmond"). However, the issue lies in Plaintiff's misconception that 4085 Richmond extends from Richmond Ave. on the west all the to way to Delaware Ave. on the east. It does not.

In reality, the Holton Deed clearly identifies two (2) parcels of land that make up 4085 Richmond St.: Parcel A, which is in between the Northwest side of the former Carbon Street and the center line of the former Balfour Street ("Parcel A"); and Parcel B, which runs from 220 feet 5-1/8 inches along the former Northwest side of Delaware Avenue to the Southeast side of former Carbon Street and "North 57 degrees 35 minutes 37 seconds East from the intersection of the Northeast Side of Lewis ("Parcel B"). *See* Holton Deed at Second Amend. Cmplt., Exhibit A. The boundaries of Parcel B do not appear to be in dispute. However, Plaintiff's Second Amended Complaint effectively alleges that Parcel A extends not just to the center line of the Balfour Street, as described in the Holton Deed, but all the way to Richmond Street. Second Amend. Cmplt. at ¶ 8. A visual representation of Parcel A easily clarifies Plaintiff's misconception.

---

The Court may consider public records as part of the record without converting a motion to dismiss into a motion for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3rd Cir.1993). To the extent the Court finds that any portion of public record requires this motion to be reviewed as a motion for summary judgment, Defendants request this Court proceed under Federal Rule of Civil Procedure 56.

The Holton Deed incorporates two Plans of Surveys dated June 24, 1977 made by Barton and Martin Engineers (the "1977 Plans"). *See* 1977 Plans, Part 2, attached as Exhibit A. Part 2 of the 1977 Plans shows that the boundaries of Parcel A runs from the edge of former Carbon St. to the center of former Balfour St.:



A review of the prior deeds for 4085 Richmond shows that the property boundaries for Parcel A have remained effectively unchanged as 4085 Richmond has passed through five (5) different owners since 1983.

Going back to August 31, 1983, 4085 Richmond was sold from the Penn Central Corporation ("Penn Central") to Thomas Clauss ("Clauss Deed"). *See* Clauss Deed, attached as Exhibit B. The description of the metes and bounds in Schedule "A" of the Clauss Deed is identical to that in Exhibit A of the Holton Deed. *Id.* at pp.2-3. The Clauss Deed further incorporates the same 1977 Plans incorporated into the Holton Deed representing the boundaries of Parcels A and B. *Id.* at p.2.[2]

---

[2] Notably, on page three (3) of the Clauss Deed, the Grantee specifically acknowledged and agreed that "no right of means of access to or from the aforesaid premises is included herein,

On November 16, 1988, Thomas Clauss sold 4085 Richmond to Elmer Anderson ("Anderson Deed"). *See* Anderson Deed, attached as Exhibit C. Once again, the Anderson Deed contains a description of the metes and bounds of the parcels identical to that of the description in the Holton Deed, and incorporates the 1977 Plans showing the boundaries of Parcels A and B into the Clauss Deed. *Id.* at pp.1-2.

On April 25, 1989, Elmer Anderson sold 4085 Richmond to Albert Buoncristiano ("Buoncristiano Deed"). Buoncristiano Deed, attached as Exhibit D.[3] The Buoncristiano Deed contains a description of the metes and bounds of the parcels identical to that of the Holton Deed, and incorporates the 1977 Plans into the Buoncristiano Deed. *Id.* at pp.1-2.

Thus, Parcel A of 4085 Richmond has remained unchanged since at least 1977, and at no point from 1977 to present has Parcel A extended past the former Balfour St.

Further, each of the Clauss, Anderson and Buoncristiano Deeds reflects that Parcel A as described in the Holton Deed is recorded with the City as Map Registry # 150N050144. *See* Clauss Deed, at p.1; Anderson Deed, at p.1; Buoncristiano Deed, at p.1. The City's Atlas website overlays parcels, based upon the metes and bounds contained in the parcel's deed and recorded with the City, on satellite images of the actual property. A review of the Parcel Details for 4085 Richmond, Map Registry # 150N050144, shows the limited portion of the land between Delaware Avenue and Richmond St. actually contained within Parcel A of the Holton Deed:

---

whether specifically or by implication, across any adjacent property of the Grantor or otherwise." *Id.* at p.3. In other words, when Penn Central originally sold 4085 Richmond St. to Mr. Clauss in 1983, the deed specifically acknowledged that 4085 Richmond St. was land-locked.

[3] Each deed, beginning with the most-recent Holton Deed, references and incorporates the prior deed. Thus, each of these deeds is incorporated into the pleadings by reference. *See Buck*, 452 F.3d at 260.



4

---

[4]Image available at https://atlas.phila.gov/#/4085%20RICHMOND%20ST/deeds.

City plans may be considered by a Court as part of a motion to dismiss without converting the motion to one for summary judgment. *See, e.g., Norfolk Fed'n of Bus. Districts v. Dep't of Hous. & Urban Dev*., 932 F. Supp. 730, 736–37 (E.D. Va.), *aff'd sub nom. Norfolk Fed'n of Bus. Districts v. City of Norfolk*, 103 F.3d 119 (4th Cir. 1996).

**C.      Frankford Creek Plan.**

Further, Plaintiff could not be the owner of the land to the left of the former Balfour St. as this land was obtained by the City through eminent domain roughly 60 years ago in accordance with City Council Ordinance dated December 19, 1951 (the "Frankford Creek Plan"). Frankford Creek Plan, attached as Exhibit E. Pursuant to the Frankford Creek Plan, the area of land to the left of the former Balfour St. (identified below with a red line) was condemned by the City to create the Frankford Creek right-of-way (the "Frankford Creek Right-of-Way"):



*Id.*

The relationship of Parcel A to the Frankford Creek Right-of-Way is easily discernable in the survey of 4085 Richmond St. which was conducted in 2004 at the request of the prior owner of the property, Albert Buoncristiano, **in anticipation of the sale of 4085 Richmond St. to Plaintiff** (the "2004 Plan"). *See* 2004 Plan, attached as Exhibit F. The survey was conducted by the Fifth Survey District of the City of the Philadelphia and is on file and publicly available at the Fifth Survey District. A review of the 2004 Plan confirms that Parcel A of the Holton Deed,

as sold to Plaintiff by Mr. Buoncristiano, extends only as far as the former Balfour St. The red lines on the 2004 Plan reflect where the boundaries of the Frankford Creek Right-of-Way (described above) meets with the boundary of Parcel A. The blue line reflects the continuation of the boundary of the Frankford Creek Right-of-Way:[5]



*Id.*

### D.    Plaintiff's Violations and Subsequent Litigation.

As identified in his Second Amended Complaint, Plaintiff was ultimately removed from property identified as 4087 Richmond Street ("4087 Richmond") – not 4085 Richmond. *See* Second Amend. Cmplt. at ¶10 (discussing the shut-down of an illegal junkyard at 4087 Richmond Street); ¶ 17 (discussing the October 13, 2018 eviction from 4087 Richmond that left Plaintiff confined to the land-locked property at 4085 Richmond). Specifically, 4087 Richmond is the address assigned to the City-owned property located to left of the former Balfour St. Transcript of L&I Hearing on Sept. 29, 2017, attached as Exhibit G, at 4:8-23; *Id.* at 7:11-19, Exhibit 1 (identifying 4087 Richmond).[6]

---

[5] The triangle of property north of Parcel A and below the Frankford Creek Plan is owned by a private, non-party, and is not at issue.
[6] All documents referenced herein and related to the L&I Violations and subsequent appeals were filed as part of the record in the Court of Common Pleas of Philadelphia County, *Holton v. City of Philadelphia*, September  Term 2017, No. 2758 ("State Court Appeal"). *See* State Court

At some point, it was discovered that Plaintiff and another individual were operating a business on 4087 Richmond. *Id.* at 4:8-23. As City-owned property and part of the Frankford Creek Plan, 4087 Richmond was not zoned for the business Plaintiff was operating on it. *Id.* Further, because Plaintiff did not own 4087 Richmond or have the City's permission to operate a business on the City's property, Plaintiff did not have the proper licenses for the business operating on 4087. *Id.* at 8:20-9:1. As a result, on March 2, 2017, the City of Philadelphia Department of Licenses & Inspections ("L&I") inspected 4087 Richmond St. and issued a number of violations related to Plaintiff's use of 4085 Richmond, including the lack of a use registration permit ("L&I Violations"). *See* L&I Violations, attached as Exhibit H. L&I subsequently issued a "Notice of Intent to Cease Operations and Order" ("First Cease Operations Notice") which was set to take effect on April 12, 2017 unless the violations were rectified. First Cease Operations Notice, attached as Exhibit I. The First Cease Operations Notice, which identified the address in violation as 4087 Richmond St., specifically stated that "[i]f a Cease Operations is issued, your business/property/establishment will be required to close, or that a portion or use of the premise as specific in the Order will be forced to cease immediately." *Id.*

Plaintiff appealed the L&I Violations to the L&I Review Board (the "Board") on April 3, 2017 ("L&I Appeal"). L&I Findings of Fact and Conclusions of Law, attached as Exhibit J, at p.7 (L&I Appeal).

### 1.    *First Preliminary Injunction.*

While Plaintiff's L&I Appeal was pending, he filed a state court actions seeking emergency relief on April 12, 2017 ("First Preliminary Injunction"). *See* First Preliminary

---

Appeal Docket, attached as Exhibit K. While the Second Amended Complaint identifies the Case Number for the State Court Appeal as 170902750 (Second Amend. Cmplt. at ¶23), it is actually 170902758.

Injunction, attached as Exhibit L. In the First Preliminary Injunction, Plaintiff sought to restrain L&I from enforcing the Cease Operations Order pending review of the appeal by the Board. *Id.* A hearing was held on the First Preliminary Injunction the same day it was filed. *See generally*, First Preliminary Injunction Transcript, attached as Exhibit M.

During the hearing, counsel for Plaintiff informed the Court that there was a "property issue" going back a few years based upon the City's contention that Plaintiff "is encroaching on City property, if not trespassing on City property." *Id.* at 18:15-25.

Mr. Gatti testified at that First Preliminary Injunction hearing that 4087 Richmond "is actually the right of way of the Frankford Creek just off of Richmond Street." *Id.* at 35:2-7. Mr. Gatti further testified that Plaintiff appears to be operating a junk or salvage yard on that City property. *Id.* at 36:2-4. When asked specifically if the business should be operating on 4087 Richmond, Mr. Gatti responded, "No. It's city property." *Id.* at 38:8-10. On April 13, 2017, the Court denied the Preliminary Injunction. First Preliminary Injunction Docket, attached as Exhibit N. On July 25, 2017, Plaintiff withdrew the action. *Id.*

### 2.   *L&I Appeal Board Hearing.*

On August 29, 2017, a hearing was held before the Board ("L&I Hearing") on Plaintiff's appeal. *See generally*, L&I Hearing Transcript. During the hearing, Silvio DiGuglielmo, an inspector for L&I, testified that Plaintiff had no zoning permit for 4087 Richmond. *Id.* at ¶14. Plaintiff's counsel said he would "stipulate that there may not be a zoning permit." *Id.* at ¶19. Darin Gatti testified that, with respect to Plaintiff's business on 4087 Richmond, Plaintiff was "operating on the Frankford Creek Right of Way, which is City property." *Id.* at ¶21. Following the hearing, the Board unanimously affirmed the City's violation determination, denying Plaintiff's appeal. Board Notice of Decision, attached as Exhibit O. In their Conclusions of Law,

the Board concluded that a zoning permit was required, that none was obtained, and that the Cease Operations order was properly issued. L&I Findings of Fact and Conclusions of Law at p.4, ¶ 1.

Plaintiff appealed the Board's decision to the Court of Common Pleas on September 22, 2017. State Court Appeal Docket.

     *3.*   *Second Preliminary Injunction.*

On February 15, 2018, while the State Court Appeal was pending, Plaintiff filed a second preliminary injunction in state court ("Second Preliminary Injunction"). *See* Second Preliminary Injunction, attached as Exhibit P. In the Second Preliminary Injunction, Plaintiff alleged that:

> For a period of approximately twelve (12) years commencing in 2006, Defendant has attempted to acquire portions of real estate owned by Holton, ostensibly for development, located at the Richmond Street/Delaware Avenue address. In the course of its acquisition efforts, deeds have been recorded mis-describing the metes and bounds of property alleged to be owned by Respondent, requiring Holton to engage counsel in order to correct the mis-description at great expense.

Second Preliminary Injunction, at ¶¶ 4-5.

Plaintiff further alleged that prior to the hearing on the First Preliminary Injunction, "a senior member of the Law Department" told counsel for Plaintiff that if Plaintiff "deeded the portion of the Frankford Creek Right of Way that the City of Philadelphia sought and had been seeking, the violation notices would 'go away.'" *Id.* at ¶ 11.

Plaintiff attached a letter to the pleading entitled "Urgent Notice," dated February 1, 2018, from L&I to Plaintiff ("Second Cease Operations Notice"). *Id.* at Exhibit A. The Second Cease Operations Notice stated that Plaintiff must "immediately comply with the Cease Operations Order and to remove from the land all equipment, materials, vehicles, structures, appliances and waste" from the Frankford Creek Right-of-Way (a/k/a 4087 Richmond St.) no later than February 16, 2018. *Id.* The letter further states that "[u]se and operations upon the

property referenced above as 4087 Richmond Street, which has been determined by the Ordinance dated December 19, 1951 to be part of the Frankford Creek Right-of-Way, have been Ceased by Order of the Department of Licenses ("L&O") on April 12, 2017." The Second Cease Operations Notice continued:

> If you fail to make the said required removals and to vacate the Right-of-Way, the City secure the land from entry after making the said removals and disposals, the cost of which will be billed to you, Robert Holton.

*Id.*

A hearing was held on the Second Preliminary Injunction the following day, February 16, 2018. During the hearing, counsel for Plaintiff testified that the "underlying dispute really has to do with the city's attempt to acquire a piece of property from Mr. Holton without going through eminent domain." Second Preliminary Injunction Transcript, attached as Exhibit Q, at 4:23-5:3. During the hearing, Mr. Holton conceded that he had continued to operate on the property designated as 4087 Richmond despite the Cease Operations Order. *Id.* at 34:10-35:11; 37:18-20.

Also, during the hearing, Mr. Jefferson explained the distinction between 4085 Richmond and 4087 Richmond, and the purpose of the Cease Operation Order:

**Mr. Jefferson**:  4087 Richmond Street, which is a property that does not exist on the city plan and does not exist in the Office of Property Assessment. It is a lot without any kind of tax address. It is a lot that is within the right of way of the Frankford Creek.

Now with respect to that particular portion of property, which is separate and apart from 4085 Richmond Street, which Mr. Holton owns and lawfully occupies now –

**The Court**:  So, I am sorry. Are you saying that this cease operations order relates to 4087 and not 4085?

**Mr. Jefferson**:  That's correct, Your Honor. It does not relate to 4085, which is lawfully owned Mr. Holton and lawfully operated as Final Destination, which his an auto salvage or wrecking place. This is a property, and when we get into the evidence, I will demonstrate

that through various records and testimony. However, now how this came about and it has come about for a really long time –

**The Court**:     Let me stop you for just a second because I am not sure I am understanding. So, what is the effect of an urgent notice to cease operation on a property that – does somebody own this property that doesn't exist?

**Mr. Jefferson**:  The City of Philadelphia.

**The Court**:     Why would you do a cease – an urgent notice to yourself?

**Mr. Jefferson**:  Well, that is a wonderful question, Your Honor, and the reason that we have done that and the reason that we have cited violations for his unlawful use of the property, because he can't get a zoning permit. You need a zoning permit in order to be able to occupy a property and use it lawfully.

**The Court**:     I see. You are saying that Mr. Holton was using this property.

**Mr. Jefferson**:  Yes, Your Honor.

**The Court**:     All right. I am with you. All right.

**Mr. Jefferson**:  Mr. Holton has been leasing the property or renting the property to an operator that was operating there as K Squad. I don't know what they are operating as now. So anything he placed upon that property; albeit a trailer, multiple vehicles that are in disassembled or held for sale either by parts or in whole are there unlawfully, and the unlawful reason is what I just stated. He cannot legalize because he cannot get a permit to operate.

**The Court**:     Because he doesn't own it?

**Mr. Jefferson**:  That's correct. He has no legal interest in the property. . . .

*Id.* at 6:10-8:20.

Mr. Gatti took the stand and testified as the chief engineer and president of the board of surveyors for the Philadelphia Streets Department. *Id.* at 39:21-25. Mr. Gatti again testified, clearly, that the City, and not Plaintiff, owns 4087 Richmond:

**Mr. Jefferson**:   Does Mr. Holton own 4087 Richmond Street?

14

**Mr. Gatti**:      No; that is city property.

**Mr. Jefferson**:   Now, let's talk about that. When you say it is city property, at what point in time did the City of Philadelphia take that property?

**Mr. Gatti**:      About 1951, the city condemned that for the relocation of the Frankford Creek. The property is part of the Frankford Creek right of way.

*Id.* at 40:7-15.

Mr. Gatti further testified that the boundaries of the 4085 Richmond as described in the Holton Deed do not include the Frankford Creek Right-of-Way, a/k/a the property identified as 4087 Richmond:

**Mr. Jefferson**:   So please take a look at City Exhibit-6. What is City Exhibit-6?

**Mr. Gatti**:      Exhibit-6 is the deed to 4085 Richmond Street.

. . .

**Mr. Jefferson**:  Does it specifically exclude in the property that we are referring to as 4087 Richmond Street?

**Mr. Gatti**:      Yes. The back of the property actually ends over a thousand feet away from Richmond Street. It fronts on Delaware Avenue. The entrance to 4085 is on Delaware Avenue and the back of the property ends about a little over a thousand feet from Richmond Street. 4087 Richmond Street enters from Richmond itself.

**Mr. Jefferson**:  Do you know of any document at all that exists that would authorize anyone to operate on city property?

**Mr. Gatti**:      No. That is the Frankford Creek right of way.

*Id.* at 47:23-25, 49:3-15.

When Plaintiff was asked if he had any documentation showing he owned 4087 Richmond Street, Plaintiff confirmed that he did not have any other legal document establishing his ownership of 4087 Richmond. *Id.* at 82:13-84:9, 86:7-17. Despite having framed the issue himself as an attempted eminent domain, when asked by the Court why Plaintiff had not come to

court with documentary evidence of ownership of 4087 Richmond, counsel for Plaintiff testified that he "did no perceive that we would be litigating title for the property" and that it was a "surprise" that the City was claiming Plaintiff's operation on 4087 Richmond is illegal because he does not own it. *Id.* at 88:24-89:22. Similarly, when the Court asked Plaintiff directly for a copy of his Deed to 4087 Richmond, Plaintiff said that he did not have it in court. *Id.* at 33:16-21.

Counsel for Plaintiff then attempted to argue the very issue at the heart of his Second Amended Complaint, ownership of 4087 Richmond:

> **Mr. Bernard**: . . . If my client is trespassing on city property, there is [sic] all sorts of remedies that the city can invoke, but, instead of that, they have the Department of Licenses & Inspections issue violation notices. Now my client has corrected these violation notices that are referred to in the –

> **The Court**: But they put on evidence that he doesn't own the property where he is operating the business.

> **Mr. Bernard**: Exactly, and that is really the issue before the Court. I am not sure that this is the way to do it. I don't think that in adjudicating a motion for preliminary injunction to prevent the city from enforcing Licenses & Inspections order, I don't believe that that is the best way, I don't believe it is any way to address the issue of title and trespass on city property. This business has been going on for 20 years. I am not suggesting that there is adverse possession, although that may be the case, but it has been going on for 20 years. . . .

> The only way it would be before the Court is this testimony today that he is operating on property he doesn't own, but the best evidence of that would be the deeds, and Mr. Holton has a deed to this property, which I believe we presented.
> . . .

> **The Court**: But I have had testimony from a surveyor saying that this deed does not include the property where he is conducting at least part of his business.

*Id.* at 94:18-96:14, 97:1-5.

Ultimately, the Court granted Plaintiff until the following Wednesday to submit an alleged supplemental deed from 2015 that would show Plaintiff's ownership of 4087 Richmond. *Id.* at 103:20-104:5. On February 20, 2018, counsel for Plaintiff filed a Quit Claim Deed concerning the 5,733 square foot portion of 4085 described in Paragraph 16 of the Second Amended Complaint. *See* Second Preliminary Injunction Docket, attached as Exhibit R. Plaintiff never filed any subsequent deed showing ownership of 4087 Richmond Ave. *See id.* On March 1, 2018, following Plaintiff's failure to produce any documentary evidence of ownership as to 4087 Richmond, the Court entered an Order denying the Second Preliminary Injection. March 1 Order Denying Second Preliminary Injunction, attached as Exhibit S.

4.    *State Court Appeal of L&I Violations.*

Oral argument was heard on the State Court Appeal on August 20, 2018. That same day, the Court affirmed the Board's denial of Plaintiff's appeal ("Aug. 20 Order Denying Appeal"). Aug. 20 Order Denying Appeal, attached as Exhibit T. On August 28, 2018, Plaintiff filed a Motion for Reconsideration of the Aug. 20 Order Denying Appeal ("Motion for Reconsideration"). State Court Appeal Docket (Ex. K). On September 11, 2018, the Court denied Plaintiff's Motion for Reconsideration. *See id.*

Plaintiff never appealed the denial of the State Court Appeal. *Id.* Despite Plaintiff's allegation that he "has prevailed with respect to all alleged violations of City Licenses and Inspections ordinances in the Court of Common Pleas" (Second Amend. Cmplt. at ¶23), the record reveals that this is clearly not the case.

E.        **Enforcement of the Cease Operations Order.**

On October 13, 2018, the City ultimately enforced the Cease Operations Order by shutting down the business illegally operating on the City-owned property identified as 4087 Richmond. Second Amend. Cmplt. at ¶ 17.

To-date, Plaintiff has not taken any further action with respect with the L&I violations, nor has Plaintiff filed any additional state court actions concerning title to 4087 Richmond.

II.      **MOTION TO DISMISS FOR LACK OF JURISDICTION**

A.       **Standard Pursuant to Rule 12(b)(1).**

"Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a claim when the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). As an initial mater, the Court must determine whether the attack on jurisdiction is being raised as a matter of fact or based on the face of the complaint. *See Mortensen v. First Federal Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial challenge to a complaint, such as the one here, indicates that the complaint fails to sufficiently allege subject matter jurisdiction.

Generally, a court must accept as true the allegations pleaded in the complaint and the disposition of the motion is a legal question. *See Jiricko v. Bennett, Bricklin & Saltzburg, LLP*, 321 F.Supp. 2d 636, 639 (E.D. Pa. 2004). However, when a motion disputes the existence of subject matter jurisdiction, then "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Id.* (citing *Mortensen*, 549 F.2d at 891).

It is appropriate to bring a challenge to the ripeness of an action for adjudication as a motion to dismiss for lack of subject matter jurisdiction. *See Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL–CIO v. Ridge*, 150 F.3d 319 (3d Cir. 1998); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed.2004). Defendants move to dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(1) for lack of ripeness.

### B.     Plaintiff's Taking Clause Claim is Not Ripe.

The Court should dismiss Count 1 because Plaintiff's Takings Clause claim is not ripe for review. In *Brubaker v. East Hempfield Township*, 234 F. App'x 32 (3d Cir. 2007), a plaintiff brought a Takings Clause claim against a Pennsylvania township that granted him a permit to build a cell phone tower on his property but later revoked that permit. *Id.* at 33-34. The plaintiff "did not seek just compensation from the Township prior to bringing [suit]," even though he could have done so under the inverse condemnation proceedings provided for by Pennsylvania law. *Id.* at 36. The Third Circuit Court of Appeals held that this "failure to utilize . . . state remedies means that [plaintiff's] takings claim is not ripe" and thus dismissed his Takings Clause claim. *Id.*

Similarly, in *Cowell v. Palmer Township*, 263 F.3d 286 (3d Cir. 2001), plaintiffs alleged that a Pennsylvania township "violated the Takings Clause by imposing two municipal liens that impaired the value of the plaintiffs' properties and deprived them of the right to full control of their properties." *Id.* at 290. The Third Circuit held that "Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property." *Id.* The court also found that because the plaintiffs failed to avail themselves of these inverse condemnation procedures, their Takings Clause claim

was not ripe and must be dismissed. *Id.* at 291.

This case is on all fours with *Cowell* and *Brubaker*. Although Plaintiff alleges that the City "has taken Plaintiff's real property without offering to pay just compensation" (*see* Second Amend. Cmplt. at ¶¶ 21-26), Plaintiff never sought such compensation by bringing an inverse condemnation proceeding. Plaintiff's pleadings, and the record, are devoid of any allegations or evidence or Plaintiff ever attempted to seek compensation from the City prior to the filing of the present case.

Plaintiff's Takings Clause claim is thus not ripe for review, and the Court should dismiss Count 1. *See Chainey v. Street*, 523 F.3d 200, 223 (3d Cir. 2008) (dismissing Takings Clause claim on ripeness grounds because "plaintiffs failed to pursue an inverse condemnation"); *DeNinno v. Municipality of Penn Hills*, 269 F. App'x 153, 155, 157-158 (dismissing Takings Clause claim of plaintiff whose grading permit was revoked because "takings claims [are] unripe until plaintiffs pursued their [inverse condemnation] rights . . . in Pennsylvania courts").

### C.     Plaintiff's Claim is Precluded by the *Rooker-Feldman* Doctrine.

Plaintiff's claims allege that Defendants acted illegally when they properly executed the Cease Operations Order, upheld by both the L&I Review Board and the Common Pleas Court, violates the *Rooker-Feldman* doctrine as it is in the nature of appellate review of the trial court's decisions. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  Under the *Rooker–Feldman* doctrine, a losing state-court party is "barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on [a] claim that the state judgment itself violates the loser's federal rights." *Johnson v. Philadelphia Hous. Auth.*, 448 F. App'x 190, 192 (3d Cir. 2011) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). "[T]here are four requirements that must

be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir.2010) (internal citations, quotations, and alterations omitted).

Each one of these elements is met here. The L&I Violations, and ultimately the Cease Operation Order, were upheld in the State Court Appeal. Pursuant to the Cease Operations Order, Defendants ultimately took action to have power turned off at 4087 Richmond and to remove Plaintiff's illegal business operation from the property. Plaintiff now invites this Court review and reject the Court of Common Pleas' decision in the State Court Appeal. Such action falls squarely within the bounds of the *Rooker-Feldman* Doctrine, and is thus precluded. *See id.* at 192 (dismissing complaint to the extent it called into question the Philadelphia Court's judgment).

## III.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.     Standard Pursuant to Rule 12(b)(6).

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without stating a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." *Anspach v. City of*

*Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quotation marks omitted).

> **B.     Plaintiff Fails to State a Claim Under the Takings Claus.**

The Court should dismiss Plaintiff's claims because, as described at length above, Plaintiff never never had a property interest in 4087 Richmond. Individuals may only sue under the Takings Clause if they actually had a property interest in what the government seized or revoked.  *See River Nile Invalid Coach & Ambulance, Inc. v. Velez*, 601 F. Supp. 2d 609, 622 (D.N.J. 2009); *Keystone Cable-Vision Corp. v. FCC*, 464 F. Supp. 740 (W.D. Pa. 1979).

Plaintiff does not, and has never had a legal interest in 4087 Richmond, which has been owned by the City of Philadelphia for roughly 60 years.

> **C.     Plaintiff Fails to Adequately Plead a Claim for Conspiracy.**

As an initial matter, because Plaintiff has failed to plead an underlying claim, his claim for conspiracy fails. *See Boyanowski*, 215 F.3d at 406 (quoting *Raneri*, 441 A.2d at 1376).

Even if this Court were to find that Plaintiff had sufficiently alleged an underlying claim, Plaintiff's claim for conspiracy still fails.  To state a claim for conspiracy under section 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E.* Lansdowne, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (citing *Gale v. Storti*, 608 F.Supp.2d 629, 635 (E.D. Pa. 2009)).

"Agreement is the *sine qua non* of a conspiracy." *Spencer*, 968 F. Supp. at 1020.  It is essential that a plaintiff specifically allege an agreement to carry out the alleged chain of events. *Id.* "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id. See also,*

*Hammond v. Creative Financial Planning Org.*, 800 F.Supp. 1244, 1249 (E.D. Pa. 1992) ("to state a claim for conspiracy under § 1983, plaintiff must make 'factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events.'") (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974)).

For instance, in *Spencer*, the plaintiff brought a claim for civil conspiracy against an attorney and a state court judge claiming the two shared a "political history" and a "special relationship" which allowed the attorney to use *ex parte* communication to obtain a favorable ruling from the judge. 968 F.Supp. at 1020. However, the plaintiff failed to allege any specific facts to support that the attorney and judge acted through a "combination, agreement, or understanding" or "plot" or "plan" or "conspiracy." *Id.*

Here, Plaintiff does not allege any facts to support that an agreement existed between Defendants. Plaintiff simply baldly alleges that "Henon, a member of the legislative branch of the City of Philadelphia government, conspired with Jefferson and Gatti to carry out an illegal taking of Holton's property in phases by issuance of citations for violations of regulatory ordinances, followed by orders to cease operations, followed by ordering PECO to shut off all power, and when Holton hired electricians to turn power back on, ordering PECO to disconnect entirely." Second Amend. Cmplt. *Id.* at ¶17.

Plaintiff's conclusion as to the Defendants' alleged coordinated efforts is supported by nothing more than Plaintiff's own opinion and/or speculation, which is insufficient. *See Flanagan v. Shively*, 783 F.Supp. 922, 928-29 (M.D. Pa.) (motion to dismiss granted because allegations were insufficient and conclusory), *aff'd*, 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993).

## IV.    CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff's Second Amended Complaint in its entirety.


Respectfully Submitted,


Date:  March 25, 2019                                    */s/ Meghan E. Claiborne*
                                                         Meghan E. Claiborne
                                                         Deputy City Solicitor
                                                         Pa. Attorney ID No. 315918
                                                         City of Philadelphia Law Department
                                                         1515 Arch Street, 14th Floor
                                                         Philadelphia, PA 19102
                                                         215-683-5447 (phone)
                                                         215-683-5397 (fax)
                                                         meghan.claiborne@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ROBERT HOLTON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 18-2228** |
| | : | |
| **BOBBY HENON, et al.** | : | |
| **Defendants.** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the Defendants' Motion to Dismiss

Plaintiff's Second Amended Complaint was filed via the Court's electronic filing system

and is available for downloading.

Date:  March 25, 2019                          Respectfully submitted,

<u>*/s/ Meghan E. Claiborne*</u>
Meghan E. Claiborne