# First Judicial District of Pennsylvania

*170401646*
*Robert Holton V. City Of Philadelphia Dept Of Licenses*

---

*Motion Volume 1*
*April 12, 2017*



---

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File holton.txt.txt, 85 Pages*
*CRS Catalog ID: 19020440*



## Page 1

[1]   IN THE COURT OF COMMON PLEAS
       FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
[2]              CIVIL TRIAL DIVISION
                     - - -
[3] ROBERT HOLTON          :
                           :
[4]      vs.               :
                           :
[5] CITY OF PHILADELPHIA   :
    DEPARTMENT OF LICENSES and  :
[6] INSPECTIONS OPERATIONS      :
    DIVISION, EAST DISTRICT   :
[7]      and               :
    CITY OF PHILADELPHIA   :
[8] DEPARTMENT OF LICENSES and  :
    INSPECTIONS          : NO. 170401646
[9]
                     - - -
[10]
[11]          MOTIONS HEARING
[12]                 - - -
[13]           April 12, 2017
             Room 426, City Hall
[14]        Philadelphia, Pennsylvania
[15]                 - - -
[16] BEFORE: HONORABLE ABBE F. FLETMAN, J.
[17]                 - - -
[18]   Reported By:  Julie Davis, RPR
                 Official Court Reporter
[19]
[20]
[21]
[22]
[23]
[24]
[25]

## Page 2

[1] APPEARANCES:
[2]  JACK M. BERNARD, ESQUIRE
     Attorney for Petitioner
[3]
     EDWARD P. JEFFERSON, ESQUIRE
[4]  BEVERLY PENN, ESQUIRE
     Attorneys for Respondent
[5]
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

## Page 3

[1]              INDEX
[2] RESPONDENT'S EVIDENCE
    WITNESS              DR  CR  RDR RCR
[3]  DARIN GATTI
     By Mr. Jefferson      34
[4]  By Mr. Bernard        38
[5] JAMES TITUS
     By Mr. Jefferson      40
[6]  By Mr. Bernard        63
[7] SILVIO DI GUGLIELMO
     By Mr. Jefferson      71
[8]  By Mr. Bernard        74
[9]
[10]
[11]
[12]           EXHIBITS
    Number      Description       Page
[13] City A    Notices of Violations    44
    City B    Notice of Intent to Cease  45
[14] City C    Certification       51
    City D    Site Violation Notice   53
[15] City E-1 thru 4 Photographs      56
    City E-5    Photograph      72
[16] City E-6    Photograph      78
    City E-7    Photograph      79
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

## Page 4

[1]                 - - -
[2]      (Whereupon, court was duly convened.)
[3]                 - - -
[4]      THE LAW CLERK: Good afternoon, Your
[5] Honor.
[6]      THE COURT: Good afternoon, everyone.
[7]      THE COURT REPORTER: Counsel, can you
[8] please state your names for the record?
[9]      MR. BERNARD: Yes.
[10]     My name is Jack Bernard. I'm an
[11] attorney, and I represent the plaintiff, Robert
[12] Holton.
[13]     MR. JEFFERSON: Good afternoon, Your
[14] Honor. Edward Jefferson on behalf of the City
[15] of Philadelphia.
[16]     MS. PENN: Good afternoon, Your Honor.
[17] Beverly Penn on behalf of the City of
[18] Philadelphia.
[19]     THE COURT: Good afternoon.
[20]     Just give me a moment, please, to sign
[21] on.
[22]     This is our Case No. 1704001646.
[23]     MS. PENN: Correct.
[24]     THE COURT: All right.
[25]     Mr. Bernard, you want me to enjoin the

Page 5

[1] City from enforcing its Cease Operations Order.
[2]      MR. BERNARD:  That is correct, Your
[3] Honor.
[4]      THE COURT:  Okay.
[5]      MR. BERNARD:  May I speak?
[6]      THE COURT:  Yes, please.
[7]      In this courtroom it's better to sit
[8] and move the microphone.
[9]      MR. BERNARD:  Understood.
[10]      THE COURT:  Otherwise, especially with
[11] the rumbling subway cars, it's hard to hear.
[12]      Go ahead.
[13]      MR. BERNARD:  How's this?
[14]      THE COURT:  It's better if the mike is
[15] closer to your mouth, actually.
[16]      MR. BERNARD:  Your Honor, we're here
[17] solely and exclusively to maintain the status
[18] quo while my client is appealing to the Board
[19] of License and Inspection Review.  In that
[20] matter he's represented by my colleague, Craig
[21] Sopin.  Mr. Sopin is prepared to testify if
[22] Your Honor will permit him to testify by
[23] telephone.
[24]      THE COURT:  What would he be testifying
[25] about?

Page 6

[1]      MR. BERNARD:  That he applied for a
[2] stay before the Board of License and Inspection
[3] Review.  And they said, "You're in the wrong
[4] place," pointing to City Hall, "You have to go
[5] across the street."
[6]      THE COURT:  So a stay was applied for
[7] before the L&I Board.
[8]      MR. BERNARD:  That is correct, Your
[9] Honor.
[10]      THE COURT:  Well, why isn't he here?
[11] Why does he have to testify by telephone?
[12]      MR. BERNARD:  Well, that's my fault,
[13] Your Honor.  I did not anticipate exactly how
[14] things would play out today.  He's in his
[15] office.
[16]      THE COURT:  Which is where?
[17]      MR. BERNARD:  In the Curtis Building.
[18]      THE COURT:  Well, tell him if he wants
[19] to testify, he should come on up.
[20]      MR. BERNARD:  Okay.
[21]      THE COURT:  But, I mean, if he filed
[22] for a stay, isn't there some documentary
[23] evidence of having done that?
[24]      MR. BERNARD:  Well, I don't think
[25] that's contested.

Page 7

[1]      THE COURT:  Well, let me ask.
[2]      Is it contested that a stay was
[3] requested before the L&I Board?
[4]      MR. JEFFERSON:  Your Honor, I don't
[5] have reason to disbelieve what counsel is
[6] saying, although I have no independent
[7] knowledge that he has asked for a stay.  And I
[8] have no independent knowledge if he had asked
[9] for the stay, that he was refused a stay by the
[10] Board.
[11]      THE COURT:  Wouldn't there be like a
[12] record, a docket; something that shows that it
[13] happened?
[14]      MR. JEFFERSON:  I feel really awkward
[15] sitting down addressing the Court, but I'll try
[16] to do that.
[17]      THE COURT:  I don't care for it either,
[18] but I'd rather hear you than see you.
[19]      MR. JEFFERSON:  Okay.  I'm going to try
[20] to like focus on the fact that I'm sitting and
[21] I'm talking to the Court.
[22]      THE COURT:  It's even better if you
[23] move the microphone close to you.
[24]      Trust me, when I was a lawyer, I always
[25] wanted to stand.  I'm just telling you, the

Page 8

[1] acoustics in this courtroom are such that I
[2] really cannot hear you.  And, even more
[3] importantly, Julie can't hear you if you don't
[4] speak into the mike.
[5]      MR. JEFFERSON:  I appreciate it.
[6]      Thank you, Your Honor.
[7]      In response to your question, I've
[8] never seen myself a document that was generated
[9] by the department with respect to a refusal for
[10] a person that made an application for a stay.
[11] So I don't know.
[12]      THE COURT:  Well, here's the question:
[13] Do I need to call this witness down to testify
[14] that he -- are you arguing that Mr. Bernard
[15] failed to exhaust the administrative remedies
[16] by seeking a stay before the L&I Board before
[17] coming here?
[18]      MR. JEFFERSON:  That would be the first
[19] argument.
[20]      THE COURT:  Okay.
[21]      Well, then I guess we've got to -- I
[22] mean, if you're not conceding that it happened,
[23] then we're going to need to bring him in to
[24] testify to it.
[25]      MR. JEFFERSON:  And I hate to do that,

Page 9

[1] but I don't -- it's like every other kind of
[2] evidence.  I mean, honestly, we expected
[3] Mr. Holton, who is the person who brought the
[4] lawsuit, to be here.
[5]       THE COURT:  Well, we haven't even
[6] gotten that far.
[7]       MR. JEFFERSON:  I know, but...
[8]       THE COURT:  I mean, Mr. Bernard, who is
[9] an officer of the court, has told us that this
[10] has happened.  It's already 4:13.  I get in
[11] trouble when I keep people after 5:00.  So just
[12] make a decision.
[13]       Do you want him to bring him in or not?
[14]       MR. JEFFERSON:  Well, as an officer of
[15] the court, I will accept his representation
[16] that Mr. Sopin, who is also a lawyer, you know,
[17] went to the Board of License and Inspection
[18] Review and asked -- I don't know if he asked
[19] appropriately for a stay, an application for a
[20] hearing.  I don't know what he did.
[21]       THE COURT:  Well, Mr. Bernard, was this
[22] oral or was this done in writing?
[23]       MR. BERNARD:  Your Honor, Mr. Sopin
[24] took all steps necessary to obtain the stay
[25] before the Board of License and Inspection

Page 10

[1] Review.
[2]       THE COURT:  So was it in writing or was
[3] it oral?
[4]       MR. BERNARD:  I'm assuming it was in
[5] writing.
[6]       THE COURT:  So you don't know.  Your
[7] answer to the question is, you don't know.
[8]       MR. BERNARD:  Well, I don't know the
[9] mechanism that's used by the Board.  Very often
[10] the administrative agency itself is being asked
[11] not only to review the order below, if I can
[12] use that expression, but also to stay
[13] enforcement of the order below until it, you
[14] know, exercises its power of review.  In other
[15] words, they're being asked to do both things.
[16]       THE COURT:  Well, other than Mr. Sopin,
[17] what evidence do you want to present to the
[18] Court this afternoon?
[19]       MR. BERNARD:  I only have Mr. Sopin's
[20] testimony, Your Honor.  And if I have to bring
[21] him down --
[22]       THE COURT:  Well, how does Mr. Sopin
[23] get you likely a success on the merits and
[24] irreparable harm and balancing of the harm and
[25] all of those elements you need to prove to get

Page 11

[1] an injunction?
[2]       MR. BERNARD:  Well, he's not being
[3] called for that purpose.
[4]       THE COURT:  Well, how do you prove your
[5] case without any witnesses?  Did I miss the
[6] declarations with the papers?
[7]       MR. BERNARD:  Everything is in our
[8] Complaint, Your Honor.
[9]       And, Your Honor, I again say that all
[10] we're asking for now is to maintain the status
[11] quo.
[12]       THE COURT:  But it's the status quo
[13] ante when it's an injunction.  And you have to
[14] prove the elements to obtain an injunction.
[15]       MR. BERNARD:  Okay.
[16]       THE COURT:  So, I mean --
[17]       MR. BERNARD:  Then I'm going to have to
[18] ask for leave to adjourn this hearing and -- I
[19] did not understand that that was going to be
[20] the procedure.  I likened this procedure today
[21] to a TRO.  As a matter of fact, we were told
[22] that we needed a TRO.
[23]       THE COURT:  Well, first of all, there's
[24] nothing even called a TRO in Pennsylvania
[25] practice.  There's something called a special

Page 12

[1] injunction.  But that's typically done in
[2] matters of, you know, life and -- you know,
[3] life and health and those kind of things when
[4] the other side isn't able to get here.  But
[5] they're here, so...
[6]       MR. BERNARD:  And I agree with you.
[7] Under Rule 1531, there is only a preliminary
[8] injunction.
[9]       THE COURT:  Well, there's something
[10] called a special injunction.
[11]       MR. BERNARD:  Right.  But I don't think
[12] that's --
[13]       THE COURT:  I don't think that's
[14] relevant here.
[15]       MR. BERNARD:  But it has been, as far
[16] as I know, a practice to call it a TRO when
[17] you're seeking provisional relief pending a
[18] hearing on the merits.  And that's what we're
[19] seeking today, to maintain the status quo.
[20]       THE COURT:  But what's the basis of
[21] that?  You still need to satisfy the elements
[22] to get an injunction.
[23]       MR. BERNARD:  No, Your Honor.  We're
[24] simply asking to preserve the status quo
[25] pending a formal plenary hearing on injunctive

Page 13

[1] relief. That's what we're asking for today.
[2] **THE COURT**: But you don't even have --
[3] I mean, what's the irreparable harm?
[4] **MR. BERNARD**: We're not asking the
[5] Court to determine that there's been
[6] irreparable harm. We're only asking the Court
[7] to preserve the status quo. I think that's a
[8] legitimate application, Your Honor.
[9] In other words, if you're seeking a
[10] preliminary injunction, which is what is
[11] involved in most cases, it may evolve to a
[12] permanent injunction. But if you're seeking a
[13] preliminary injunction, the first thing you
[14] want to do is maintain the status quo;
[15] otherwise, then everything becomes moot.
[16] **THE COURT**: But, Mr. Bernard, there's
[17] standards for obtaining -- well, basically what
[18] you're asking for now is a stay. And there's
[19] standards for obtaining a stay. They're the
[20] same standards as obtaining an injunction. I
[21] mean, cite me a case or a rule if I'm wrong.
[22] It wouldn't be the first time. But that's my
[23] understanding of the law.
[24] **MR. BERNARD**: A stay of enforcement of
[25] an order from an administrative agency --

Page 14

[1] **THE COURT**: I mean, if there was no
[2] showing necessary other than you showing up and
[3] saying I want a stay, then there would be a
[4] stay in each and every case.
[5] **MR. BERNARD**: Well, there are
[6] provisions in the Philadelphia Code that
[7] specifically state that when there is an
[8] appeal, you're entitled to a stay.
[9] **THE COURT**: What provisions in
[10] particular?
[11] **MR. BERNARD**: The Health Code, Title 6.
[12] I think it's Section 604, if I'm not mistaken.
[13] **THE COURT**: So Title 6, Section 604 of
[14] the Health Code, the Philadelphia Health Code?
[15] **MR. BERNARD**: That's correct.
[16] Counsel has the code there.
[17] **THE COURT**: All right.
[18] Mr. Jefferson, do you have anything to
[19] add?
[20] **MR. JEFFERSON**: No, Your Honor.
[21] In the absence of any proof -- I mean,
[22] I have witnesses here to -- you know, to
[23] oppose, you know, evidence that would be put on
[24] to show that somehow -- to justify their
[25] request for relief.

Page 15

[1] But, you know, on the basis of this,
[2] the only thing I will say with respect to a
[3] stay of enforcement is that ordinarily when
[4] someone appeals -- and I have the code
[5] sections. It's in the Administrative Code, not
[6] the Health Code. It would be -- I can point
[7] Your Honor to it.
[8] **THE COURT**: Yes.
[9] **MR. JEFFERSON**: The Administrative Code
[10] would be Title 4 -- the Administrative Code is
[11] a subcode. So it would be the Administrative
[12] Code of the Philadelphia Code, Section A-805.
[13] And what that says is --
[14] **THE COURT**: Wait a second.
[15] The Administrative Code of the
[16] Philadelphia Code, Section --
[17] **MR. JEFFERSON**: A-805.
[18] And ordinarily there is a stay. But
[19] that section will tell you that where there's
[20] been a certification that this location, you
[21] know, presents either a public nuisance or a
[22] detrimental and adverse -- immediate adverse
[23] effect on the health, welfare or safety of the
[24] public, you don't get an automatic stay.
[25] That's what counsel was talking about.

Page 16

[1] As a matter of fact, on the phone today I told
[2] him about that.
[3] **THE COURT**: What's the huge danger if
[4] there's no --
[5] **MR. JEFFERSON**: Well, the huge danger
[6] is -- and this is why we have the chief
[7] surveyor for the City of Philadelphia here.
[8] The huge danger is, what's taking place at that
[9] location, it's done within the Frankford Creek
[10] right of way. And right now they're
[11] contaminating the water. Every time it rains,
[12] whatever it is that's coming from this
[13] scrapyard is going into the Frankford Creek.
[14] And ultimately it's becoming a part of the
[15] water that we drink because that's the water
[16] that gets recycled for the City of Philadelphia
[17] to consume.
[18] So it is an emergency inasmuch as --
[19] you know, the more this activity continues, the
[20] greater likelihood it is for people to actually
[21] be harmed. And I would argue that it's also a
[22] public nuisance by virtue of the fact of the --
[23] you know, the mere fact that he's interfering
[24] with the right of the public, you know, to have
[25] like clean water in the Delaware River.

**THE COURT**: So I'm looking at the section you sent me to --

**MR. JEFFERSON**: Yes, Your Honor.

**THE COURT**: -- "Action Pending Appeal."

**MR. JEFFERSON**: Yes.

**THE COURT**: "A-805.1 Stay of action: Whenever an appeal filed pursuant to Sections A-801 or 803 is pending, compliance with the decision, notice of violation, order, or license suspension or revocation which is the subject of appeal shall not be required except as provided in Section A-805.2."

805.2 says: "An appeal shall not constitute a stay of proceedings where either department finds and certifies in writing that the violation is intentional or that there exists a condition of immediate danger or hazard to health, safety or welfare which requires immediate compliance. An appeal shall not constitute grounds for lifting a Stop Work Order or Cease Operations Order."

**MR. JEFFERSON**: Exactly.

**THE COURT**: So what we have here is a Cease Operations Order.

**MR. JEFFERSON**: Yes, Your Honor.

**THE COURT**: All right.

Mr. Bernard, how do you get around that?

**MR. BERNARD**: Well, I think the burden shifts to the City under these circumstances to show that we're not entitled to a stay.

Presumably, according to what has just been read to the Court and which the Court read back, there is a presumptive right to a stay absent the evidence that's cited in that rule. And the same, by the way, is true in the Health Code. It's almost the exact same language. So I think the burden shifts to the City to show that.

But one other thing, Your Honor, that I have to mention. We've discussed this. It goes back a few years, actually. There's a property issue here. The contention by the City -- and I think counsel will admit this -- is that my client is encroaching on City property, if not trespassing on City property. That's what this is all about. I'm told if my client will move his operation back from the area in question, that the violations will go away, quote/unquote.

So, you know, I don't think this is the context in which that sort of issue should be litigated and maybe we need a plenary hearing on that issue.

**THE COURT**: Well, the only thing that's before me now is your request for a stay.

**MR. BERNARD**: To which we're entitled.

**THE COURT**: I have to tell you, I'm inclined to agree that it would be your burden to show the Court that 805.2 is satisfied.

**MR. JEFFERSON**: Your Honor, I've never heard that before. The reason I say that is, there's some showing on the part of counsel that he would have to bring forth to the Court, in terms of evidence, the showing that would show that there would be irreparable harm.

**THE COURT**: But there's nothing in the record that -- you know, that there's this certification that there exists this horrible condition.

**MR. JEFFERSON**: It is in the record. As a matter of fact, it's in the pleading that counsel actually filed.

**THE COURT**: All right. Let me see.

**MR. BERNARD**: I didn't file anything

that represented that. I filed a list of violations.

**THE COURT**: Mr. Jefferson, what are you referring to?

**MR. JEFFERSON**: I'm referring to Exhibit A, which is the Notice of Intent to Cease Operations and Order.

**THE COURT**: Okay. Give me a second here.

(Brief pause.)

**THE COURT**: I mean, you know, it's up to you. But it seems to me that I have a statutory standard here that tells me when I have to issue a stay and when I don't. So if you don't want to demonstrate to me that the department found and certified in writing that there exists a condition of immediate danger to health, that's fine.

**MR. JEFFERSON**: I'll be happy to do that.

However, I'd also like to direct your attention to Exhibit B. Exhibit B is the certification from which counsel will try to get relief from this Court.

**MR. BERNARD**: Exhibit B, Your Honor, is

Page 21

[1] a list of violations which we --
[2]      THE COURT:  Mr. Bernard, I have to read
[3] it.  Okay?  And we're not going to do, you
[4] know, tennis in this courtroom.  You presented
[5] what you had to say.  Now I'm hearing what the
[6] City has to say.  I will come back to you.
[7]      MR. BERNARD:  Very well.
[8]      THE COURT:  I mean, again,
[9] Mr. Jefferson, it's up to you, if you want
[10] to -- if this is what you want to rest on.
[11]      MR. JEFFERSON:  No.
[12]      And just for purposes of the record,
[13] Your Honor, with respect to the certification
[14] to which I've just referred Your Honor as
[15] Exhibit B, you'll see that it has the
[16] inspection of March the 2nd.  It says:  "Notice
[17] of Violation, Building, Construction,
[18] Occupancy, Administrative Code, Zoning and Use
[19] Registration permits."  And then it says under
[20] that:  "Cease Operations Order pursuant to
[21] Title 14, the Zoning and Planning Code."  That
[22] was Title 14, Section 306-E.
[23]      Now, if I were to direct your attention
[24] to --
[25]      THE COURT:  I actually don't see where

Page 22

[1] you are.
[2]      You're in Exhibit B?
[3]      MR. JEFFERSON:  I'm sorry.  Forgive me.
[4]      Yes, it's Exhibit B.
[5]      THE COURT:  Okay.
[6]      MR. JEFFERSON:  And then it has
[7] inspection, March 2nd.  That line that says,
[8] "subject premises."
[9]      THE COURT:  "Upon inspection of the
[10] subject premises."
[11]      Is that the one you're directing me to?
[12]      MR. JEFFERSON:  No.  It's right above
[13] that.  It's right above that.
[14]      THE COURT:  Now I see it.
[15]      MR. JEFFERSON:  So with respect to
[16] Title 14, whenever there's a Cease Operations
[17] pursuant to Title 14 there is no stay, there is
[18] no automatic stay.
[19]      And I can refer Your Honor to the
[20] section of Title 14 of the Zoning Code, which
[21] would show that, you know, we can enforce a
[22] cease operations and there's no provision for a
[23] stay.
[24]      THE COURT:  So you're saying the court
[25] has no power to stay a Cease Operations Order

Page 23

[1] of L&I?
[2]      MR. JEFFERSON:  No, I'm not saying that
[3] at all.
[4]      THE COURT:  Okay.
[5]      MR. JEFFERSON:  What I'm saying, Your
[6] Honor, is that there's two different code
[7] sections at play in this case.  One is the
[8] Property Maintenance Code.  Specifically, the
[9] Administrative Code, the Fire Code.  They're
[10] all parts of Title 4, which is -- Title 4 is
[11] one of the reasons for the cease operations.
[12]      The other reason for the cease
[13] operations applies under not Title 4 but under
[14] Title 14.  Title 14 is the Zoning and Planning
[15] Code.  And under Title 14 there is no stay.  I
[16] mean, there is no -- I mean, you get no stay
[17] for a cease that's brought under Title 14,
[18] which would mean if somebody needed to get a
[19] stay, they would not go to the Board of License
[20] and Inspection Review.  They would come to
[21] court and try to get --
[22]      THE COURT:  Didn't you just tell me
[23] five minutes ago that he was wrong to --
[24]      MR. JEFFERSON:  What I told Your Honor
[25] was with respect to -- we did a certification.

Page 24

[1] I pointed Your Honor to this certification.
[2] Under this certification there are two
[3] different code sections at play.  And it's set
[4] out very specifically here.  One says:  Notice
[5] of Violation, case number, Title 4.  If Your
[6] Honor wants to the follow along with me, it
[7] says:  Title 4, Building, Construction,
[8] Occupancy Code, Administrative Code, Zoning and
[9] Use Registration permits.  It says:  Cease
[10] Operations Order pursuant to Title 14, Zoning
[11] and Planning Code.
[12]      Title 14 is a technical code.  Title 4
[13] is not a technical code.  So whenever there's
[14] any action with respect to a technical code,
[15] such as what this cease represents here, we
[16] don't even have to do a certification.  We did
[17] the certification on the basis of the other
[18] violations that were cited under Title 4, which
[19] is the nontechnical part of the code.
[20]      And that's also set out -- getting Your
[21] Honor back to the A-800 series, where you had
[22] just read about the compliance under A-805,
[23] which is where I directed Your Honor.
[24]      THE COURT:  Okay.
[25]      MR. JEFFERSON:  Under Chapter 8 of the

Page 25

[1] Administrative Code it talks about appeals and
[2] it talks about technical and nontechnical
[3] appeals. And this technical appeal would
[4] actually go before the Zoning Board, this
[5] aspect of this appeal. There's two different
[6] things here.
[7]      **THE COURT**: I understand. There's
[8] zoning and L&I. I get that.
[9]      **MR. JEFFERSON**: Exactly.
[10]      So with respect to a cease operations
[11] that would invoke an appeal to the Zoning
[12] Board, there's no automatic stay. We don't
[13] have to certify anything. The cease happens
[14] unless someone comes into court with proof that
[15] somehow -- you know, if the Court were to find
[16] that they could satisfy the elements, the six
[17] requirements under the section for a
[18] preliminary injunction to Your Honor's
[19] satisfaction, you know, they would have a right
[20] for a stay until that matter was resolved
[21] before the Zoning Board. That's what I'm
[22] saying.
[23]      So you want us to put on evidence, and
[24] I have people here.
[25]      **THE COURT**: This is not my case.

Page 26

[1]      **MR. JEFFERSON**: I know.
[2]      **THE COURT**: I just have to decide it
[3] based on the record that's in front of me.
[4]      **MR. JEFFERSON**: I know.
[5]      And, Judge, what I'm saying is, it's
[6] not your case and it's not our case. It's his
[7] case. And he bears the burden of proof here
[8] when he's trying to get relief under Title 14
[9] especially. And I would make an argument --
[10]      **THE COURT**: So you're basically saying
[11] even if he's right about L&I, he's not right
[12] about zoning.
[13]      **MR. JEFFERSON**: That's exactly what I'm
[14] saying. And the cease would still stand.
[15]      So, you know, I think that -- although
[16] I disagree with Your Honor's interpretation.
[17] And here again, with all deference to the
[18] Court, he would still have to prove the
[19] elements with respect to Title 14,
[20] notwithstanding what Your Honor would say to
[21] the City about proving why we should not give
[22] him a stay because of the compliance.
[23]      **THE COURT**: I understand what you're
[24] saying, I do. You're saying basically the
[25] standard is different whether it's L&I or

Page 27

[1] zoning.
[2]      **MR. JEFFERSON**: Exactly.
[3]      **THE COURT**: I understand.
[4]      Mr. Bernard, what do you have to say to
[5] that?
[6]      **MR. BERNARD**: Well, what I have to say
[7] to that is that the operative document that
[8] brings my client here today is a Notice of
[9] Intent to Cease Operations and Order, which is
[10] Exhibit A. And it says that the Notice of
[11] Intent to Cease Operations and Order can only
[12] be vacated by obtaining an immediate stay of
[13] enforcement as set out in the Administrative
[14] Code, not the Zoning Code, or correcting the
[15] cited violations and passing inspection by the
[16] department -- that's the Department of Licenses
[17] and Inspections, obviously -- prior to the
[18] cease operations effective date.
[19]      **And then it says**: Should you wish to
[20] appeal the notice of violation and the cease
[21] operations, you must file that appeal with the
[22] Board's administration within 30 days of the
[23] latter of this notice -- I don't know what
[24] latter means -- within 30 days of the latter of
[25] this notice. Then it tells how to get the

Page 28

[1] appeals forms.
[2]      So I don't understand how counsel can
[3] shift from this document, which is why we're
[4] here today, which is why my client has been
[5] shut down, to, you know, a different ordinance,
[6] a different code without notice to the owner of
[7] the property.
[8]      We have, Your Honor -- I don't mean to
[9] repeat myself. I have a tendency to do that.
[10] But we have --
[11]      **THE COURT**: Well, don't repeat yourself
[12] because time is wasting away while you all are
[13] debating whether you're going to put on
[14] evidence or not.
[15]      I mean, he has a point. The Notice of
[16] Intent to Cease Operations and Order does not
[17] reference zoning. It talks about L&I.
[18]      **MR. JEFFERSON**: It does. It talks
[19] about the Board's administration. And then it
[20] talks about getting the stay that they could
[21] get on those violations that were cited under
[22] Title 4 from the Board of License and
[23] Inspection Review.
[24]      But with respect to the zoning
[25] cease that has been made a part of the

Page 29

[1] certification --
[2] THE COURT: But there's no order for
[3] them to cease and desist as a result of zoning
[4] violations. It's an order to cease and desist
[5] as a result of L&I.
[6] MR. JEFFERSON: I'd have to disagree
[7] with Your Honor.
[8] THE COURT: Well, where are zoning
[9] violations cited in Exhibit A?
[10] MR. JEFFERSON: It's saying -- even
[11] from the very beginning it's saying they
[12] conducted an inspection of the referenced
[13] premises and determined that it's in violation
[14] of the Philadelphia Code. And it's saying that
[15] these violations may pose a threat to the
[16] safety, health, and welfare of the occupants
[17] and surrounding community and require immediate
[18] correction.
[19] And then it goes on to talk about the
[20] actual case and the intent to cease operations.
[21] And then it talks about if the cease
[22] operations -- I'm sorry. The establishment
[23] will be required to close or that portion of
[24] unless -- or uses of the premises as specified
[25] in the order will be forced to cease

Page 30

[1] immediately. And it's saying this Notice of
[2] Intent to Cease Operations and Order can only
[3] be vacated by obtaining an immediate stay of
[4] enforcement as set out in the Administrative
[5] Code -- and the Administrative Code is where I
[6] pointed to Your Honor as being technical versus
[7] nontechnical -- the Administrative Code or
[8] correcting the cited violations and passing
[9] inspection by the department prior to the cease
[10] operations effective date.
[11] Now, let me just interject one more
[12] thing, if I may, Your Honor. If there was an
[13] application for a stay, perhaps Mr. Sopin can
[14] send it to a phone so I can look at it, and
[15] then that would be some evidence that --
[16] because it seems to me -- I don't know when he
[17] went there for that because they filed the
[18] appeal on April the 3rd. This was the appeal
[19] to the Board of License and Inspection Review.
[20] They hadn't filed any other appeal.
[21] So what I'm asking counsel is, what was
[22] the date that this stay was even requested?
[23] MR. BERNARD: I can answer that.
[24] MR. JEFFERSON: So if I could ask
[25] counsel about that.

Page 31

[1] I could call L&I myself. I could call
[2] the Board and find out whether or not a stay
[3] had been, you know, requested and what the
[4] result of that would be. But that still, I
[5] would argue and I am arguing, does not get
[6] around the Title 14 part of the certification
[7] for not having a zoning permit. Zoning permits
[8] are very specifically set out with respect to
[9] getting a zoning permit, what you need to show
[10] in the zoning code, and that's why that section
[11] is set out there. That section says you are
[12] operating without a zoning permit and/or it's
[13] creating a public nuisance or an immediate --
[14] THE COURT: How long has this business
[15] been going on there?
[16] MR. JEFFERSON: For a long time.
[17] But we had given them plenty of notice
[18] back in March. I mean, why didn't they go like
[19] the first week in April, and that way we would
[20] know whether or not they went there.
[21] MR. BERNARD: Well, we have 30 days.
[22] THE COURT: I understand your position.
[23] Mr. Jefferson, are you done with your
[24] presentation?
[25] MR. JEFFERSON: No, I'm not, Your

Page 32

[1] Honor.
[2] I'm done with my argument to the Court.
[3] That's my argument I'm making to the Court with
[4] respect to why the evidence needs to come from
[5] that side. If Your Honor is making a
[6] determination --
[7] THE COURT: I'm not making any
[8] determination. I'm having a hearing on a
[9] motion now.
[10] MR. JEFFERSON: Okay.
[11] THE COURT: As I said, it's your matter
[12] not mine.
[13] MR. JEFFERSON: It is. It's important
[14] enough for me to want to call my witnesses,
[15] Your Honor.
[16] THE COURT: Then let's go.
[17] MR. JEFFERSON: Okay.
[18] THE COURT: Actually, before I do that,
[19] I do have another matter where they have an
[20] agreement. So I'm going to walk them up and do
[21] that.
[22] - - -
[23] (Whereupon, there was a break in the
[24] proceeding.)
[25] - - -

Case 2:18-cv-02228-CFK   Document 25-13   Filed 03/26/19   Page 10 of 24
Robert Holton V. City Of Philadelphia Dept Of Licenses

170401646

Motion Volume 1
April 12, 2017

Page 33

[1]   MR. JEFFERSON:  May I proceed now?
[2]   THE COURT:  Please.
[3]   MR. JEFFERSON:  Thank you.
[4]   Darin Gatti, please, Your Honor.
[5]   THE COURT:  You can pull up another
[6]   chair, but you all have to share.  Because the
[7]   other wonderful thing about this courtroom is
[8]   if I put a witness over there, I can't see the
[9]   witness.
[10]   MS. PENN:  No problem.
[11]   I can sit back, Your Honor.
[12]   THE LAW CLERK:  Sir, can you please
[13]   stand and state your first and last name into
[14]   the microphone.
[15]   THE WITNESS:  My name is Darin Gatti.
[16]   THE LAW CLERK:  Can you please spell
[17]   your last name.
[18]   THE WITNESS:  G-A-T-T-I.
[19]   - - -
[20]   ...DARIN GATTI, having been duly
[21]   sworn/affirmed, was examined and testified as
[22]   follows:
[23]   - - -
[24]   THE LAW CLERK:  Thank you, sir.
[25]   THE COURT:  Don't forget to share that

Page 34

[1]   microphone, which means passing it back and
[2]   forth.
[3]   MR. JEFFERSON:  May I inquire, please?
[4]   THE COURT:  Please.
[5]   MR. JEFFERSON:  Thank you.
[6]   - - -
[7]   DIRECT EXAMINATION
[8]   - - -
[9]   BY MR. JEFFERSON:
[10]   Q.  Mr. Gatti, could you please tell Her Honor what
[11]   position you hold with the City of Philadelphia.
[12]   A.  I'm the chief engineer and surveyor for the
[13]   Philadelphia Streets Department.
[14]   Q.  And with respect to your position, have you had
[15]   any experience with the property that I'm going to refer
[16]   to as 4087 Richmond Street?
[17]   A.  Yes, I have.
[18]   Q.  Let's just talk about 4087 Richmond Street.
[19]   THE COURT:  I'm sorry.  I just didn't
[20]   hear.
[21]   What department did you say?
[22]   THE WITNESS:  Streets Department.
[23]   THE COURT:  Okay.  Thank you.
[24]   You may continue.
[25]   MR. JEFFERSON:  Thank you, Your Honor.

Page 35

[1]   BY MR. JEFFERSON:
[2]   Q.  So with respect to 4087 Richmond Street, what
[3]   kind of property is that?
[4]   A.  The property that's being referred to,
[5]   4087 Richmond Street, is actually the right of way of
[6]   the Frankford Creek just off of Richmond Street.  This
[7]   is a --
[8]   THE COURT:  So, basically, it's
[9]   Richmond and what?
[10]   THE WITNESS:  The nearest intersection
[11]   is Richmond and Lewis.  This is near the Betsy
[12]   Ross Bridge or where Richmond Street crosses
[13]   over the Frankford Creek.  This is actually a
[14]   man-made creek that was built in 1950, back
[15]   around when the Betsy Ross Bridge was built.
[16]   The City condemned the land and constructed
[17]   this creek from just above Richmond Street down
[18]   to the Delaware River.  So this property in
[19]   question right now is the actual right of way
[20]   for the creek.
[21]   BY MR. JEFFERSON:
[22]   Q.  Now, have you visited this property?
[23]   A.  Yes, I have.
[24]   Q.  And with respect to your visit to the property,
[25]   did you observe anything happening at the property that

Page 36

[1]   brings you into court right now?
[2]   A.  There's a business, which appears to be some sort
[3]   of junk or salvage yard, operating on City property
[4]   here.
[5]   Q.  Now, with respect to the observations that you
[6]   made of this junk -- what you've referred to as a junk
[7]   business --
[8]   MR. BERNARD:  He didn't refer to it as
[9]   junk; objection.
[10]   THE COURT:  Sustained.
[11]   BY MR. JEFFERSON:
[12]   Q.  How would you characterize the business that's
[13]   operating right there?
[14]   MR. BERNARD:  Asked and answered;
[15]   objection.
[16]   THE COURT:  Overruled.
[17]   A.  We generally refer to them as junkyards.
[18]   Q.  With respect to what you have observed to be a
[19]   junkyard, does that particular operation pose any type
[20]   of immediate danger to the public in terms of health,
[21]   welfare, and safety of the public?
[22]   MR. BERNARD:  Your Honor, I don't mean
[23]   to burden the Court's time, but that is not a
[24]   proper question.
[25]   THE COURT:  Is that an objection?

Page 37

[1]      **MR. BERNARD**:  Yes.

[2]      **THE COURT**:  What's the grounds?

[3]      **MR. BERNARD**:  That he didn't refer to

[4]  it as a junkyard.  That's what they called it.

[5]      **THE COURT**:  Overruled.

[6]  **BY MR. JEFFERSON**:

[7]   **Q.**  You can answer.

[8]   **A.**  Could you repeat the question?

[9]   **Q.**  Not really, but I will try.

[10]     With respect to what you observed at that

[11]  location operating as a junkyard, could you tell Her

[12]  Honor what, if any, effect that junkyard operation has

[13]  upon the land such as to cause immediate harm to the

[14]  public?

[15]   **A.**  The operation in question, there's a number of

[16]  salvage vehicles there in various degrees of demolition

[17]  you might say.  So there's car parts, auto parts, junk

[18]  cars in the site.  And the site happens to be the

[19]  Frankford Creek, the legal Frankford Creek.  It's on the

[20]  bank of the creek.  And so basically the environmental

[21]  danger here is that every time the creek floods, this

[22]  junkyard can go under water.

[23]     Well, then basically you have a bunch of junk

[24]  cars in the creek, which is less than a thousand feet

[25]  from the Delaware River, which is where half of

Page 38

[1]  Philadelphia gets their drinking water from.  And so not

[2]  only every time -- you know, every time it rains, but

[3]  more importantly every time we have heavy spring floods

[4]  during a high tide on the Delaware River you have a

[5]  danger of oils, antifreezes, battery acids all going

[6]  into the creek, which goes into the river, which goes

[7]  into our drinking system.

[8]   **Q.**  Now, should this operation be operating at all at

[9]  that location?

[10]   **A.**  No.  It's city property.

[11]   **Q.**  Does the mere presence of the items that you've

[12]  talked about at the location continue to pose a danger?

[13]   **A.**  Yes.

[14]      **MR. JEFFERSON**:  That's all I have, Your

[15]  Honor.

[16]      **THE COURT**:  Okay.

[17]      Cross-examine.

[18]              - - -

[19]      CROSS-EXAMINATION

[20]              - - -

[21]  **BY MR. BERNARD**:

[22]   **Q.**  And this is city property.

[23]      How long has it been city property?

[24]   **A.**  Since 1950.

[25]   **Q.**  How long has the business that you've

Page 39

[1]  characterized as a junkyard been there?

[2]   **A.**  I'm not sure.

[3]   **Q.**  More than five years?

[4]   **A.**  I'm not sure when it started operation.

[5]   **Q.**  Well, if I were to represent to you that it's

[6]  been there more than five years, would you have any

[7]  reason to disagree with me?

[8]      **MR. JEFFERSON**:  Well, objection.  He's

[9]  already answered the question.

[10]      **THE COURT**:  Overruled.

[11]      You may answer the question.

[12]   **A.**  I don't know.  We don't -- I don't hold records

[13]  on it, and I don't know when the business opened

[14]  operation.

[15]      **THE WITNESS**:  If counsel wants to

[16]  present evidence that they've been in operation

[17]  for five years, well, they can.  Then they've

[18]  been operating illegally for five years.

[19]   **Q.**  And how long have you held your position as Chief

[20]  Engineer and Surveyor of the City of Philadelphia?

[21]   **A.**  For four years now.

[22]      **MR. BERNARD**:  No other questions.

[23]      **THE COURT**:  Okay.

[24]      **MR. JEFFERSON**:  I have nothing further.

[25]      **THE COURT**:  You can step back.

Page 40

[1]      **THE WITNESS**:  Thank you.

[2]      **THE LAW CLERK**:  Next witness?

[3]      **MR. JEFFERSON**:  James Titus.

[4]      **THE LAW CLERK**:  Sir, before you sit,

[5]  can you please state your name for the record

[6]  and spell your first and last name.

[7]      **THE WITNESS**:  James Titus, T-I-T-U-S.

[8]

[9]      ...JAMES TITUS, having been duly

[10]  sworn/affirmed, was examined and testified as

[11]  **follows**:

[12]              - - -

[13]      **THE LAW CLERK**:  Thank you.

[14]      You can sit now, sir.

[15]              - - -

[16]      DIRECT EXAMINATION

[17]              - - -

[18]  **BY MR. JEFFERSON**:

[19]   **Q.**  Could you please tell Her Honor what position you

[20]  hold with the City of Philadelphia.

[21]   **A.**  I am a supervisor at East District for the City

[22]  of Philadelphia, License & Inspection.  I've been a

[23]  supervisor for almost six years.  Recently I've been

[24]  transferred to East District.  It was back in December,

[25]  I believe.  Prior to that I was in West Philadelphia.

Page 41

[1]   **Q.** And I just want to try to direct your attention
[2] to early March.
[3]      In early March did you visit the premises?
[4]   **A.** Yes.
[5]   **Q.** And with respect to your visit of the premises on
[6] behalf of the Department of License & Inspection, did
[7] you do anything as a result of your observations when
[8] you were there?
[9]   **A.** Usually I'm the supervisor. So the inspector
[10] would do the case and so forth and so on. I took
[11] pictures. I was there with the inspectors just to make
[12] sure everything was going all right. The inspectors did
[13] the case, and then we wrote violations. That's what we
[14] do, we write violations.
[15]   **Q.** So when you say "did the case," are you intending
[16] to say that you wrote violations?
[17]   **A.** Yes.
[18]      **MR. BERNARD:** Objection, Your Honor.
[19] He's leading the witness.
[20]      **THE COURT:** Sustained.
[21]   **A.** (Continued) I did not write any violations.
[22]      **THE COURT:** I sustained an objection,
[23] so you can't answer the question.
[24]      **MR. JEFFERSON:** May I?
[25]      **THE COURT:** Next question.

Page 42

[1] **BY MR. JEFFERSON:**
[2]   **Q.** What do you mean by "case"?
[3]   **A.** The inspector will write violations on the said
[4] property.
[5]   **Q.** And relative to the violations that were written,
[6] have you come into possession of them?
[7]   **A.** The violations?
[8]   **Q.** Yes.
[9]   **A.** Yes. We printed them out and delivered them.
[10]   **Q.** I'm going to hand you what I will refer to the
[11] Court as City's Exhibit 1 and ask that you take a look
[12] at it and tell me --
[13]      **THE COURT:** Well, you need to show it
[14] to Mr. Bernard.
[15]      **MR. JEFFERSON:** Yes, I do.
[16]      Thank you, Your Honor.
[17]      **THE LAW CLERK:** Are you marking this
[18] exhibit, counsel?
[19]      **MR. JEFFERSON:** I am.
[20]      **MR. BERNARD:** Your Honor, there are
[21] exhibits that are being marked that I'm not
[22] permitted to have copies of. So that doesn't
[23] make any sense to me, but...
[24]      **MR. JEFFERSON:** Well --
[25]      **THE COURT:** I'm sorry.

Page 43

[1]      What is this exhibit?
[2]      **MR. JEFFERSON:** Your Honor, these are
[3] the notices of violations that are, you know,
[4] here at issue before you.
[5]      **THE COURT:** That's fine.
[6]      **MR. BERNARD:** In the issue of time,
[7] I'll stipulate that we have these notices of
[8] violations. They're also listed in our
[9] Complaint.
[10]      **THE COURT:** Well, then complaining that
[11] you don't have copies of them really isn't a
[12] true complaint because you're very familiar
[13] with them because you attached them, so...
[14]      **MR. BERNARD:** I didn't attach them. I
[15] attached the list of violations. These are
[16] the --
[17]      **THE COURT:** All right. I understand.
[18]      **THE LAW CLERK:** Can I have them,
[19] please?
[20]      **MR. JEFFERSON:** Yes.
[21]      **THE LAW CLERK:** And what am I marking
[22] them as, sir?
[23]      **MR. JEFFERSON:** Collectively as City
[24] Exhibit A.
[25]           - - -

Page 44

[1]      (Whereupon, City Exhibit A was marked
[2] for identification.)
[3]           - - -
[4]      **THE LAW CLERK:** Do you need them back?
[5]      **MR. JEFFERSON:** I do.
[6]      **THE COURT:** No one ever brings copies
[7] to this court. I'm used to it.
[8]      **MR. JEFFERSON:** I apologize.
[9] **BY MR. JEFFERSON:**
[10]   **Q.** But, in any event, I'm going to hand you what has
[11] been marked as City Exhibit A. Could you please tell
[12] Her Honor what they represent.
[13]   **A.** This is a violation notice sent to the property
[14] at 4087 Richmond Street, Frankford Creek right of way
[15] a/k/a 4087 to Mr. Holton, who is alleging to be the
[16] owner.
[17]   **Q.** And what's the date of that?
[18]   **A.** It says, 3/2/2017.
[19]   **Q.** It says, Initial Notice of Violation and Order.
[20] It says at the top on March the 2nd and March the 8th.
[21]      Is that the date when the notice would have been
[22] sent?
[23]   **A.** I believe so.
[24]   **Q.** And there's a second part of Exhibit A. Could
[25] you please identify that and tell Her Honor what that

Page 45

[1] is.
[2]   A.  Creedon, Kevin Creedon, K Squad, alleged tenant
[3] of Mr. Holton, saying this is a violation, the same
[4] thing, 4087 Richmond Street, Frankford Creek right of
[5] way a/k/a 4087.  On 3/9 the Department of License and
[6] Inspection -- we went back out there to give them the
[7] paperwork and the intent to cease.
[8]   Q.  Let me just stop you right there.
[9]       With respect to the address set out as the
[10] property in violation, were you here during Mr. Gatti's
[11] testimony?
[12]   A.  Yes.
[13]   Q.  Is that the same property that Mr. Gatti was
[14] testifying about?
[15]   A.  Yes.
[16]   Q.  I'm going to hand you what I'm going to refer to
[17] as City Exhibit B.
[18]           - - -
[19]       (Whereupon, City Exhibit B was marked
[20]    for identification.)
[21]           - - -
[22]       THE COURT:  Again, you need to show
[23]    Mr. Bernard before you use it.
[24]       MR. JEFFERSON:  I do have one copy of
[25]    this.

Page 46

[1]       THE COURT:  Then let Mr. Bernard have
[2]    the copy.
[3]       MR. BERNARD:  Judge, I think I can
[4]    speed things up.
[5]       This Notice of Intent to Cease
[6]    Operations is what we're appealing.  The
[7]    violations that counsel and the witness are
[8]    referring to are the violations listed in our
[9]    Complaint under Exhibit B.
[10]       THE COURT:  So are you basically saying
[11]    you have no objection to the entry of City A
[12]    and B into evidence?
[13]       MR. BERNARD:  I'm not saying that.
[14]       THE COURT:  Go ahead.
[15] BY MR. JEFFERSON:
[16]   Q.  I'll ask you to take a look at what we're going
[17] to refer to here as City Exhibit B.
[18]       Do you recognize what that is?
[19]   A.  Notice of Intent to Cease Order for address
[20] violation 4087 Richmond Street, Mr. Robert Holton or
[21] Holton, Robert.
[22]   Q.  And was that served upon the person to whom it is
[23] addressed?
[24]   A.  Yes.
[25]   Q.  In or around the same time as the violations were

Page 47

[1] written?
[2]   A.  Yes.
[3]       MR. JEFFERSON:  So that's going to be
[4]    Exhibit B, Your Honor.
[5]       MR. BERNARD:  I have no objection to
[6]    these, Your Honor.  These are attached to our
[7]    Complaint.
[8]       THE COURT:  So you have no objection to
[9]    Exhibit B being admitted.
[10]       MR. BERNARD:  I have no objection to
[11]    Exhibit B being admitted.
[12]       THE COURT:  So Exhibit City B is
[13]    admitted into evidence.
[14]           - - -
[15]       (Whereupon, City Exhibit B was moved
[16]    into evidence.)
[17]           - - -
[18]       MR. JEFFERSON:  Now, if counsel is not
[19]    objecting, I don't want to go through the whole
[20]    thing for the same intent that's issued simply
[21]    to Mr. Creedon and not to Mr. Holton.  It's the
[22]    same intent.
[23]       MR. BERNARD:  Your Honor, what we're
[24]    agreeing to is that these notices were issued.
[25]       Now, as to the violations themselves,

Page 48

[1]    that the violations are --
[2]       THE COURT:  All you're agreeing to is
[3]    this document is what it purports to be.  I
[4]    understand that you're not agreeing to the
[5]    contents of the document.
[6]       MR. BERNARD:  Very well, Your Honor.
[7]    Thank you.
[8]       THE COURT:  Okay.
[9]       MR. JEFFERSON:  May I proceed then,
[10]    Your Honor?
[11]       THE COURT:  You may.
[12] BY MR. JEFFERSON:
[13]   Q.  With respect to the violation notices that had
[14] been marked and to which you've testified, Exhibit A,
[15] and this Notice of Intent to Cease Operations, were
[16] these things that basically set out what the code
[17] violations were for the operations that were being
[18] conducted at that location?
[19]   A.  The Intent to Cease is the notice telling them
[20] that they're going to be ceased.  The violations was the
[21] first part, which they were hand-delivered and so was
[22] the Intent to Cease.
[23]   Q.  So these are what you, as a supervisor, would
[24] have given to Mr. Holton and to Mr. Creedon?
[25]   A.  Yes.  They're also mailed out.  But we did

Page 49

[1] hand-deliver them.

[2]     MR. JEFFERSON:  Now, if I may, Your

[3] Honor, never having seen these before, I can

[4] represent that I have another initial notice of

[5] violation made out to Mr. Holton and a final

[6] warning that's made out to Kevin Creedon.

[7] These were a part of Exhibit A.

[8]     THE COURT:  Well, I mean --

[9]     MR. JEFFERSON:  I just don't want it to

[10] be omitted from the record.

[11]     THE COURT:  Well, presumably at some

[12] point you're going to seek to admit City A.

[13] And either there will be an objection or there

[14] won't, and I'll rule on it.  And either it will

[15] become part of the record or it won't.

[16]     And, by the way, I don't have a

[17] preference as to whether you seek admission as

[18] you go or you wait until the end of your

[19] presentation.

[20]     MR. JEFFERSON:  That's fine.

[21]     THE COURT:  Although I typically don't

[22] look at exhibits until they're admitted, so...

[23]     MR. JEFFERSON:  So that's why I'm

[24] making the point.

[25]     At this point I will move for their

Page 50

[1] admission so Your Honor can take a look.

[2]     THE COURT:  So you're moving City A in.

[3]     MR. JEFFERSON:  Yes, I am.

[4]     THE COURT:  Is there an objection?

[5]     MR. BERNARD:  I have a question, but I

[6] will not object to the admission of the

[7] Exhibit.

[8]     THE COURT:  Okay.

[9] City A is admitted subject to what?

[10]     MR. BERNARD:  Cross-exam.

[11]     THE COURT:  Oh, of course.

[12]     So City A is admitted into evidence for

[13] purposes of this hearing.

[14]     MR. JEFFERSON:  Thank you.

[15]     - - -

[16]     (Whereupon, City Exhibit A was moved

[17] into evidence.)

[18]     - - -

[19]     MR. JEFFERSON:  And have we marked City

[20] Exhibit B yet?

[21]     THE COURT:  City B has been admitted.

[22]     MR. JEFFERSON:  Okay.

[23] Thank you, Your Honor.

[24]     THE COURT:  Although you all are in big

[25] trouble if you're counting on me to keep track

Page 51

[1] of exhibits.

[2] BY MR. JEFFERSON:

[3]  Q.  So I want to hand you four pages of paper, which

[4] I want to refer to for purposes of the record -- I'm

[5] going to show them to counsel, but I'm going to refer to

[6] these, Mr. Titus, as Exhibit C for the City.

[7]     - - -

[8]     (Whereupon, City Exhibit C was marked

[9] for identification.)

[10]     - - -

[11]     MR. JEFFERSON:  And I will represent

[12] that the certification that I'm handing to the

[13] witness is in his pleading.

[14]     MR. BERNARD:  I have this, Your Honor.

[15] It is part of our Complaint.

[16]     THE COURT:  Okay.

[17] BY MR. JEFFERSON:

[18]  Q.  So, very briefly, was this the certification that

[19] was served to Mr. Holton and Mr. Creedon along with the

[20] intent to cease?

[21]  A.  That's correct.

[22]     MR. JEFFERSON:  So I will move for

[23] their admission at this time, Your Honor.

[24]     THE COURT:  Any objection?

[25]     MR. BERNARD:  No objection.

Page 52

[1]     THE COURT:  So City C is admitted.

[2]     - - -

[3]     (Whereupon, City Exhibit C was moved

[4] into evidence.)

[5]     - - -

[6] BY MR. JEFFERSON:

[7]  Q.  And with respect to the implementation of the

[8] cease operations at the premises located at 4087

[9] Richmond Street, did the Notice of Intent to Cease

[10] Operations --

[11]     THE COURT:  You're not using the mike,

[12] which means I can't hear you.

[13]  Q.  (Continued) And now with respect to the site

[14] violation, when was the cease operations to have taken

[15] place at the premises?

[16]     MR. BERNARD:  I object to the form of

[17] that.  The document speaks for itself.

[18]     MR. JEFFERSON:  The document doesn't

[19] speak for itself.

[20]     THE COURT:  Overruled.

[21]     MR. JEFFERSON:  But I will withdraw the

[22] question.

[23]     THE COURT:  All right.  Fine.

[24] BY MR. JEFFERSON:

[25]  Q.  So when did the Department of Licenses and

Page 53

[1] Inspections go to the premises to execute the cease
[2] operations?
[3]    **A.** Today.
[4]    **Q.** And was today the date that was set forth as
[5] being the date when the department was going to appear
[6] at the premises to implement the cease operations?
[7]    **A.** That's correct.
[8]    **Q.** And where does it say that?
[9]    **A. It says here**: The intent to cease operations
[10] will be effective 4/12/17.
[11]       **THE COURT**: Which document are you --
[12]       **THE WITNESS**: Document B, Notice of
[13]    Intent to Cease Operations.
[14]       **THE COURT**: Okay. I see it.
[15]    Thank you.
[16] **BY MR. JEFFERSON**:
[17]    **Q.** Now I'm going to hand you two pieces of paper
[18] that I'm going to refer to as City Exhibit D. And I'm
[19] going to hand them to counsel so he can take a look at
[20] them.
[21]        - - -
[22]      (Whereupon, City Exhibit D was marked
[23]    for identification.)
[24]        - - -
[25]       **MR. BERNARD**: Your Honor, these I

Page 54

[1] haven't seen before. So if I can just take a
[2] minute to look at them.
[3]       **THE COURT**: You may.
[4]      (Brief pause.)
[5]       **MR. BERNARD**: Thank you.
[6] **BY MR. JEFFERSON**:
[7]    **Q.** Now, referring your attention to what's being
[8] called City Exhibit D, could you please identify what
[9] these documents are. Tell Her Honor what they're used
[10] for.
[11]    **A.** This is a site violation notice that is given to
[12] the owner, telling them that they're going to be ceased
[13] and this is why; zoning, fire, obtain zoning for use
[14] permit, all uses on premise or property. And then the
[15] corrective action; vacate property for existing wrecking
[16] yard or obtain all permits and -- I can't understand
[17] Silvio's writing -- contact the Department of Licenses
[18] and Inspections.
[19]    **Q.** Do you recognize what they are, these city
[20] documents or these documents that were presented today?
[21]    **A.** Yes.
[22]       **MR. BERNARD**: Presented to whom, if I
[23]    can ask?
[24]       **MR. JEFFERSON**: Well, that's a
[25]    cross-examination question.

Page 55

[1]       **THE COURT**: Yes, I agree. You'll get
[2]    your cross.
[3]       **MR. BERNARD**: Okay.
[4]       **MR. JEFFERSON**: So if I may, Your
[5]    Honor?
[6]       **THE COURT**: But you do need to wrap up
[7]    so he can get to his cross.
[8] **BY MR. JEFFERSON**:
[9]    **Q.** These were presented today at the premises to
[10] whom at the premises?
[11]    **A.** Robert Holton and the guy from K Squad. I'm not
[12] sure of his name.
[13]    **Q.** Is that Mr. Creedon?
[14]    **A.** Mr. Creedon.
[15]    **Q.** Thank you very much.
[16]       **MR. JEFFERSON**: And these are Exhibit
[17]    D. And I would respectfully ask that they be
[18]    marked and moved into evidence, Your Honor.
[19]       **THE COURT**: Okay.
[20]      Any objection to the admission of
[21]    Exhibit D?
[22]       **MR. BERNARD**: No objection.
[23]       **THE COURT**: City D is admitted into
[24]    evidence for purposes of the hearing.
[25]

Page 56

[1]        - - -
[2]      (Whereupon, City Exhibit D was moved
[3]    into evidence.)
[4]        - - -
[5] **BY MR. JEFFERSON**:
[6]    **Q.** And, lastly, I'm handing you four photographs.
[7]      Now, before you look at those photographs, I want
[8] to refer to the photographs as City Exhibit E, 1 through
[9] 4. And I will do it in the order in which I handed them
[10] to counsel.
[11]        - - -
[12]      (Whereupon, City Exhibit E, 1 through
[13]    4, were marked for identification.)
[14]        - - -
[15]       **MR. BERNARD**: Well, I have them all at
[16]    once.
[17]      But, go ahead.
[18]       **MR. JEFFERSON**: So if I may inquire of
[19]    the witness very briefly about these, Your
[20]    Honor?
[21]       **THE COURT**: You may.
[22] **BY MR. JEFFERSON**:
[23]    **Q.** So I'm going to refer your attention to the first
[24] photograph, which we're going to call City Exhibit E-1.
[25]       **MR. JEFFERSON**: With the Court's

Page 57

[1]    permission can I write E-1 on this?

[2]        THE COURT: Yes.

[3]        MR. JEFFERSON: Thank you.

[4] BY MR. JEFFERSON:

[5]    Q. Looking at what I'm referring to as City Exhibit

[6] E-1, could you please tell Her Honor what's depicted

[7] there.

[8]    A. Cars piled. It's basically a scrapyard.

[9]    Q. And where was this photograph taken?

[10]    A. At the property on Richmond Street, 4087 Richmond

[11] Street.

[12]    Q. And were you present at the time that these

[13] photographs were taken?

[14]    A. Yes. I was in the front and Silvio was in the

[15] back.

[16]    Q. Do they accurately portray what you saw when you

[17] were at the premises?

[18]    A. Again, I didn't go to the back. Mr. Silvio took

[19] the pictures from the back. But from a distance I would

[20] say, yes, it's just a scrapyard.

[21]    Q. So they're representative of what was at the

[22] scrapyard, as you are calling it, at the time when the

[23] photograph was taken.

[24]    A. Yes.

[25]    Q. And when was the photograph taken?

Page 58

[1]    A. It was taken this afternoon.

[2]    Q. Okay. Thank you.

[3]        MR. JEFFERSON: So that's E-1, Your

[4] Honor. I would move for the admission of E-1,

[5] Your Honor.

[6]        THE COURT: Any objection?

[7]        MR. BERNARD: Can I see it again?

[8]    (Brief pause.)

[9]        MR. BERNARD: No objection.

[10]        THE COURT: City E-1 is admitted.

[11]        MR. JEFFERSON: Thank you.

[12]        - - -

[13]    (Whereupon, City Exhibit E-1 was moved

[14] into evidence.)

[15]        - - -

[16] BY MR. JEFFERSON:

[17]    Q. Now I'm going to refer your attention to -- I am

[18] going to refer to this as City E-2. I'm writing E-2 up

[19] on the corner.

[20]        THE COURT: It would be nice if you

[21] wrote City E-2. That's what you've been

[22] calling them.

[23]        MR. JEFFERSON: City E-2, Your Honor.

[24] Thank you.

[25]

Page 59

[1] BY MR. JEFFERSON:

[2]    Q. Directing your attention to what's been marked as

[3] City Exhibit E-2, do you recognize what's depicted in

[4] that photograph?

[5]    A. Yes. It's part of the scrapyard. It's a work

[6] station where they dismantle parts.

[7]    Q. Is that how it appeared at the time when the

[8] photograph was taken?

[9]    A. Again, I believe so. I was in the front and

[10] Mr. Silvio took the pictures.

[11]    Q. And are you responsible to collect -- as a

[12] supervisor at the premises is it your responsibility

[13] that what evidence is collected there comes through you

[14] and you are responsible for that evidence?

[15]    A. I wouldn't say that. I had hands-on because I

[16] was there, yes. And I did ask for these documents

[17] because we were called to come down here, yes.

[18]    Q. So these are the documents --

[19]    A. That Mr. Silvio gave me, yes.

[20]    Q. -- that were generated on the premises at the

[21] time that you went today, and you collected them to

[22] bring them to court today for this proceeding.

[23]    A. That's correct.

[24]    Q. And this is of the premises at 4087.

[25]    A. That's correct.

Page 60

[1]    Q. Okay. Thank you very much.

[2]        MR. BERNARD: May I see that?

[3]        MR. JEFFERSON: Certainly.

[4]        MR. BERNARD: Your Honor, I'm not going

[5] to agree to this Exhibit, if that's what

[6] counsel is asking --

[7]        THE COURT: Well, he hasn't moved it

[8] in.

[9]        MR. BERNARD: -- until I've had an

[10] opportunity to ask questions.

[11]        THE COURT: Well, since I'm giving him

[12] three more minutes with this witness, you're

[13] going to have an opportunity to ask questions.

[14]        MR. JEFFERSON: So I would move for the

[15] admission pending, you know, the ruling of the

[16] Court on the basis of counsel's questions.

[17]        THE COURT: Sir, did you see that?

[18] Were you in the place where that photograph was

[19] taken?

[20]        THE WITNESS: Yes, Your Honor.

[21]    But, again, I was in the front

[22] attending to Mr. Holton and --

[23]        THE COURT: Well, did you see what is

[24] depicted in E-2?

[25]        THE WITNESS: Did I see it?

Page 61

[1]      THE COURT:  Yes.
[2]      THE WITNESS:  I didn't go that far
[3] back, no.
[4]      THE COURT:  Okay.  That's what I'm
[5] asking.
[6]      THE WITNESS:  Silvio did.  He took the
[7] pictures.
[8]      MR. JEFFERSON:  I'll call Silvio.
[9]      THE COURT:  Well, not today you won't.
[10]   But, go ahead.
[11]      MR. JEFFERSON:  Okay.
[12]      THE COURT:  I mean, I only have what
[13] time I have.  I can't keep staff here
[14] indefinitely.
[15]      MR. JEFFERSON:  I think I can bring
[16] Silvio up here just to say --
[17]      THE COURT:  Well, Mr. Bernard needs to
[18] cross this witness.
[19]      MR. JEFFERSON:  Okay.
[20]   Thank you, Your Honor.
[21]      THE COURT:  So it's pointless to show
[22] him photographs when he doesn't have personal
[23] knowledge of them.
[24]   Is there anything else you need to get
[25] out of this witness?

Page 62

[1]      MR. JEFFERSON:  Well, no, except for
[2] the fact that --
[3] BY MR. JEFFERSON:
[4]  Q.  Are these the violations that you observed at
[5] that premises on behalf of the department?  Are they the
[6] violations that warranted the certification in this case
[7] of it being a danger to the public?
[8]      MR. BERNARD:  Well, I object to the
[9] form of the question.  I also object to the
[10] question itself.  This witness has been called
[11] to identify certain documents.  He's not
[12] testifying as to the ultimate facts that the
[13] City intends to prove.
[14]      THE COURT:  Give me the question again.
[15]      MR. JEFFERSON:  Yes, Your Honor.
[16] BY MR. JEFFERSON:
[17]  Q.  First of all, who issues the certification?
[18]      THE COURT:  All right.  You're going to
[19] ask a different question.  That's fine, too.
[20]  Q.  (Continued)  Who issues the certification?
[21]  A.  The certification letter?
[22]  Q.  Yes.
[23]  A.  We hand-delivered that, the department.
[24]  Q.  "We" meaning the department; right?
[25]  A.  Yes.

Page 63

[1]  Q.  And was the certification on the basis of the
[2] violations that were observed and that were subsequently
[3] written in the Notice of Violation?
[4]  A.  Yes.
[5]  Q.  So the certification certifies that on the basis
[6] of those violations that have been written, that this
[7] premises poses an imminent threat to the health,
[8] welfare, and safety of the public.
[9]      MR. BERNARD:  I object to that
[10] question.
[11]      THE COURT:  Sustained.
[12] BY MR. JEFFERSON:
[13]  Q.  So whatever the department wrote in the
[14] certification is based upon the violations that were
[15] written and the intent to cease; is that correct?
[16]  A.  That's correct.
[17]      MR. JEFFERSON:  That's all I have.
[18]      THE COURT:  Mr. Bernard, cross-examine.
[19]      - - -
[20]      CROSS-EXAMINATION
[21]      - - -
[22] BY MR. BERNARD:
[23]  Q.  Mr. Titus, you are the East District Operations
[24] Supervisor, are you not?
[25]  A.  Yes.

Page 64

[1]  Q.  And you issued Exhibit B, did you not?  Do you
[2] have it in front of you?
[3]      MR. JEFFERSON:  The violation notice?
[4]      MR. BERNARD:  Yes.
[5]  A.  The inspector issues it.  We hand-delivered that.
[6]  Q.  It's your name on it, isn't it?
[7]  A.  I signed it, yes.
[8]  Q.  That's really what I'm asking.
[9]  A.  That's my signature for the Intent to Cease and
[10] the Notice of Intent to Cease.
[11]  Q.  Now, it says on the top, "Date of original
[12] notice, March 2, 2017."
[13]   What is the original notice?
[14]  A.  That would be the violation notice.
[15]  Q.  And isn't it true that the inspection was
[16] conducted on March 2nd?
[17]  A.  Yes, I believe so.
[18]  Q.  And it's fair to say that the violation notices
[19] are then backdated to the date of the inspection.
[20]  A.  Yes.
[21]  Q.  And are you aware that my client has appealed
[22] this Notice of Intent to Cease Operations and Order to
[23] the License and Inspection Review Board?
[24]  A.  He stated that he did today.
[25]  Q.  Pardon me?

Page 65

[1] **A.** He stated that he did today at the time of the
[2] cease.
[3] **Q.** Who stated? Mr. Holton?
[4] **A.** Yes.
[5] **Q.** And isn't that in accordance with the
[6] instructions in Exhibit B?
[7]     Appeal forms may be obtained on line, and then
[8] they give the website number, or in person at, and then
[9] they give the address of the Board of License and
[10] Inspection Review.
[11]     Did I read that correctly?
[12] **A.** I'm not sure where you at.
[13] **Q.** Let me try again. I know we're running out of
[14] time. I direct your attention to the fifth paragraph of
[15] the Notice, starting with the word "appeal".
[16] **A.** It appears to be on here, that's correct.
[17] **Q.** And isn't that what my client did? Didn't he
[18] comply with that?
[19] **A.** I don't know. He said he did. He said he
[20] applied for an appeal.
[21] **Q.** Do you have any reason to believe he didn't?
[22] **A.** No.
[23] **Q.** Now, given the fact that the appeal was taken,
[24] why is your department enforcing this order?
[25] **A.** My understanding is because it doesn't have any

Page 66

[1] zoning or licenses or anything that it needs to operate
[2] a business.
[3] **Q.** As a matter of fact, isn't it the City's -- well,
[4] are you familiar with LR zoning? Are you familiar with
[5] that classification?
[6] **A.** No.
[7] **Q.** So would you have any reason to dispute the fact
[8] that my client, as alleged in his Complaint on Page 3,
[9] subparagraph L, alleges plaintiff is in compliance with
[10] zoning classification LR and always has been in
[11] compliance?
[12]     **MR. JEFFERSON**: Objection, Your Honor.
[13] **Q.** (Continued) Do you have any reason to dispute
[14] that?
[15]     **THE COURT**: Overruled.
[16]     You may answer the question.
[17]     **THE WITNESS**: I have no understanding
[18] of what he's talking about as far as the
[19] R classes. I'm not the Zoning Review Board.
[20]     **THE COURT**: That's fine.
[21]     All right. Go ahead.
[22]     **MR. BERNARD**: Thank you.
[23] **BY MR. BERNARD**:
[24] **Q.** So going back to the chronology here, the
[25] inspection on March 2nd, sometime after that these

Page 67

[1] violation notices are issued; is that correct?
[2] **A.** That's correct.
[3] **Q.** And why are they backdated to March 2nd?
[4] **A.** Because we had to -- we went out there, we found
[5] violations, and then we had to do the letter for the
[6] certification.
[7] **Q.** In the Certification of Violations -- and I
[8] believe that's --
[9]     **MR. BERNARD**: What Exhibit is that? I
[10] believe that's C, isn't it?
[11]     **MR. JEFFERSON**: I believe it was D.
[12]     **THE COURT**: C.
[13] **BY MR. BERNARD**:
[14] **Q.** In the Certification of Violations it's a Cease
[15] Operations Order pursuant to Title 14 of the Zoning and
[16] Planning Code; is that correct?
[17] **A.** I believe so.
[18] **Q.** Now, what is the difference between the Zoning
[19] and Planning Code and the Building, Construction,
[20] Occupancy Code?
[21]     **MR. JEFFERSON**: Objection, Your Honor.
[22] I mean, that's a very broad question.
[23]     **THE COURT**: Overruled.
[24]     You may answer.
[25] **A.** I don't know. The Building Code is different

Page 68

[1] than the Zoning Code. Once it's built, then I get it.
[2] I don't get it while they're building it, and I don't
[3] receive it while they're in the zoning. There's
[4] different departments.
[5] **Q.** I'll certainly take that answer.
[6]     And if I told you that in the Complaint that we
[7] filed today -- just give me a second. My client stated
[8] **in Paragraph 7**: "Plaintiff is innocent of the alleged
[9] violations and alleged missing licenses." And then he
[10] lists things that he says that he's done or violations
[11] that are not violations.
[12]     Have you read that Page 3? If you haven't, I'll
[13] show it to you.
[14]     **MR. JEFFERSON**: Objection.
[15]     **THE COURT**: What's the basis? Tell me
[16] the basis in two words.
[17]     **MR. JEFFERSON**: Assumes facts not in
[18] evidence. They're not in evidence. None of
[19] those facts that he's talking about are in
[20] evidence. This is cross-examination.
[21]     **THE COURT**: Overruled.
[22]     **MR. BERNARD**: Let me show it to the
[23] witness.
[24] **BY MR. BERNARD**:
[25] **Q.** Now, Mr. Titus, you did sign this Notice of

Page 69

[1] Intent and this is my client's response.
[2] **A.** What's the question? You want me to read Page 3
[3] and what?
[4] **Q.** You can just take a look at it.
[5] Do you have any reason --
[6] **A.** I have no idea what it is.
[7] **Q.** It's my client's response to the violations.
[8] **THE COURT**: Mr. Bernard, what's your
[9] question?
[10] **Q.** (Continued) Do you have any reason to dispute
[11] what's on Page 3?
[12] **A.** He can't obtain any licenses if he doesn't have
[13] possession of the property. You can't get zoning if you
[14] don't own the property. So I don't know how he could
[15] have an auto wrecking license. There are none.
[16] **MR. BERNARD**: I'll take that answer,
[17] Your Honor.
[18] **THE COURT**: Mr. Bernard, please don't
[19] comment on answers, just ask questions.
[20] **MR. BERNARD**: Sorry.
[21] **THE COURT**: Do you have another
[22] question?
[23] **MR. BERNARD**: No.
[24] **THE COURT**: Okay. No further questions
[25] of the witness.

Page 70

[1] **MR. BERNARD**: No further questions.
[2] **THE COURT**: Any redirect of this
[3] witness?
[4] **MR. JEFFERSON**: Very briefly.
[5] **THE COURT**: Okay.
[6] **MR. JEFFERSON**: No, Your Honor. I'll
[7] stop where I am.
[8] Thank you.
[9] **THE COURT**: Okay.
[10] **THE LAW CLERK**: Do you have any other
[11] witnesses?
[12] **MR. JEFFERSON**: I think if counsel
[13] would just stipulate to these photographs --
[14] **MR. BERNARD**: Well, I can't stipulate
[15] to the photographs. There's one photograph
[16] that I did agree to be admitted, the first one,
[17] because I'm familiar with it.
[18] **MR. JEFFERSON**: Okay.
[19] So may I call the person just to say he
[20] took the photographs?
[21] **THE COURT**: Go ahead.
[22] **MR. JEFFERSON**: Thank you, Your Honor.
[23] **THE LAW CLERK**: Sir, before you sit,
[24] would you please state your name for the record
[25] and spell your first and last name.

Page 71

[1] **THE WITNESS**: First name is Silvio.
[2] It's S-I-L-V-I-O. Last name is Di Guglielmo.
[3] It's D-I-G-U-G-L-I-E-L-M-O. I'm with
[4] Philadelphia Licenses and Inspections, Code
[5] Inspector.
[6] - - -
[7] ...SILVIO DI GUGLIELMO, having been
[8] duly sworn/affirmed, was examined and testified
[9] **as follows**:
[10] - - -
[11] **THE LAW CLERK**: Thank you, sir.
[12] You can have a seat.
[13] **MR. JEFFERSON**: May I very briefly,
[14] Your Honor?
[15] **THE COURT**: Yes, briefly.
[16] **MR. JEFFERSON**: Counsel, can I have
[17] that photograph back, please?
[18] - - -
[19] DIRECT EXAMINATION
[20] - - -
[21] **BY MR. JEFFERSON**:
[22] **Q.** Were you present at the premises that we're
[23] talking about today?
[24] **A.** Yes.
[25] **Q.** And relative to your being there as an inspector

Page 72

[1] within the Philadelphia Department of Licenses and
[2] Inspections, did you take pictures?
[3] **A.** I did.
[4] **Q.** And would you look at the pictures that I'm going
[5] to refer to as City Exhibit E-2 and -- I'll refer to it
[6] as City Exhibit E-5, I believe.
[7] - - -
[8] (Whereupon, City Exhibit E-5 was marked
[9] for identification.)
[10] - - -
[11] **BY MR. JEFFERSON**:
[12] **Q.** Would you look at these two photographs?
[13] **A.** Yes.
[14] **Q.** Did you take them?
[15] **A.** I took the pictures, yes.
[16] **Q.** Is that what you saw --
[17] **THE COURT**: I'm sorry.
[18] You said E-2 and E-5?
[19] **MR. JEFFERSON**: I think the other ones
[20] I moved into evidence already.
[21] **THE COURT**: No. You only moved in E-1.
[22] **BY MR. JEFFERSON**:
[23] **Q.** Take a look at E-2.
[24] **A.** Yes.
[25] **Q.** Does that represent what you saw at the premises

Page 73

[1] today?
[2] **A.** Yes.
[3] **Q.** Can I take that, please?
[4] **MR. JEFFERSON**: Counsel, you already
[5] saw E-2.
[6] **MR. BERNARD**: I have a question on E-2.
[7] **THE COURT**: Well, he's testifying. You
[8] don't get to have questions now.
[9] **MR. JEFFERSON**: I would move for the
[10] admission of E-2, based on the testimony.
[11] **THE COURT**: Any objection?
[12] **MR. BERNARD**: I object because I want
[13] to cross-examine.
[14] **THE COURT**: Well, you'll get to
[15] cross-examine him.
[16] How many photos are there?
[17] **MR. JEFFERSON**: A couple, Your Honor.
[18] **THE COURT**: Show them all to him, ask
[19] him if he took them, and then give them to the
[20] other side to cross-examine.
[21] **MR. JEFFERSON**: All right. We can do
[22] that.
[23] **BY MR. JEFFERSON**:
[24] **Q.** I'm handing you additional photographs, three of
[25] them. Take a look at them.

Page 74

[1] Were all of these photographs taken today?
[2] **A.** Yes.
[3] **Q.** By you?
[4] **A.** Yes.
[5] **Q.** At the premises?
[6] **A.** Yes.
[7] **MR. JEFFERSON**: Okay. Thank you.
[8] **THE COURT**: Cross-examine.
[9] And what are the exhibit numbers?
[10] **MR. JEFFERSON**: It's going to be E-2,
[11] E-3, City E-4, City E-5.
[12] **THE LAW CLERK**: And they're all going
[13] to Mr. Bernard.
[14] **THE COURT**: So 2, 3, 4 and 5 are going
[15] to Mr. Bernard.
[16] Mr. Bernard, do you have any questions
[17] of this witness?
[18] **MR. BERNARD**: Yes, I do, Your Honor.
[19] **THE COURT**: Please go ahead.
[20] - - -
[21] CROSS-EXAMINATION
[22] - - -
[23] **BY MR. BERNARD**:
[24] **Q.** What is it that is depicted in E-2?
[25] **A.** E-2 is a workstation where there's dismantling or

Page 75

[1] removing of parts. It's a dismantling station, it seems
[2] like, where they take parts.
[3] **Q.** And what is wrong with that photograph? What's
[4] depicted in that photograph?
[5] **A.** There's illegal electrical wiring hanging.
[6] **Q.** How can you tell that?
[7] **A.** It's not proper wiring. It's internal wiring.
[8] It's not external wiring.
[9] **Q.** And is something wrong with the wiring?
[10] **THE COURT**: I'm sorry.
[11] Is it Mr. Di Guglielmo?
[12] **THE WITNESS**: Silvio is fine.
[13] **THE COURT**: No, no, not in court.
[14] **THE WITNESS**: Di Guglielmo.
[15] **THE COURT**: Mr. Di Guglielmo, if you
[16] could move the mike to you.
[17] Thank you.
[18] **THE WITNESS**: You're welcome.
[19] **THE COURT**: Go ahead, Mr. Bernard.
[20] **BY MR. BERNARD**:
[21] **Q.** Mr. Di Guglielmo, the photograph that is marked
[22] as E-2 has wiring near the ceiling; is that correct?
[23] **A.** Right.
[24] **Q.** It also has a "no smoking" sign, does it not?
[25] **A.** Yes.

Page 76

[1] **Q.** And, in fact, one of the violations that's listed
[2] in the certification of violations is, quote, no "no
[3] smoking" signs.
[4] **A.** Correct.
[5] **Q.** So that's not a violation, is it?
[6] **A.** No.
[7] Well, the violations were at the time of the
[8] inspection. So today some violations were corrected.
[9] **Q.** You lost me.
[10] We're talking about this one photograph --
[11] **A.** What's your question?
[12] **Q.** -- No. 2.
[13] Well, the "no smoking" sign is not a violation,
[14] is it?
[15] **A.** No, it's not.
[16] **Q.** In fact, he's accused of not having a "no
[17] smoking" sign.
[18] **A.** That's correct. But the picture was from today.
[19] That's today's photographs. The violations were served
[20] on -- I believe a month ago.
[21] **Q.** Well, I think the purpose of this photograph is
[22] to demonstrate that my client is --
[23] **A.** And the one violation also is for illegal
[24] electrical wiring, also. That's what it's showing.
[25] **Q.** I don't see any illegal electrical wiring.

Page 77

[1]     Can you explain it?

[2]     **A.**  Right here, sir, the yellow wiring.  It's not

[3] outdoor wiring, sir.

[4]     **Q.**  But we're looking indoors.  That's indoors.

[5]     **A.**  That's not indoors, sir.  It's a canopy.

[6]     **Q.**  Okay.

[7]     **A.**  You need permanent wiring, sir.

[8]     You can also see the wiring right there in that

[9] other photograph.

[10]        **THE COURT:**  Mr. Di Guglielmo, let's do

[11]   question and answer.  Okay?

[12]        **THE WITNESS:**  I'm sorry.

[13]        **THE COURT:**  That's okay.

[14]        **THE WITNESS:**  I apologize.

[15]        **THE COURT:**  Mr. Bernard, what's your

[16]   next question?

[17] **BY MR. BERNARD:**

[18]     **Q.**  My next question is, is it fair to say that E-3

[19] is intended to show that there's illegal wiring?

[20]     **A.**  Yes.

[21]     **Q.**  Anything else?

[22]     **A.**  Can I see the photograph?

[23]     **Q.**  Sure.

[24]     **A.**  No.

[25]     **Q.**  This photograph is not marked.  It says, "New

Page 78

[1] batteries, $45."

[2]     What's wrong with that?

[3]     **A.**  It's showing the -- I think this was another

[4] photograph that was showing the poster right here.

[5]     **Q.**  Showing what?

[6]     **A.**  The poster.

[7]     **Q.**  What poster?

[8]     **A.**  An Intent to Cease poster.  This was posted, I

[9] think, a month ago.

[10]     **Q.**  Oh, the purpose of the photograph is to show that

[11] there is a Notice of Intent to Cease Operations?

[12]     **A.**  Right.

[13]     **Q.**  Well, we know that.

[14]        **THE COURT:**  And can we get that one

[15]   marked so we don't lose track of it?

[16]        **MR. JEFFERSON:**  E-6.

[17]        **THE COURT:**  All right.

[18]              - - -

[19]        (Whereupon, City Exhibit E-6 was marked

[20]   for identification.)

[21]              - - -

[22]        **THE COURT:**  Mr. Bernard, any other

[23]   questions?

[24]        **MR. BERNARD:**  No, not on this Exhibit.

[25]

Page 79

[1] **BY MR. BERNARD:**

[2]     **Q.**  The last Exhibit -- what's the purpose of this

[3] Exhibit?  It says, "Job Site Safety Documents."

[4]        **THE COURT:**  I'm sorry.

[5]     What Exhibit is that?

[6]        **MR. BERNARD:**  I don't know.

[7]     **A.**  It's for -- if there's HAZMAT, there's a box.

[8] It's for the fire department.

[9]        **THE COURT:**  I need to know what Exhibit

[10]   you're referring to.

[11]        **THE WITNESS:**  He's questioning the

[12]   yellow box.

[13]        **MR. BERNARD:**  It's not numbered.

[14]        **MR. JEFFERSON:**  E-7.

[15]        **THE LAW CLERK:**  Are some things being

[16]   double marked?

[17]        **MR. JEFFERSON:**  No.

[18]        **THE LAW CLERK:**  Okay.

[19]              - - -

[20]        (Whereupon, City Exhibit E-7 was marked

[21]   for identification.)

[22]              - - -

[23] **BY MR. BERNARD:**

[24]     **Q.**  What is wrong with what's depicted in E-7?

[25]     **A.**  The photo was taken to show the cease poster.

Page 80

[1]     **Q.**  The photograph is intended to show that there was

[2] a Notice to Cease Operations.

[3]     **A.**  Yes.

[4]        **MR. BERNARD:**  Well, given the fact that

[5]   none of this is in dispute except perhaps the

[6]   wiring --

[7]        **MR. JEFFERSON:**  That's why they weren't

[8]   marked, Your Honor.

[9]        **THE COURT:**  I'm sorry?

[10]        **MR. JEFFERSON:**  Excuse me.

[11]     That's why those photographs were not

[12]   marked.  He's asking about photographs that

[13]   weren't marked.

[14]        **THE COURT:**  All right.  That's fine.

[15]        **MR. BERNARD:**  No further questions.

[16]        **THE COURT:**  Okay.

[17]        **MR. JEFFERSON:**  Thank you very much.

[18]        **THE COURT:**  Were you going to move any

[19]   photographs into evidence?

[20]        **MR. JEFFERSON:**  Yes.

[21]     I was going to move all of the

[22]   photographs that were subject to questioning.

[23]        **THE COURT:**  So what photographs are

[24]   those?

[25]        **MR. JEFFERSON:**  E-1, 2, 3, 4, 5, 6, 7.

Page 81

[1]     THE COURT:  Well, E-1 has already been
[2] admitted.  So you're seeking to admit City E-2
[3] through 7.
[4]     Do I have that right?
[5]     MR. JEFFERSON:  That's correct, Your
[6] Honor.
[7]     THE COURT:  Please be seated.
[8]     Mr. Bernard, do you have any objections
[9] to those photographs?
[10]     MR. BERNARD:  Your Honor, I've already
[11] questioned the witness on the photographs.
[12]     THE COURT:  Just yes or no.
[13]     Are you objecting?
[14]     MR. BERNARD:  No.
[15]     THE COURT:  Okay.  They're admitted
[16] into evidence.
[17]                - - -
[18]     (Whereupon, City Exhibits E-2 through
[19] E-7 were moved into evidence.)
[20]                - - -
[21]     THE COURT:  Okay.  It's 5:36.
[22]     Where do you all want to go from here?
[23]     I mean, in all seriousness, we did
[24] start late in the day, and I do have to let
[25] staff leave.  But I don't want you all to feel

Page 82

[1] like you're being given short shrift.  So if
[2] you wanted to come back and argue tomorrow
[3] morning, I would accommodate you then.
[4]     MR. BERNARD:  I'm ready to argue very
[5] briefly.
[6]     THE COURT:  No.
[7]     Mr. Bernard, either I'm going to rule
[8] with no argument or we're going to argue
[9] tomorrow morning.
[10]     MR. BERNARD:  There's no evidence, Your
[11] Honor.  That's my argument.
[12]     THE LAW CLERK:  So these two, 6 and 7,
[13] are actually supposed to be 4 and 5.  I have to
[14] make sure the record is consistent.
[15]     Can Mr. Bernard please clarify which --
[16] I just need to know which ones he was asking
[17] questions about.
[18]     MR. BERNARD:  Sure.
[19]     THE LAW CLERK:  I'm sorry.
[20]     MR. BERNARD:  I understand.
[21]     THE COURT:  You are all not to leave
[22] until we deal with this exhibit issue.
[23]     Put the exhibits down for a moment
[24] because we're going to figure out now what
[25] we're doing.  Here are your choices:  Either

Page 83

[1] I'm going to rule based on what I've heard or
[2] I'm giving you the opportunity to come back
[3] tomorrow morning at 9:00 and argue.  So you can
[4] deal with the exhibits while you decide what
[5] your preference is.
[6]                - - -
[7]     (Whereupon, a brief recess was taken.)
[8]                - - -
[9]     MR. BERNARD:  I believe the Court can
[10] rule.
[11]     THE COURT:  Okay.
[12]     Well, that is actually what I'm
[13] inclined to do.  But I'm not going to rule
[14] right on the record now.  We'll write an order.
[15]     But we do need to clear up this exhibit
[16] issue because the exhibits need to be marked
[17] consistent with what they were called when
[18] there was testimony.
[19]     So can you all take a minute and see if
[20] you could actually agree on that?
[21]     MR. BERNARD:  Yes, I think we can,
[22] Judge.
[23]     THE COURT:  Okay.  Thank you.
[24]                - - -
[25]     (Whereupon, a brief recess was taken.)

Page 84

[1]                - - -
[2]     THE COURT:  Have we agreed on the
[3] exhibits?
[4]     MR. JEFFERSON:  Yes.
[5]     MR. BERNARD:  Yes, Your Honor.
[6]     THE COURT:  Can we put that agreement
[7] on the record?
[8]     MR. JEFFERSON:  Yes.
[9]     The testimony that was elicited with
[10] respect to City Exhibit 6 should actually be
[11] City Exhibit 5.  And the one that was referred
[12] to as City Exhibit 7 is City Exhibit 4.
[13]     THE COURT:  Okay.
[14]     Do you agree with that, Mr. Bernard?
[15]     MR. BERNARD:  I do, yes.
[16]     THE COURT:  Okay.
[17]     Then we are in recess.  And thank you
[18] all for dealing with the Court's schedule.
[19]     MR. JEFFERSON:  Thank you, Your Honor.
[20]     MR. BERNARD:  Thank you, Your Honor.
[21]     MR. JEFFERSON:  And I -- you know, I'm
[22] sure that the record will reflect that I moved
[23] them into evidence.  If I haven't, then I move
[24] them into evidence.
[25]     THE COURT:  Yes.

Page 85

[1]   **MR. JEFFERSON**:  Okay.
[2]   **THE COURT**:  You had already moved in
[3]   E-1, City E-1.  That was admitted some time
[4]   ago.  When we got confused was when you started
[5]   seeking to admit E-2 through 5 when there were
[6]   only 2 through -- I'm sorry.  You sought to
[7]   admit 2 through 7 when there were only five
[8]   photos.
[9]         So all five photos, E-1 through 5, have
[10]  been admitted into evidence for purposes of
[11]  this hearing.
[12]  **MR. JEFFERSON**:  Thank you, Your Honor.
[13]  And I'm sorry for the confusion.
[14]  **THE LAW CLERK**:  This court stands
[15]  adjourned until the call of the crier.
[16]  **THE COURT**:  Thank you.
[17]        - - -
[18]  (Whereupon, the proceedings were
[19]  adjourned.)
[20]        - - -
[21]
[22]
[23]
[24]
[25]

Page 86

[1]        C E R T I F I C A T I O N
[2]   I hereby certify that the proceedings
[3]   and evidence are contained fully and accurately
[4]   in the notes taken by me on the trial of the
[5]   above case, and that this copy is a correct
[6]   transcript of the same.
[7]
[8]
[9]
[10]        Julie Davis, RPR
      Official Court Reporter
[11]
[12]
[13]   - - - - - - - - - - -
[14]
[15]
[16]   (THE FOREGOING CERTIFICATION OF THIS
[17]  TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION
[18]  OF THE SAME BY ANY MEANS UNLESS UNDER THE
[19]  DIRECT CONTROL AND/OR SUPERVISION OF THE
[20]  CERTIFYING REPORTER.)
[21]
[22]
[23]
[24]
[25]

Court Reporting System (Generated 2019/03/05 13:32:52)



Lawyer's Notes

