UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
                                    .
Robert Holton,                      .    Docket #CV-18-2228 (CFK)
                                    .
        Plaintiff,                  .
                                    .    United States Courthouse
            vs.                     .    Philadelphia, PA
                                    .    September 7, 2021
Bobby Henon, et al.,                .    10:10 a.m.
                                    .
        Defendants.                 .
.........................................................
```

TRANSCRIPT OF SANCTIONS HEARING
BEFORE THE HONORABLE CHAD F. KENNEY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For The Plaintiff:          Stephen Durham, Esq.
                            Durham & James, PC
                            320 W. Front St.
                            Media, PA 19063

For The Defendants:         Meghan E. Claiborne, Esq.
                            City of Philadelphia
                            City Solicitor's Office
                            1515 Arch St.-14th Fl.
                            Philadelphia, PA 19102

Audio Operator              Chris Kurek

Transcribing Firm:          Writer's Cramp, Inc.
                            1027 Betty Lane
                            Ewing, NJ 08628
                            609-588-8043

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          THE COURT:  All right.  We're on the record in

2   Holton vs. Henon and it's 2228 of 18.  Counsel for the record.

3          MR. DURHAM:  Stephen A. Durham, Supreme Court #30086

4   on behalf of the plaintiff, Robert Holton.

5          THE COURT:  And I'll note for the record that Mr.

6   Holton is here.  It's Robert Holton, right?

7          MR. HOLTON:  Yes, Your Honor.

8          THE COURT:  Okay.  And counsel for the city?

9          MS. CLAIBORNE:  Meghan Claiborne from the City of

10  Philadelphia law department for defendants Darin Gatti, Edward

11  Jefferson, and Councilman Bobby Henon.

12         THE COURT:  All right.  Have a seat, Mr. Durham.

13  Mr. Holton, you can have a seat.

14         MR. HOLTON:  Thank you.

15         THE COURT:  Ms. Claiborne, you can begin.  You can

16  sit or stand.

17         MS. CLAIBORNE:  Thank you, Your Honor.  I filed the

18  motion for sanctions as a result of counsel's failure to

19  provide full and complete discovery responses.  I'll just

20  briefly summarize, because I did outline the timeline in the

21  motion, but I timely propounded both interrogatories and

22  request for production of documents.  They were not responded

23  to.  I then propounded a -- or I then filed a motion to compel

24  responses.  They were not -- that was granted by Your Honor.

25  No responses were forthcoming by the date that they were

1   required to be served under the order.

2        Shortly thereafter, I did get responses, but they were

3   entirely deficient, including there was not a single document

4   produced.  The majority of the responses in the request for

5   production of documents were, "We've given you what we want to

6   use, or you should already have it, or we can't find it."

7   Again, I've outlined all of those in my motion.

8        In response to the interrogatories, that becomes more of

9   a substantive issue.  The complaint indicates, and

10  specifically I'm referring to, I believe it's paragraphs 13

11  and 16.  That there was a taking in November of 2018.  And

12  paragraph 16 identifies it was a taking of property as

13  outlined in the attached complaint, which was filed with the -

14  - or I apologize, with the attached deed that was filed with

15  the complaint, which outlines a portion of property that I do

16  not believe is in dispute that is owned by Plaintiff.

17       It's our position that that property was never taken from

18  Plaintiff, and that he has, at all times, retained possession

19  over that property, and continues to retain possession.  What

20  was indisputably taken was the city's property.  We reentered

21  the city's property subject to a valid order that was issued

22  by L&I, that was subsequently appealed by plaintiff, and the

23  appeal was denied, and there was no appeal to a higher court,

24  so the order became final.  And we executed the cease

25  operations order and took the city's property back.

1       Plaintiff has given a variety of different responses.   I
2  think I've now gotten four different iterations of
3  interrogatories.  None of which have been verified.  I did get
4  a sheet of paper with plaintiff's signature on it, but I'm not
5  sure what it goes with.

6       Plaintiff discusses events occurring from, I believe,
7  2010 through 2018.  But the main issue is he just doesn't tell
8  me what property was taken and how he owns it.  At times, he
9  describes the deed attached to the complaint.  But he seems to
10  suggest that that extends outside the metes and bounds of the
11  property, as identified in the deed.

12       It appears, based upon the responses that I received on
13  August 25th that plaintiff is now indicating that his theory
14  of liability is that he adversely possessed what is and
15  disputed now by both parties to be the Frankford Creek right
16  of way, which has been city property since 1951.  And it
17  appears that plaintiff's newest theory of liability is that he
18  had adversely possessed it, though he had not filed any quiet
19  title action, and still has not to date filed one.

20       So what I really need, and again, it's more specifically
21  outlined, but I -- apparently, these are the documents that I
22  was given today that satisfy the request for production of
23  documents.  I have not had a chance to review them.

24       As far as interrogatories go, I need a comprehensive,
25  unified response, telling me what real property is at issue

1    here.  Is he saying that the property subject to the deed was

2    taken?  Is he saying that property that he owned via purported

3    adverse possession was taken?  And if it's adverse possession

4    -- if it's the deed, that's fine.  We have the metes and

5    bounds.  If it's adverse possession, give me the metes and

6    bounds of the property so that I know what we're arguing

7    about, so that I can take his deposition, and we can get this

8    case disposed of.  Thank you.

9            THE COURT:  Mr. Durham?

10            MR. DURHAM:  Thank you, Your Honor.  Your Honor, I

11   don't understand what the actual issue is.  I'll be very

12   honest with you, I didn't file the initial pleadings, as

13   you're well aware.  I inherited them from Mr. Bernard.  But

14   the answers that I gave to city council two weeks ago, because

15   I wanted her to have them before we got here today, says we

16   were using the entire parcel known to the city as the

17   Frankford Creek right of way.  Now, what more does she need?

18   Am I to go get the metes and bounds to that?

19            THE COURT:  I think what -- but -- okay.  So the --

20   you're referring to -- what did you just refer to?  The

21   Frankford what?

22            MR. DURHAM:  Frankford Creek right of way.

23            THE COURT:  Frankford Creek right of way.

24            MR. DURHAM:  That's what the city has named that

25   property.

6

1           THE COURT:  All right.  Frankford Creek right of

2    way.  So you have an attached deed, right?

3           MR. DURHAM:  I don't -- I don't --

4           THE COURT:  And a complaint.

5           MR. DURHAM:  Yes.  But that deed is to a -- two lots

6    that Mr. Holton bought that are adjacent to this parcel.  The

7    problem developed because the city gave Mr. Holton's lot a

8    number of 4085 Richmond Street.  They then without -- it

9    doesn't exist on a city map.  They named the Frankford Creek

10   right of way 4087 Richmond Street.

11       Now, a normal train of thought would be, well, if that's

12   87 and I'm 85, same street, we must touch each other.  We must

13   touch each other at the street level, because why would I have

14   a street address if my property is, as the city contends,

15   1,200 feet back off the street.

16       So Mr. Holton believed when he bought the property in

17   1991 that he bought everything, the piece that he currently is

18   using, and the piece that the city has called the Frankford

19   Creek right of way, because in 1990 when he worked for the

20   gentleman that he bought the property from, they were using

21   the entire property.  And therefore, when he bought it, he

22   thought he bought everything, the business, the name, and all

23   of the real estate.

24           THE COURT:  Right.  So when --

25           MR. DURHAM:  Because there's no way to tell --

1          THE COURT:  Wait, wait, wait.  So he bought a

2     property.

3          MR. DURHAM:  He bought a property, that's correct.

4          THE COURT:  And the property he bought, he got a

5     deed for.

6          MR. DURHAM:  He did.

7          THE COURT:  And the deed he got was attached to the

8     complaint.

9          MR. DURHAM:  That's correct.

10         THE COURT:  All right.  So that's the property he's

11    claiming.  The property that he bought the deed for -- he got

12    a deed, be bought the property, he has a deed, and that's what

13    he's claiming.

14         MR. DURHAM:  Well, there's no -- that's what Ms.

15    Claiborne said, there's no contention there.  We both agree

16    that that property under the deed belongs to my client.

17         THE COURT:  Yeah.  So that property under the deed

18    is the property, then, that he owns.  Regardless of what he

19    thought he bought, that's what he bought.

20         MR. DURHAM:  Agreed.

21         THE COURT:  So how does he take the property that he

22    bought, the deed, and claim more property other than the deed

23    property?

24         MR. DURHAM:  Through adverse possession, Your Honor.

25         THE COURT:  All right.  So now we're hearing adverse

8

 1    possession.

 2              MR. DURHAM:  Yes, sir.

 3              THE COURT:  And to adverse possess property, you

 4    have to adversely possess it.  You have to box it in, chain it

 5    in, step all over it.  It basically puts, but what you've

 6    done, put everybody on notice, "I'm claiming this properly

 7    adversely.  Come back and grab it, say it's yours."  All

 8    right?

 9              MR. DURHAM:  I agree.

10              THE COURT:  So we're all saying, then, he's claiming

11    that not only do I have my deed property, I step beyond it to

12    somewhere in this Frankford Creek right of way.  Right?

13              MR. DURHAM:  Yes, correct.

14              THE COURT:  Where is the metes and bounds

15    description of this area that he's marked off and said, "This

16    is mine."

17              MR. DURHAM:  I don't have that.  I --

18              THE COURT:  He needs to get one.

19              MR. DURHAM:  I understand that, Judge.  And I --

20              THE COURT:  No, not understand.  He needs to go out

21    and say, "Mr. Durham, come on out here.  Bring the surveyor

22    out.  Over to here, over to here, over to here.  Mark it off

23    and give it to the city.  This is what I claim."  So they can

24    say, "What are you talking about?  Where's the fence?  Where's

25    the railroad?  Where's everything?  Where's the brick wall?"

1    Or nothing.  "Well, where's all the cars you parked?"

2             MR. DURHAM:  Well, they took all the cars off, so

3    they're not there.

4             MR. DURHAM:  That's another issue.  They did.

5             THE COURT:  Right.  That's another taking.

6             MR. DURHAM:  When can you get a metes and bounds

7    description of what you're saying you claim?

8             THE COURT:  I can go up to the --

9             MR. DURHAM:  No, I'm talking right to you.  When can

10   you get it?

11            MR. HOLTON:  I thought we already had it, but I can

12   get it immediately.

13            THE COURT:  What do you mean you thought you had it?

14            MR. HOLTON:  I had, you know, the site plans,

15   everything from the property from day one, when I purchased

16   the property that showed the street --

17            THE COURT:  This is not -- that's not it, though.

18            MR. HOLTON:  Yeah.

19            THE COURT:  So you think that's a purchase of your

20   property.  What you purchased was that deed.  And if you

21   didn't purchase -- if you thought you purchased more, then

22   your problem is with the guy you brought it from.  This is a

23   whole different issue now.

24        Mr. Durham is saying, "We took this property by adverse

25   possession."  So you can get that site plan.  Get that site

1   plan and show, and say, "Look.  Not only do I get the deed

2   portion, but now I get this portion."  When can we have that

3   survey done?

4           MR. HOLTON:  I'm pretty sure we do have a site plan.

5           MR. DURHAM:  I believe we can go to the Fifth Survey

6   District and purchase from them a copy of the plan.  I'm

7   willing to do that today.

8           THE COURT:  It's not a plan.  You took property by

9   adverse possession, which means you walk out to the property

10  and you say to Mr. Durham, "This is mine.  This is mine.  This

11  is mine."  What's on paper won't matter anymore.

12          MR. DURHAM:  Your Honor, this property --

13          MR. HOLTON:  We've done that, Your Honor.

14          MR. DURHAM:  Excuse me.  This property is bound on

15  one side by the Frankford Creek, and bound on the other side

16  by the railroad tracks.  So this is a piece of vacant land

17  that the city says they condemned in 1951, and I don't doubt

18  it.  But for the last 70 years, this land has laid fell.

19  They've done nothing with it.

20          THE COURT:  There's nothing adverse possessed about

21  that.  I can have land in the middle of Alaska.  As long as

22  it's (indiscern.), it's my land.  You can't come in and say,

23  "This year, it's my land."

24          MR. DURHAM:  But since -- at least 1990, up until

25  October of 2018, and if my count is correct, that's about 30 -

1    - 28 years, he used this property.

2            THE COURT:  Okay.  So what I'm hearing on this

3    record, and we have it straight now.  What we have on this

4    record, we have, "Look, I have a deed and that's my property.

5    I bought it from the last person.  I've also now adversely

6    possessed," and you're describing it in layperson's term that

7    the way they might have described it back in the day.  I have

8    to the creek.  I have to the railroad tracks.  And what's on

9    the other side?  I've got the creek and the railroad tracks.

10           MR. DURHAM:  Then you have the Betsy Ross bridge.

11           THE COURT:  And the Betsy Ross bridge.  Okay?  I

12   have -- I own that land.  So now, that's the record you have

13   right now.  I'm telling you, that record is not going to stand

14   up.  You need to go out and get a survey, and say this is the

15   land.  This is the land.  So when you send that to the city,

16   the city can then develop evidence to say, "They parked cars

17   and went back and forth, but that's not adverse possession."

18   Or they say, yeah, you know what, they parked cars.  That is

19   adverse possession.  But right now, you don't have a case.

20   And the reason you don't have a case is because all you're

21   saying is, "I've got the land from here, the land from here,

22   the land from there."

23           MR. DURHAM:  I'll get a survey done immediately,

24   Your Honor.  As quick --

25           THE COURT:  And that has nothing to do with the site

1    plan.   That guy might have showed you a site plan.   I can show

2    you a site plan of the Benjamin Franklin bridge, and sell my

3    house in Aston to you.   It doesn't mean you own the Benjamin

4    Franklin bridge because somebody showed you the site plan.

5    The guy might have gotten one over on you.   And that seems

6    like what the changed theory is now.   That, oh, we didn't --

7    it's not in our deed, but we adversely possessed it, and when

8    we did, the city had no right to come in and take it.   That's

9    where I think we are.   Is that right, Ms. --

10          MS. CLAIBORNE:   Well, I guess, I think so, Your

11   Honor.   I still haven't gotten a clear answer as to whether

12   Mr. Holton -- whether Mr. Holton is still claiming that any

13   portion of the property identified in the deed, referenced in

14   paragraph 16, was actually purportedly taken by the city on

15   November 18th.

16          THE COURT:   Was actually what?

17          MS. CLAIBORNE:   Purportedly taken.   Did we remove

18   him from any of the property that he owns via deed on that

19   date?

20          THE COURT:   That should be an easy answer.

21          MR. DURHAM:   Yeah.   That should be an easy answer,

22   Your Honor, and I -- because --

23          MS. CLAIBORNE:   Discovery closed five months ago.

24          THE COURT:   Wait a second.   Wait second.   That's an

25   easy answer.

1                 MR. DURHAM:  Yes, sir.

2                 THE COURT:  Tell us.

3                 MR. DURHAM:  There is no way to know, absent a

4     survey, whether or not they took any of his property or not,

5     because there are no distinguishing marks.  There's nothing --

6                 THE COURT:  I know.  And this is your case.  So

7     where's the survey?  Where's your survey?

8                 MR. DURHAM:  That's on Mr. Bernard and I --

9                 THE COURT:  You need two surveys.

10                 MR. DURHAM:  Right.

11                 THE COURT:  The survey with the deed, and then the

12     survey saying, okay, here's the deed, and survey of -- so you

13     can answer the question.  Because now you're saying, I can't

14     answer the question.  But guess what?

15                 MR. DURHAM:  I don't --

16                 THE COURT:  This comes to summary judgment, and

17     summary judgment, it's going to be put up or shut up, and if

18     you haven't put it up, guess what?  You're going to lose on

19     summary judgment.

20                 MR. DURHAM:  Your Honor --

21                 THE COURT:  And that's not a reflection on anybody,

22     but other than --

23                 MR. DURHAM:  No, I understand.

24                 THE COURT:  -- this is the case.

25                 MR. DURHAM:  Yeah.  No, I understand exactly what

1    you're saying.  I -- first of all, I need to apologize to you

2    for both Mr. Holton and I being late, but I need to apologize

3    to Ms. Claiborne because I assumed, and I should never assume

4    anything, that Mr. Bernard had given her documents when -- the

5    first time this case was in front of you.  And I assumed that

6    she had everything.  And with the exception of that pile of

7    documents in front of her, and the affidavit goes to both the

8    answers to the interrogatories and your production of

9    documents, that there wasn't an issue as to what piece of

10   property was in question.  We knew where the city came in --

11            THE COURT:  All right.  Okay.  Let's focus here.  So

12   you need a survey of the property that's in the complaint, the

13   deeded property, number one.

14            MR. DURHAM:  Well, we have the deed for that.

15            THE COURT:  Yes.  It's attached to the complaint --

16            MR. DURHAM:  Right.

17            THE COURT:  -- but we need a survey to say -- you

18   know, you're saying the city took all this property.  And then

19   you're saying, well, I don't even know in terms of the deed

20   property what it is.  Oh, I thought the deed property gave me

21   all of this.  And that's not going to hold up.

22        So you've got to -- you need a survey of the deeded

23   property, and then you have to answer the question within that

24   survey what part of that property within the survey did the

25   city take.  And then you need a survey in terms of outside of

1    the deed.  You just walk it off with the survey.  This is my

2    property, from here to here to here.  And if you have to get

3    on that property with the city, Ms. Claiborne will -- Ms.

4    Claiborne, right?

5              MS. CLAIBORNE:  Claiborne, yes, Your Honor.

6              THE COURT:  Claiborne, right?  Will -- I get it

7    mixed up because of Claire and a Bourne, so, you know,

8    Claireborne, Ms. Bourne, you know, it's really -- I've got to

9    start doing crossword puzzles.

10         So anyway, that's what you need.  And so, I'm going to

11   put a time limit on getting those surveys done.

12             MR. DURHAM:  All right.

13             THE COURT:  And answering that question.  What else?

14             MS. CLAIBORNE:  And with all due respect, Your

15   Honor, I did not file a Rule 11 because I researched the

16   issue, and he cannot be held responsible for prior counsel's

17   misrepresentations or whatever you would call them.  I have

18   already attached the survey.  The survey is incorporated by

19   reference into the deed.  I have already attached the survey.

20   They are of record in this case.  A survey was specifically

21   done in anticipation of Mr. Vaughn Cristiano's sale to Mr.

22   Holton in 2003.  It was done by the city.  Again, it's in the

23   record.

24             THE COURT:  So if the survey is done, right?

25   Somebody needs to take that survey, Mr. Durham --

1           MR. DURHAM:  Yes, ma'am -- I'm sorry, sir.

2           THE COURT:  -- and mark out where the survey is, and

3    then you can answer the question.  Was there land taken or not

4    taken?

5           MS. CLAIBORNE:  Well, he's already deposed Mr.

6    Gatti, who --

7           THE COURT:  Pardon?

8           MS. CLAIBORNE:  He's already deposed Mr. Darin

9    Gatti, who as the chief of streets, he can speak on behalf of

10   the surveys.  Mr. Gatti went out there, as counsel now knows,

11   because he just deposed him, he took a surveyor out there, and

12   they marked it out on November -- in November of 2018 to

13   ensure that they didn't take any of the property that was

14   subject to the deed.  So I'm just simply asking for

15   confirmation of that.  But I just have real problems that this

16   case is three years old.  We're five months past discovery,

17   and they can't even say yay or nay, our allegations are true.

18       I mean, there was clearly no basis to the allegation that

19   was asserted in paragraph 16.  It's three years later.  We

20   can't even get a straight answer of yes or no that property

21   was or wasn't taken.  And the bigger issue is that they've now

22   put a state court determination of whether or not this

23   property was adverse in front of you.

24       There is -- you do not have the ability to adversely

25   possess or transfer title for Mr. Holton.  That is a state

1    court determination.  He needs to file a quiet title action,

2    which he does not.  Under Pennsylvania law, title does not

3    transfer until a quiet title action is granted.  He does not

4    have ownership of this property.

5         And on top of that, <u>Nix</u> was decided in 2019.  When this

6    complaint was filed, there was not even a legal ability to

7    adverse possess municipal property.  And when he took over

8    this case, Your Honor said if you want to file a new

9    complaint, you can.  He chose not to.  There's no claim for

10   property outside of the deed in question being taken.  There

11   is no claim for adverse possession.  This court does not have

12   jurisdiction to recognize a transfer or quiet title action.

13        So I don't really understand what the remedy is that is

14   being sought, and I was just given a new subpoena five months

15   after -- end of discovery last week for documents going back

16   to 2010 to support a quiet title action that hasn't even been

17   initiated, that is not legally able to proceed in this court.

18   So that's why I asked for a specific remedy from Your Honor

19   that a quiet title action effectively under an adverse

20   possession title cannot proceed in this court, because I'm

21   about to be made to dig through 10 years, 20 years, 30 years

22   of records to support what needs to be a state court

23   proceeding that hasn't been filed, for which Your Honor

24   doesn't have the jurisdiction to remedy.

25             MR. DURHAM:  I disagree totally.  She's being

1    disingenuous with this court.  The Nicks case said that you

2    don't have to go to state court to enforce your remedy, you

3    can go to federal court.  And the Supreme Court said that's

4    always been the rule.  Nobody ever enforced it.  Now, as of

5    Nix 2019, it's law, you can go straight to federal court.  You

6    don't have to go to state court.  And that's clear.

7              MS. CLAIBORNE:  Nix said if you own property, you

8    don't have to go exhaust your administrative remedies in state

9    court before you can get compensation, because there was an

10   issue that people would go to state court.  They were told

11   they had to file a takings action, by then, the statute of

12   limitations has filed.  Now, if the city takes your property,

13   you may go straight to federal court.

14        The issue is, he has -- he sat here and said he doesn't

15   own it.  He believes he has the right to obtain title via a

16   quiet title action under adverse possession.  But again, in

17   Pennsylvania, title does not transfer until the quiet title

18   action has been effectuated.  No quiet title action has even

19   begun here, let alone completed.

20        He does not have legal title to this land.  He could go

21   to state court, try and initiate a quiet title proceeding, get

22   title, then come back, and initiate the initial takings

23   proceedings in federal court without having to exhaust state

24   remedy.  I'm not going to argue that.  There's statute of

25   limitations issues.  I'm not going to argue whether or not he

1   has the jurisdictional ability to come to this court for a

2   takings proceeding.  He does not have right to come to a

3   federal court to seek a quiet title action, to then

4   retroactively go for a takings proceeding.

5            THE COURT:  All right.  So --

6            MR. DURHAM:  Can I address that?

7            THE COURT:  So -- hold on one second, because I'm

8   not going to decide that --

9            MR. DURHAM:  Okay.

10           THE COURT:  -- issue right here.  What I am -- what

11   I do see on this record is that what you say is, "I have the

12   deeded property."  You're saying, "I don't know whether the

13   state," that's this record.  "I don't know whether the city

14   took anything within the deeded property, but I do know that

15   outside of the deeded property, they adversely possessed

16   things outside of the deeded property.  But I don't have a

17   survey of what that is.  But I adversely possessed that."

18   That's what I'm hearing, Mr. Durham.  Is that right?  Is

19   that --

20           MR. DURHAM:  Yeah.  I see it exactly the way you're

21   seeing it, Your Honor.

22           THE COURT:  All right.  That's your client's

23   position?

24           MR. DURHAM:  Yes, correct.

25           THE COURT:  All right.  So our record is complete

1    now for you to file your motion for summary judgment.

2            MS. CLAIBORNE:  Thank you, Your Honor.

3            THE COURT:  There's nothing else you need.  That's

4    the recorded.

5            MS. CLAIBORNE:  Thank you, Your Honor.

6            MR. DURHAM:  Your Honor, could --

7            THE COURT:  So we're going to go right to -- stick

8    with the summary judgment now.  I -- are you going to take the

9    -- do you still need to take the deposition?

10           MS. CLAIBORNE:  If I might have the opportunity, I

11   did propound requests for admissions, and I think I might have

12   what I need.  I guess, the one thing I didn't have was a clear

13   answer as to whether or not property subject to the deed was

14   taken.  So if I can get either --

15           THE COURT:  The clear answer is --

16           MS. CLAIBORNE:  If I can use this transcript, then

17   we're good.

18           THE COURT:  Then that's it.

19           MS. CLAIBORNE:  Thank you, Your Honor.

20           THE COURT:  The transcript is what it is.  All

21   right.  Thank you, everybody.

22           MS. CLAIBORNE:  Thank you.

23           MR. DURHAM:  All right.  Thank you, Your Honor.

24           THE COURT:  You're welcome.

25       (Court adjourned)

21

```
 1                          CERTIFICATION
 2      I certify that the foregoing is a correct transcript from the
 3      electronic sound recording of the proceedings in the above-
 4      entitled matter.
 5
 6
 7                                                9/13/21
 8
 9      _____         _____
10      Signature of Transcriber                    Date
```