**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT HOLTON,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **NO. 18-2228** |
| | : | |
| **BOBBY HENON,** *et al.*, | : | |
| *Defendants.* | : | |

**MEMORANDUM**

**Kenney, J.**                                                    **March 9, 2022**

In October 2018, Plaintiff Robert Holton's property was removed from land the City of Philadelphia (the "City") alleged that it owned. The property removal was pursuant to a cease operations order issued by the City Department of Licenses and Inspections ("L&I") based on numerous L&I violations. Throughout this case, Mr. Holton has maintained that at the time of removal he owned the land the property was removed from, and that, accordingly such removal was an illegal "taking" of his land in violation of the Fifth Amendment of the United States Constitution (Count II, Fifth Amendment Violation). The facts alleged by Mr. Holton underlying this takings claim, however, have transformed substantially to make them fit the reality of the record as it developed, which consequently had the effect of completely undermining some of his own, basic claims to the land that he had originally made, as well as his additional conspiracy claim that was predicated on the facts initially alleged. (Count I, Civil Conspiracy).

For the vast majority of the lengthy dispute over the land from which Mr. Holton was removed, Mr. Holton maintained that he owned the land at issue by deed. In accordance with this long-held assertion, in his Second Amended Complaint, Mr. Holton specifically alleges that he was removed from the land he owned outright by deed. Then, despite proceeding deep into this case with that assertion as the basis of his takings claim, well after the close of discovery (and as

1

it became evident that the land Mr. Holton was removed from was not within the metes and bounds of any land owned by Mr. Holton via deed), Mr. Holton recast his takings claim to argue that he was removed from land that he obtained through adverse possession. Indeed, in his two-page Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Mr. Holton appears to entirely abandon the argument that he was removed from land he owns by deed, and instead moves forward solely on a theory of adverse possession. Most recently, the day before Oral Argument was heard before this Court regarding the pending summary judgment motion, Mr. Holton once again, proffering novel facts, substantially modified the basis of his takings claim, asserting that the City removed him from the land because it blocked ingress and egress from the disputed land which also blocked him from ingress and egress to his duly deeded land that is contiguous to the disputed land. The record establishes, however, that he has ingress and egress to his duly deeded land.

Mr. Holton also contends in the Second Amended Complaint that Defendants Bobby Henon,[1] Darin L. Gatti,[2] and Edward Jefferson[3] conspired against him to deprive him of his Fifth Amendment Constitutional rights by way of the taking through the nefarious manipulation of lot lines and issuance of falsified L&I violations.

Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 74)

---

[1] During all times material to the claims set forth in the Second Amended Complaint (ECF No. 21), Defendant Bobby Henon served as a member of City Council of the City of Philadelphia, District 6.

[2] During all times material to the claims set forth in the Second Amended Complaint (ECF No. 21), Defendant Darin L. Gatti served as Chief Engineer of the City of Philadelphia and as President of the Board of Surveyors of the Philadelphia Streets Department.

[3] During all times material to the claims set forth in the Second Amended Complaint (ECF No. 21), Defendant Edward Jefferson served as the Senior Attorney in the Housing and Code Enforcement Unit of the Office of the City Solicitor for the City of Philadelphia Law Department.

and Plaintiff's Affidavit and Response in Opposition (ECF Nos. 79, 80). For the reasons set forth below, this Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 74) as to all counts. An appropriate order will follow.

## I.     BACKGROUND

In or around 1990, Mr. Holton began working on an auto scrap yard owned and operated by non-party Albert Buoncristiano.[4] ECF No. 79 ¶ 2.

In 1994, Mr. Holton began leasing the scrap yard business and the land upon which the business was operating from Mr. Buoncristiano. *Id.* ¶ 4.

On November 23, 2004, Mr. Holton purchased and obtained the deed (the "Holton Property Deed") to two separate parcels of land (collectively, the "Holton Property") from Mr. Buoncristiano, which he asserts he believed encompassed the entirety of the land upon which the scrap yard was operating at that time. *Id.* ¶¶ 4–5; ECF No. 74 Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SUMF") ¶ 1.

Prior to Mr. Holton's purchase of the Holton Property, in 2004, Mr. Buoncristiano requested and received a site plan of the Holton Property (the "Holton Property Survey Plan") from the City of Philadelphia Fifth Survey District, which provided the metes and bounds of the two parcels of land, identified therein as Lot A and Lot B. ECF No. 74 SUMF ¶3; *Id.* Ex. B. The metes and bounds of these two distinct parcels of land are also specified within the Holton Property Deed but are labeled Premises A[5] and Premises B therein rather than Lot A and Lot B;

---

[4] Mr. Buoncristiano's name is spelled a variety of different ways throughout both Plaintiff's and Defendants' briefings and memoranda. To avoid confusion, this Court adopts the spelling, "Buoncristiano" herein.

[5] At some point Premises A of the Holton Property was misidentified by the Office of Property Assessment ("OPA") as 4085 Richmond Street ("4085 Richmond"), and accordingly various portions of the record in this case refer to this portion of the Holton Property as 4085 Richmond. ECF No. 74 SUMF ¶ 7.

counterintuitively, Premises A corresponds with Lot B, and Premises B corresponds with Lot A.[6] ECF No. 74 SUMF ¶¶ 2–7; *Id.* Ex. A; *Id.* Ex. B.

There is no current dispute that Mr. Holton is the owner of the Holton Property as identified by the metes and bounds specified within the Holton Property Deed. ECF No. 74 SUMF at p. 4. And there is likewise, no dispute that Mr. Holton continues to operate his scrap yard business on the Holton Property and that he has two modes of ingress and egress to and from the Holton Property both of which remain accessible and are not the subject of this suit. ECF No. 98 at 15:17–21.

There is, however, this dispute over the ownership of a separate portion of land located to the west of Holton Property Premises A, known as 4087 Richmond Street[7] ("4087 Richmond"). ECF No. 74 SUMF ¶ 11; *Id.* at p. 4; ECF No. 79 ¶ 9.

On or around December 19, 1951, through eminent domain and in accordance with a City Council Ordinance, the City obtained legal title to the land subject to this dispute, 4087 Richmond, in connection to its creation of a right-of-way (the "Frankford Creek Right-of-Way"). ECF No. 74 SUMF ¶ 11; *Id.* at p. 4; ECF No. 79 ¶ 9. Defendants point out the City still has legal title to the land, while Plaintiff contends that he acquired the land through adverse possession. ECF No. 79 ¶ 9.

The disputed parcel of land, 4087 Richmond, is located to the west of the Holton

---

[6] The Holton Property Deed also explicitly states that Premises A and B are the same parcels of land identified by separate Plans of Surveys made by Barton and Martin Engineers dated June 24, 1977, which provide the metes and bounds for these two parcels of land as well. ECF No. 74 SUMF ¶¶ 5–7; *Id.* Ex. C; *Id.* Ex. B.

[7] The address 4087 Richmond Street is a fictional address given to this portion of land by the City of Philadelphia. ECF No. 74 SUMF ¶12; ECF No. 79 ¶ 1. According to the City, 4087 Richmond has also been known as 3950 Delaware Avenue. ECF No. 74 Ex. H at p. 3:2–5; *Id.* Ex. H at p. 24:13–14.

Property Premises A and spans approximately from the center of former Balfour Street, which is the western boundary of Premises A of the Holton Property (as set forth in the Holton Property Deed) to Richmond Street, a public road further west. *See infra* Figure 1; *see also* ECF No. 74 ¶¶ 8, 13; *Id.* Ex. D; *Id.* Ex. A; *Id.* Ex. B (describing the western boundary of Premises A of the Holton Property as extending "to a point in the center line of former Balfour Street").

In his Second Amended Complaint, Mr. Holton specifically alleged that pursuant to the Holton Property Deed, he owned a parcel of land "bounded by Richmond Street to the west, Delaware Avenue to the east, Conrail to the south and the Frankford Creek to the north," which facially includes the portion of the Frankford Creek Right-of-Way identified as 4087 Richmond. ECF No. 21 ¶¶ 8, 16; ECF No. 74 Ex. B. The record subsequently established that this in fact is not the case.

The Holton Property, as set forth in the Holton Property Deed, however, does not actually include 4087 Richmond within its metes and bounds. *Id.* Ex. B. At this point in the litigation, Mr. Holton appears to have abandoned the argument that he owns 4087 Richmond via deed and is instead moving forward on a theory of adverse possession. *See generally* ECF No. 80.

For further clarification and by-way of providing a visual to this simple property dispute, Figure 1 (below) depicts the relevant boundaries. *See infra* Figure 1. In Figure 1, the red line indicates former Balfour Street (the western boundary of Premises A of the Holton Property). *See infra* Figure 1; *see also* ECF No. 74 ¶ 13; *Id.* Ex. G. To the right of the red line, Figure 1 shows what is identified by the Holton Property Deed as Premises A extending to its eastern boundary of former Carbon Street. *See infra* Figure 1; *see also* ECF No. 74 Ex. B. To the left of the red line, Figure 1 depicts the piece of land known as 4087 Richmond, which extends approximately east to west from former Balfour Street (the red line) to Richmond Street (shown

on the far-left side of the diagram). *See infra* Figure 1; *see also* ECF No. 74 Ex. G.



Figure 1[8]

Both parties agree that at some point, the scrap yard business began to access and use the land outside the metes and bounds of the Holton Property (as specified by the Holton Property Deed), crossing the western boundary of Premises A (i.e., former Balfour Street) and entering on to the Frankford Creek Right-of-Way by way of 4087 Richmond, to some degree. ECF No. 74 SUMF ¶ 10; *Id.* Ex. F, Answer to Interrogatory No. 5; ECF No. 79 ¶ 2–5. Plaintiff Holton claims that since the time he began working for Mr. Buoncristiano, as early as 1990, the scrap yard business used the "entire parcel" of 4087 Richmond but has not obtained a survey of this land or otherwise provided any specific metrics by which the "entire parcel" can be identified. ECF No. 79 ¶ 2.

In connection with Mr. Holton's use of 4087 Richmond the City did not commence ejectment proceedings. Instead, the L&I inspected 4087 Richmond on March 2, 2017, and issued several L&I Violations to Mr. Holton. ECF No. 74 SUMF ¶¶ 15–17; *Id.* Ex. I. According to Defendants, City-owned 4087 Richmond was not zoned for the business Mr. Holton was

---

[8] Figure 1 is an exact digital copy of Defendants' Motion for Summary Judgment Ex. G, as shown within Defendants' Memorandum of Law in Support of Summary Judgment including the red line added to Ex. G by Defense counsel to clearly identify the boundary of the Holton Property. ECF No. 74 Ex. G; *see also* ECF No. 74 ¶ 13.

operating, nor did Mr. Holton have the proper licenses to operate such business, as he did not have legal title to the land. *Id.*

In relation to these L&I Violations, a Notice of Intent to Cease Operations and Order was issued by L&I, which was scheduled to take effect April 12, 2017, unless the violations were rectified. ECF No. 74 Ex. J. Plaintiff Holton appealed the L&I Violations to the L&I Review Board (the "Board") on April 3, 2017.  ECF No. 74 Ex. K; *Id.* Ex. H; *Id*. Ex. L.

While this appeal was pending, Mr. Holton filed a motion in the Court of Common Pleas seeking a preliminary injunction to restrain L&I from enforcing the Cease Operations Order. ECF No. 25 Ex. L. On April 12, 2017, a hearing was held to decide Mr. Holton's Motion for a Preliminary Injunction (the "First Preliminary Injunction Hearing"). *Id.* Ex. M. At the First Preliminary Injunction Hearing, Mr. Gatti, who served as Chief Engineer of the City of Philadelphia and as President of the Board of Surveyors of the Philadelphia Streets Department during the relevant time period, testified regarding the City's use of the Frankford Creek Right-of-Way, and in particular, the portion constituting 4087 Richmond. *Id.* Ex. M at 35:1–38:13.

Specifically, Mr. Gatti testified that 4087 Richmond was "[C]ity property" and spoke to its public use as a floodway. ECF No. 25 Ex. M at 38:15–39:13. Mr. Gatti stated that Mr. Holton's use of the portion of the Frankford Creek-Right-of-Way at 4087 Richmond posed an "environmental danger" because "every time [Frankford Creek] floods, [Mr. Holton's property located on 4087 Richmond] can go under water….then basically you [would] have a bunch of junk cars in the creek…" *Id.* Mr. Gatti further explained the public health importance of the Frankford Creek Right-of-Way remaining clear specifying that Frankford Creek "is less than a thousand feet from the Delaware River, which is where half of Philadelphia gets their drinking water from…" and thus,  "not only every time it rains, but more importantly every time [there

are] heavy spring floods during a high tide on the Delaware River [there is] a danger of oils, antifreezes, battery acids all going into the creek, which goes into the river, which goes into [Philadelphia's] drinking system." ECF No. 25 Ex. M at 38:15–39:13. On April 13, 2017, the Court of Common Pleas denied Mr. Holton's Motion for a Preliminary Injunction. *Id.* Ex. N.

Subsequently, following a hearing held before the Board on August 29, 2017, the Board unanimously affirmed the City's violation determinations and denied Mr. Holton's appeal on the grounds that Mr. Holton did not have a zoning permit for operation of a scrap yard at 4087 Richmond. ECF No. 74 Ex. K; *Id.* Ex. H; *Id.* Ex. L. The Board did not explicitly make a conclusion regarding ownership of 4087 Richmond, as it was able to affirm the L&I Violations without doing so. ECF No. 74 Ex. K; *Id.* Ex. L. Mr. Holton appealed the Board's decision to the Court of Common Pleas on September 22, 2017. ECF No. 74 Ex. M.

While the Court of Common Pleas appeal was pending, on February 1, 2018, L&I issued a Cease Operations Notice to Mr. Holton stating that Mr. Holton must "immediately comply with the Cease Operations Order and to [sic] remove from the land all equipment, materials, vehicles, structures, appliances and waste." ECF No. 74 Ex. N. This Cease Operations Notice also stated that 4087 Richmond was part of the Frankford Creek Right-of-Way and that if Mr. Holton did not make the removals consistent with the Cease Operations Order and vacate the Frankford Creek Right-of-Way, the City would "secure the land from entry after making the said removals and disposals." *Id.*

On February 15, 2018, Mr. Holton filed a second Motion for a Preliminary Injunction against enforcement of the Cease Operations Order in the Court of Common Pleas. ECF No. 25 Ex. P. In his second Motion for a Preliminary Injunction, Mr. Holton stated that "commencing in 2006," the City had been attempting to "acquire portions of real estate owned by [Mr.] Holton,

ostensibly for development located at the Richmond Street/Delaware Avenue address." ECF No. 25 ¶ 4. The subject land was at the time, and still is, fallow, and there is no evidence whatsoever that any portion of 4087 Richmond is being considered for development of any kind.

On February 16, 2018, a hearing was held in the Court of Common Pleas to decide Mr. Holton's second Motion for Preliminary Injunction (the "Second Preliminary Injunction Hearing"). ECF No. 25 Ex. Q. At the Second Preliminary Injunction Hearing, the City agreed that Mr. Holton owned the land specified in the Holton Property Deed, but argued that 4087 Richmond, which was the focus of the Cease Operation Order, was City land and that Mr. Holton had no legal right to occupy or otherwise use that land. ECF No. 25 Ex. Q at 6:10–8:20, 40:7–15. The Court then gave Mr. Holton until February 21, 2018 to submit documentation to the Court demonstrating that Mr. Holton owned 4087 Richmond. *Id.* Ex. Q at 101:9–104:5. Although Mr. Holton, through counsel, subsequently filed a copy of a Quit Claim Deed related to portions of the Holton Property, tellingly Mr. Holton never filed a deed or any other documentation showing he had an ownership interest in 4087 Richmond. *See* ECF No. 25 at p. 19; *Id.* Ex. R. On March 1, 2018, the Court of Common Pleas denied Mr. Holton's second Motion for a Preliminary Injunction but did *not* explicitly make any findings as to ownership of 4087 Richmond.[9] ECF No. 25 Ex. S.

On August 20, 2018, after hearing oral argument, the Court of Common Pleas affirmed

---

[9] In May 2019, this Court granted a motion dismissing Plaintiff Holton's claims for lack of subject matter jurisdiction relying on the *Rooker-Feldman* doctrine. *Holton v. Henon*, No. 18-cv-2228, 2019 WL 2320871, at *4 (E.D. Pa. May 28, 2019); *see also See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). After finding that the *Rooker-Feldman* doctrine was inapplicable to this case, the Third Circuit identified that "[i]t may be that [Plaintiff] Holton's claims would be barred by issue preclusion – if, for instance, the state court determined on the merits, after a full and fair opportunity to litigate the issue, that [Plaintiff] Holton did not own the property on which he operated his business." *Holton v. Henon*, 832 F. App'x 781, 785 (3d Cir. 2020). A careful review of the procedural history of this case, however, reveals that no state court ever ruled specifically as to the ownership 4087 Richmond, and accordingly, the case cannot be resolved as a matter of issue preclusion.

the Board's decision regarding the L&I Violations. ECF No. 74 Ex. O ("Upon consideration of the statutory appeal by [Mr.] Holton of the City of Philadelphia, Department of Licenses and Inspections and argument by counsel, the Court hereby AFFIRMS the city of Philadelphia, Department of Licenses and Inspections' decision and DENIES the appeal of [Mr.] Holton."). Mr. Holton filed a Motion for Reconsideration asking the Court of Common Pleas to reconsider its Order denying the appeal, but on September 11, 2018, the Court of Common Pleas denied Mr. Holton's Motion for Reconsideration, and subsequently Mr. Holton never appealed the Court of Common Pleas decision affirming the Board's denial of Mr. Holton's appeal. *Id.* Ex. M; *Id.* Ex. O.

On October 13, 2018, the City enforced the Cease Operations Order by closing off Mr. Holton's use of 4087 Richmond and removing Mr. Holton's property therefrom. ECF No. 74 SUMF ¶ 31–33 ; *Id*. Ex. E at 50:19–51:3. Specifically, Defendant Gatti testified in his deposition that at the time of the removal, the City cut through a locked gate and removed corrugated metal that was affixed to a fence located on the Richmond Street edge of 4087 Richmond. *See* ECF No. 74 Ex. E at 54:14 –56:2. At Oral Argument on January 25, 2022 held before this Court as to Defendants' Motion for Summary Judgment, Plaintiff's counsel represented that this fence was erected by Mr. Holton or his predecessor, yet Mr. Holton's sworn affidavit submitted in opposition to Defendants' Motion for Summary Judgment (ECF No. 79) (the "Holton Affidavit") is silent as to the erection or maintenance of any fence located on 4087 Richmond, and while Defendant Gatti testified as to the existence of a gated fence on 4087 Richmond, there is no evidence in the record regarding who erected or maintained the fence or when it was erected. ECF No. 95 at p. 5; *see also* ECF No. 75 Ex. E at 24:1–17; *Id.* Ex. E at 54:14 – 46:2; ECF No 79. In fact, the record reflects no improvements, no buildings, no paving, no sidewalk maintenance,

no curb cut outs, or anything reflective of an adverse taking made by Mr. Holton or his predecessor to 4087 Richmond other than attaching "corrugated metal" to the fence located on the Richmond Street side of 4087 Richmond on some unspecified date. ECF No. 74 Ex. E at 54:14–46. In addition to the removal of the corrugated metal, the City removed further scrap metal and car parts, debris, and a couple of trailers that had been placed on the non-deeded land on some unspecified date. *See Id.* Ex. E at 61:23–62:8; *see also Id.* Ex. E at 65:23–66:13. Nothing was removed from the land deeded to Mr. Holton. ECF No. 74 Ex. E at 50:19–51:3.

Mr. Holton alleges that this removal constituted an illegal government taking. ECF No. 79 ¶¶ 13, 18. Though, as previously mentioned, the grounds on which Mr. Holton presents this argument have shifted significantly over the course of the litigation.

On January 22, 2019, Plaintiff Holton filed a Second Amended Complaint in which he claimed that he was removed from land he owns pursuant to the Holton Property Deed (including 4087 Richmond).[10] ECF No. 21 ¶ 8, 16; *Id.* Ex. B.

On September 24, 2021, Defendants filed a Motion for Summary Judgment as to all Plaintiff's claims, and on November 1, 2021, Mr. Holton submitted a Response in Opposition to Defendants' Motion abandoning the argument Mr. Holton owned 4087 Richmond by deed and instead arguing summary judgment was not warranted on the grounds that Mr. Holton owned

---

[10]As explained in more detail below this contention is facially contradicted by the metes and bounds specified by the Holton Property Deed in that 4087 Richmond is not part of the Holton Property as defined by the Holton Property Deed. ECF No. 74 Ex. B. It is also contradicted by the testimony of Chief Engineer and President of the Board of Surveyors, Defendant Darin Gatti. ECF No. 74 Ex. B; Id. Ex. E at 50:19–51:3. Specifically, Defendant Gatti stated in his deposition related to this case that at the time of Mr. Holton's removal the City staked out the relevant property lines to ensure that the City only removed Mr. Holton and his belongings from City land and not from the land that Mr. Holton owns pursuant to the Holton Deed. ECF No. 74 Ex. E at 50:19–51:3; ECF No. 74 SUMF ¶ 31–33. Additionally, at a subsequent Sanction's Hearing in this case held on September 7, 2021, Mr. Holton, through his attorney, admitted to not actually knowing whether the City removed Mr. Holton from anywhere within the metes and bounds of the Holton Property on October 13, 2018. ECF No. 74 Ex. P at 19:10-25; ECF No. 72 at 19:10-25.

4087 Richmond via adverse possession. ECF Nos. 74, 80. On January 25, 2022, Oral Argument

was heard by this Court as to the Motion for Summary Judgment. ECF No. 98.

The day before Oral Argument, January 24, 2022, Mr. Holton, through counsel,

submitted a Supplemental Response to Defendants' Motion for Summary Judgment in which he,

yet again, transformed his argument related to his alleged ownership interest in 4087 Richmond

arguing that Mr. Holton and his predecessor used 4087 Richmond as ingress and egress to the

Holton Property and that the "[t]aking of ingress and egress is compensable as a [t]aking of the

entire parcel under applicable law, characterized as 'inverse condemnation.'" ECF No. 95 at p. 5.

Again, it can be noted here that Plaintiff Holton's scrap yard continues to operate and that

ingress and egress to the Holton Property continue unimpeded on his land that is contiguous to

4087 Richmond.  ECF No. 98 at 15:17–21.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is proper when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly,

"[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact...'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012)

(quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is

"material" if it "might affect the outcome of the suit under the governing law." *Anderson v.

Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment carries the initial burden "of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

"Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact. In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument. In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal citations omitted).

The non-moving party must therefore show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. The party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Nor can the non-moving party "rely on unsupported allegations" and instead "must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual

dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Civ. P. 56(c). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## III.  <u>DISCUSSION</u>

In pertinent part, the Fifth Amendment of the United States Constitution "prohibits the government from 'taking private property for public use without providing just compensation.'" *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (citing *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012)). This clause, aptly named the "Takings Clause" also "applies to state and local governments through the Fourteenth Amendment." *Id.* "To succeed on a takings claim, 'the plaintiff[s] must first show that a legally cognizable property interest is affected by the Government's action in question.'" *Id.* at 151–52 (citing *Prometheus Radio Project v. FCC*, 373 F.3d 372, 428 (3d Cir. 2004); *see also Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160–61 (1980) (requiring protected property interest for taking); *In re Trs. of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017) ("Without a legally cognizable property interest, [a plaintiff] has no cognizable takings claim."). For the purposes of takings claims, property interests "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source

such as state law.'" *Newark Cab Ass'n*, 901 F.3d at 151–2 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

In the present case, Plaintiff's takings claim and the underlying facts alleged by Plaintiff in relation to his takings claim have changed significantly from the time he filed the Second Amended Complaint to the present. *Compare* ECF No. 21 *with* ECF No. 80. Due to the seemingly ever-changing nature of Mr. Holton's takings claim, in connection with the fact that Mr. Holton never formally amended his pleadings to include each new theory of ownership over 4087 Richmond (nor even raised these arguments until well after the close of discovery), there is very little evidence in the record that speaks to the adverse possession or ingress and egress arguments. Indeed, the only evidence Mr. Holton points to in support of his adverse possession argument is the self-serving Holton Affidavit, submitted in Opposition to Defendants' Motion for Summary Judgment. *See* ECF No. 79. With respect to the ingress and egress argument, this Court finds that the record is completely bare, and that Mr. Holton has failed to point to *any evidence at all* that supports this claim. In fact, Mr. Holton continues to operate his salvage business with ingress and egress to the Holton deeded side of the property and the record reflects no evidence of business disruption to the operation of the salvage yard at any time.

Thus, although this case is at the summary judgment stage, Mr. Holton's arguments and briefings now read more like pleadings that would barely survive the plausibility standard. *See Jones*, 214 F.3d 402, 407 (3d Cir. 2000) (finding a party opposing summary judgment may not "rely on unsupported allegations but must go beyond pleadings and provide some evidence that

would show that there exists a genuine issue for trial."). In any case, despite the *dynamic* nature of Plaintiff's takings claim, this Court attempts to address each of its many forms below and finds that Plaintiff cannot survive summary judgment as he has failed to establish any genuine issue of material fact. *See Anderson*, 477 U.S. at 248.

A. **Plaintiff Holton's Fifth Amendment Claim Alleging the City's Unlawful Taking of Land Owned by Plaintiff Holton by Deed Fails as a Matter of Law Because Mr. Holton Has Failed to Create a Genuine Dispute of Material Fact as to Whether the Government Actually "Took" Any Land Within the Metes and Bounds of the Relevant Deed, and Thus No Reasonable Jury Could Find That Plaintiff Holton Has Established a Legally Cognizable Property Interest on Which to Sustain His Takings Claim.**

Although it appears from Mr. Holton's two-page Memorandum of Law in Opposition to Summary Judgment that Mr. Holton has entirely abandoned his argument set forth in his Second Amended Complaint that the City removed him from property he owns by deed (and is instead proceeding primarily on a theory of adverse possession), this Court finds it is necessary to address the allegations contained in the Second Amended Complaint in order to create a clean and unambiguous record. *Compare* ECF No. 21 *with* ECF No. 80.

There is no dispute that Mr. Holton owns the entire Holton Property pursuant to the Holton Property Deed, and this Court finds that Mr. Holton has failed to identify any specific portions of the Holton Property that he was removed from by the City, much less put forth *any* evidence that would support such claim. *See generally* ECF No. 80; *see also* ECF No. 74 Ex. P at 19:10–24. Further, Mr. Holton has also explicitly acknowledged, through counsel, that he does not know whether the City removed him from any land within the metes and bounds specified in the Holton Property Deed, and that determining whether the City did so would be impossible without a survey.[11] Specifically, when asked directly at the Sanctions Hearing held before this

---

[11] At the September 7, 2021 Sanctions Hearing, this Court summarized Mr. Holton's position stating, "You're saying…I don't know whether the [C]ity took anything within the deeded property, but I do

Court on September 7, 2022, whether the City "remove[d] [Mr. Holton] from any of the property that he owns via deed on," Plaintiff's counsel stated that "[t]here is no way to know, absent a survey, whether or not [the City] took any of [Mr. Holton's property or not, because there are no distinguishing marks. There's nothing…" ECF No. 72 at 13:3–5.

Because Mr. Holton has not provided any evidence that he owns, by deed, any portion of 4087 Richmond, which is the only real property that there is evidence Mr. Holton was actually removed from, Mr. Holton has not affirmatively identified any land that the government actually "took" from him. ECF No. 74 Ex. E at 50:19–51:3; *see Newark Cab Ass'n*, 901 F.3d at 151–2 ("To succeed on a takings claim, the plaintiff[s] must first show that a legally cognizable property interest **is affected by the Government's action in question**.") (internal citations omitted) (emphasis added); *Berckeley Inv. Grp., Ltd.,*, 455 F.3d at 201 ("the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact").

Thus, while Mr. Holton has asserted facts that establish a legally cognizable property interest with respect to the land identified by the Holton Property Deed, Mr. Holton has failed to put forth any facts at all upon which a reasonable jury could conclude this property interest was in any way "affected by the Government's action in question," and thus any takings claim premised on these grounds cannot survive summary judgment as there is no genuine dispute of any material fact that would lead a juror to find otherwise. *Id.*; *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment should be granted in favor of the moving party) (internal citations omitted).

---

know that *outside* of the deeded property [Mr. Holton] adversely possessed things outside of the deed property…is that right?" and Mr. Durham (counsel for Mr. Holton) then responded, "Yeah. I see it *exactly the way you're saying it*, Your Honor." *Id.* (emphasis added). The Court then asked more explicitly, "That's your client's position?" and Mr. Durham responded, "Yes, correct." ECF No. 72 at 19:10–24.

In fact, the only evidence on this record relevant to this inquiry is the affirmative testimony of the surveyor, Defendant Gatti, that the Holton Property was staked off during the October 2018 removal and that no property was removed from the Holton Property. *See* ECF No. 74 Ex. E at 50:19–51:3.

**B.** **As a Threshold Matter to Considering Plaintiff's Taking's Claim Based on a Theory of Adverse Possession, This Court Find, in Accordance With Both Parties, That It Has Subject Matter Jurisdiction to Address Plaintiff's Adverse Possession Argument.**

At the Sanctions Hearing held before this Court on September 7, 2021, Defendants argued the Court did not have subject matter jurisdiction to address Plaintiff's adverse possession claim because it is a state law issue. ECF No. 72 at 17:9–24. Although both parties are now in agreement that this Court has subject matter jurisdiction, this Court finds it necessary to address the issue and finds that, in accordance with both parties, this Court does have subject matter jurisdiction over the entire action.

As mentioned previously, Mr. Holton contends that he owns 4087 Richmond through adverse possession, and that thus, the City's enforcement of its Cease Operations Order and subsequent removal from that land constitute an illegal government taking. *See* ECF No. 80. There is no indication that prior to this litigation, Mr. Holton had commenced a quiet title action or obtained documentation of legal title to any portion of the Frankford Creek Right-of-Way from which he was removed on October 13, 2018. ECF No. 74 at p. 7. (In fact, the state court record reflects he was given every opportunity to produce a deed and he did not.) *See e.g.,* ECF No. 25 Ex. R. Accordingly, although Mr. Holton has not formally filed a quiet title action in any court, Mr. Holton's arguments and pleadings ask a federal jury to resolve this title dispute and convey title to him by finding that he has satisfied the elements of adverse possession in order to find a legally cognizable property interest in 4087 Richmond for the purposes of his takings

claim. *See generally* ECF Nos. 79, 80.

At the Sanctions Hearing held before this Court on September 7, 2021, Defendants argued that Plaintiff's taking's claim based on adverse possession was dependent on a state law question, and that thus, Mr. Holton did "not have right to come to a federal court to seek a quiet title action, to then retroactively go for a takings proceeding." *Id.* at 20:2–4. Subsequently, however, Plaintiff withdrew this argument (*see* ECF No. 93) stating that "[i]n light of the Third Circuit's decision in *Bush v. Philadelphia Redevelopment Authority*, 822 F.App'x 131, 134 (3d Cir. 2020)… this Court has jurisdiction to hear Plaintiff's Taking Clause claim, despite being predicated on the state law issue of whether Plaintiff adversely possessed the property at issue…"[12] ECF No. 93 at p. 1; *see also* ECF 90 at 6:23–7:1. This Court agrees with both the Plaintiff's and Defendants' interpretation of *Bush* that under the facts of this record, this Court has jurisdiction to determine title and Mr. Holton's adverse possession claim as a preliminary step to determining the takings controversy that has been presented to it. 822 F.App'x at 134.

C. **Plaintiff Holton's Fifth Amendment Claim Alleging the City's Unlawful Taking of 4087 Richmond Obtained by Plaintiff Holton Through Adverse Possession Fails as a Matter of Law on the Basis of the Following Two Separate, Self-Supporting Foundations: (1) Mr. Holton Has Failed to Put Forth More Than a Scintilla of Evidence as to the Essential Elements of Adverse Possession; and (2) the Land Itself is Immune From Adverse Possession as it is Municipal Land Held for Public Use.**

For the reasons that follow, this Court finds that Mr. Holton has failed to establish a genuine issue of material fact as to whether he owns 4087 Richmond via adverse possession, and that thus, Mr. Holton cannot sustain his Fifth Amendment Takings Claim as a matter of law

---

[12] In *Bush*, the District Court granted a motion to dismiss on the grounds that the plaintiff lacked Article III standing because the Court determined that Plaintiff did not own the property at the time of the taking either through adverse possession or by contract; however, the Third Circuit rejected this argument finding that the plaintiff had standing because in order for the District Court to determine the question of ownership interest the District Court "effectively required evidence and resolved disputed issues on the merits." *Bush v. Philadelphia Redevelopment Auth.*, 822 F. App'x 131, 134 n.4 (3d Cir. 2020).

because he has failed to establish a legally cognizable ownership interest in the relevant land.

*Wright*, 679 F.3d at 103 ("[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...'"); *In re Trs. of Conneaut Lake Park, Inc.*, 855 F.3d at 526 ("Without a legally cognizable property interest, [a plaintiff] has no cognizable takings claim.").  More specifically, Mr. Holton has (1) failed to present facts upon which a reasonable juror could conclude he adversely possessed 4087 Richmond, as he has not presented more than a scintilla of evidence as to the necessary elements of an adverse possession claim; and (2) even if he had created a genuine issue of material fact as to the necessary elements of adverse possession, his claim would still fail for the completely separate reason that the land in question is immune from adverse possession as it is municipal property held for public use. In sum, the record clearly establishes, and this Court finds, that the land in question from which Mr. Holton's property was removed from is now, and was at the time of the removal, municipal property duly deeded to it and was not ever, nor could it have been, adversely possessed by Plaintiff Holton.  No reasonable juror could find otherwise.

> **1.    Plaintiff's Fifth Amendment Claim Fails as a Matter of Law Because Plaintiff Has Failed to Create a Genuine Issue of Material Fact as to Whether He Adversely Possessed 4087 Richmond.**

Under Pennsylvania law, ""[a]dverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law." *Zaloga v. Borough of Moosic*, No. 3:10CV2604, 2011 WL 2938422, at *17 (M.D. Pa. July 19, 2011) (citing *Recreation Land Corp. v. Hartzfield*, 947 A.2d 771, 774 (Pa. Super. Ct. 2008)). "It is well settled that a party claiming title to real property by adverse possession must **affirmatively prove** that he or she had 'actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of

the land for twenty-one years.'" *Ammerman v. Shaffer*, No. 387 WDA 2014, 2014 WL 10795233, at \*4 (Pa. Super. Ct. Oct. 3, 2014) (emphasis added); *see also Galdo*, 217 A.3d at 820; 68 P.S §§ 81-88 (governing claims by adverse possession). Accordingly, title will not confer, unless "[e]ach of these elements…exist[s.]" *Tioga Coal Co. v. Supermarkets Gen. Corp.*, 519 Pa. 66, 72, 546 A.2d 1, 3 (1988).

Further, Pennsylvania courts have emphasized that "[i]t is a serious matter indeed to take away another's property," and that, **the grant of this extraordinary privilege should be based upon clear evidence."** *Recreation Land Corp. v. Hartzfeld*, 2008 PA Super 76, ¶ 7, 947 A.2d 771, 774 (2008) (emphasis added); *Ammerman*, No. 2013 WL 11251543, at \*2 (citing *Flannery v. Stump*, 786 A.2d 255, 258 (Pa. Super. 2001); *see also Stevenson v. Stein*, 412 Pa. 478, 195 A.2d 268, 270 (1963). ("Of course, **the burden of proving this adverse possession was upon the plaintiff by credible, clear and definitive proof**.") (emphasis added); *Showalter v. Pantaleo,* 9 A.3d 233, 235 (Pa. Super. 2010). Thus, in order to establish a legally cognizable ownership interest in 4087 Richmond through adverse possession at trial, Mr. Holton would bear the burden of affirmatively proving through "credible, clear and definitive" evidence each of the required elements necessary to establish ownership through adverse possession. *Ammerman,* 2013 WL 11251543, at \*2 (citing *Stevenson*, 195 A.2d at 270). Accordingly, at the summary judgment stage, although Mr. Holton as the non-moving party "receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment," to actually survive summary judgment, the burden is on Mr. Holton, as the party with the burden of proof in this case, to "set forth facts in the record" that "create[] a genuine issue of material fact" as to an essential element of his adverse possession claim. *Berckeley Inv. Grp., Ltd.*, 455 F.3d at 201 (internal citations omitted). Resting "solely on assertions made in the pleadings, legal

memoranda, or oral argument" is not enough to create a genuine dispute of material fact. *Id.*

In the present case, Mr. Holton has not identified the particular metes and bounds of the land he claims to own through adverse possession, nor has he put forth with specificity facts that support the necessary elements of his adverse possession claim. *See generally* ECF Nos. 79, 80. The only evidence offered by Mr. Holton in support of his adverse possession claim is the sworn Holton Affidavit (ECF No. 79), submitted in opposition to Defendants' Motion for Summary Judgment (ECF No. 74), in which he asserts he "owns the property known as 4087 Richmond Street by adverse possession, having occupied and used the property for more than 21 years without the approval of the City." ECF No. 79 ¶ 9.

In the Holton Affidavit, Mr. Holton also states that "as early as 1990" Mr. Bounocristo "operated an auto scrap yard…on the entire parcel of 4087 Richmond…," and that the use of 4087 Richmond was "open, notorious [sic] continuous and hostile to the interest of the City…" ECF No. 79 ¶¶ 2, 10. In his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (ECF No. 80), Mr. Holton, through counsel states that Mr. Holton "and his predecessor had occupied the Frankford Creek tract for more than twenty one years… with Richmond Street as the west boundary and the Frankford Creek [as the] north boundary,"), yet no evidence is offered to support this claim, outside of the Holton Affidavit, which is silent as to the boundaries of 4087 Richmond. ECF No. 80 at pp. 1–2; *see also* ECF No. 79.

Mr. Holton has had ample time to pursue an independent survey of the land he claims to own via adverse possession, which would at least make clear for the Court the exact parcel of land at issue, but rather than take this foundational step, Mr. Holton instead asks this Court to travel back in time to the days of William Penn and credit his counsel's indeterminate declaration that he owns land from river to road. Indeed, Mr. Holton cannot survive summary

judgment by conclusively asserting that he and Mr. Buoncristiano used "the entire parcel" of 4087 Richmond for "twenty-one years" without putting forth any evidence establishing what land constitutes "the entire parcel." *See* ECF No. 79.

Yet, even if this Court were to move forward utilizing Plaintiff's counsel's vague assertions as the relevant boundaries of the land at issue, Mr. Holton has not provided with the necessary specificity how his use of this land was "actual, continuous, exclusive, visible, notorious, distinct, and hostile" throughout the duration of any twenty-one-year period (and in fact, Plaintiff's counsel's vague assertions regarding the relevant boundaries indicate Mr. Holton has not marked off the land in any distinctive way). *Ammerman,* 2014 WL 10795233, at *4. Pennsylvania courts have made abundantly clear, that the burden of proving *each element* of adverse possession falls on the plaintiff and that because adverse possession is such an extraordinary doctrine, it requires a heightened evidentiary standard. *Id.* Thus, for the reasons below, this Court finds that Mr. Holton's bare factual assertions related to his alleged use of 4087 Richmond do not create a genuine issue of material fact as to whether he adversely possessed it. ECF No. 80 at pp. 1–2. *Ammerman,* 2013 WL 11251543, at *2 (citing *Stevenson*, 195 A.2d at 270); *Jones*, 214 F.3d 402, 407 (3d Cir. 2000) (finding a party opposing summary judgment may not "rely on unsupported allegations but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial.").

Specifically, Mr. Holton has not pointed to any record evidence that he fenced in, marked the boundaries of, or otherwise notoriously claimed the "entire parcel" of 4087 Richmond. *See Flannery*, 786 A.2d at 259 ("An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his act….He must keep his flag flying and present a hostile front to all adverse pretensions. Broadly speaking, actual possession of land is dominion

over the land; it is not equivalent to occupancy."). In his supplemental briefing prior to Oral

Argument, Mr. Holton, through counsel, stated that a "chain linked fence was maintained by

[Mr. Holton] and before him by [Mr.] Buoncristiano." ECF No. 95 at p. 5. At Oral Argument,

Mr. Holton's attorney stated that Mr. Holton had erected a fence on 4087 Richmond, though

tellingly, he did not cite any record evidence to support this contention or provide any details that

would establish when or by whom the fence was built. ECF No. 98 at 9:13–21; *see generally*

ECF Nos. 95, 98. During Defendant Gatti's deposition in this case, Plaintiff's counsel inquired

about Defendant Gatti's knowledge as to the existence of a fence on the Richmond Street

boundary of 4087 Richmond, and Defendant Gatti acknowledged that at the time of Mr. Holton's

removal there was a fence located on the Richmond Street boundary of 4087 Richmond, and he

also explained that there was a locked gate on the fence and that someone had adhered

corrugated metal to the fence. *See* ECF No. 74 Ex. E at 54:14 –56:2. Mr. Gatti explained that the

City cut through the lock and removed the corrugated metal during the removal in October 2018.

*Id.* Though, when asked if he had knowledge about who the fence belonged to Defendant Gatti

stated "[i]t's on City property. It's now the City's fence…I do not know who erected it…" ECF

No. 74 Ex. E at 23:16–24:17; *See also*, *Id.* Ex. E at 60:20–63:24. Plaintiff's counsel's assertions

at Oral Argument and in briefings are not evidence in and of themselves, and a review of the

record indicates there is no evidence that Mr. Holton (or his predecessor Mr. Buoncristiano)

erected or maintained the fence along Richmond Street or any other boundary of 4087

Richmond. Moreover, the Holton Affidavit is silent as to the existence or maintenance of any

fence. *See generally* ECF No. 79. Further, Plaintiff's counsel's indeterminate declaration that

Mr. Holton owns land from river to road is in and of itself indicative of the fact that neither Mr.

Holton nor his predecessor clearly marked off, fenced in, or otherwise outwardly claimed the

land he now claims to have adversely possessed. Thus, this Court finds that the only thing the record shows with respect to a fence, is that at the time of removal, there was a fence located somewhere along the edge of the public road, Richmond Street, and the portion of the Frankford Creek Right-of-Way known as 4087 Richmond. The mere existence of a fence, on the edge of a public road, without *any* evidence as to when or by whom it was erected does not help to establish Mr. Holton's adverse possession claim.

At the summary judgment stage, where Mr. Holton "has the burden of proof at trial…[he] must set forth facts sufficient to establish the existence of [the] element[s] essential to [his] case." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal citations omitted). To do this, Mr. Holton "must rebut the motion with **facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda or at oral argument.**" *Id.* (emphasis added). Here, this Court finds Mr. Holton has failed to meet this burden with respect to establishing notorious use of the land at issue.

In any case, even if Mr. Holton could establish that there was a genuine issue of material fact as to whether his use of 4087 Richmond was notorious, he has also failed to provide any evidence, outside of the overbroad conclusory statements in the self-serving Holton Affidavit, as to the essential element of continuous use of the 4087 Richmond. *See* ECF No. 79. Specifically, Mr. Holton asserts that "[a]s early as 1990" he worked for " [Mr.] Buoncristiano, who operated an auto scrap yard…on the entire parcel of 4087 Richmond Street as part of his business…," and that he "[i]n 1994 [Mr. Holton] …leased the property and business" from Mr. Buoncristiano and "ultimately purchased the business and the property from [Mr.] Buoncristiano in 2004 [and]… continued to operate the business on the same parcel of land that [he] knew to be used by the previous owner until October of 2018." ECF No. 79 ¶ 2. Under Pennsylvania law, possessors in

privity may tack their shares in time to reach the necessary twenty-one years to establish adverse possession. *See e.g., Croyle v. Dellape*, 2003 PA Super 328, 832 A.2d 466 (Pa. Super. 2003). In this context, "[p]rivity refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law…[and] acceptance of a deed describing boundary lines confines the premises conveyed to the area within the boundaries, and such deed does not convey inchoate rights acquired by incomplete adverse possession." *Id.* In other words, when a party conveys an "inchoate claim for adverse possession in a deed…Pennsylvania courts have determined that 'the only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty that which is intended to be conveyed.'" *Zaloga*, 2011 WL 2938422, at *17 (citing *Baylor v. Soska*, 658 a.2d 743, 744–45 (Pa.1995)).

Outside of Mr. Holton's assertion in the Holton Affidavit that Mr. Buoncristriano operated his scrap yard business on 4087 Richmond, there is no evidence in the record to support privity between Mr. Holton and Mr. Buoncristriano with respect to 4087 Richmond. ECF No. 79 at ¶ 2. Moreover, the survey of the Holton Property, which Mr. Buoncristriano obtained in 2004 prior to selling the Holton Property to Mr. Holton does *not* include any portion of 4087 Richmond within its metes and bounds and neither does the Holton Property Deed itself. ECF No. 74 Ex. A; *Id.* Ex. B (describing the Holton Property's western boundary as "along the center line of the former Balfour Street"). Thus, even if this Court credited Mr. Holton's assertions that Mr. Buoncristiano also used 4087 Richmond in relation to his operation of the scrap yard business, absent *any* indication that Mr. Buoncristiano intended to convey that portion of land to Mr. Holton or included a description of  4087 Richmond during the conveyance, there is no basis upon which Mr. Holton can "tack" his time period allegedly using 4087 Richmond to Mr.

Buoncristiano's. *See Zaloga*, 2011 WL 2938422, at *17 (citing *Baylor,* 658 a.2d at 744–45).

Further, while the record indicates that Mr. Holton did, at some point and to some unspecified degree, use 4087 Richmond in relation to his scrap yard business,[13] there is no evidence, outside of Mr. Holton's blanket statements in the Holton Affidavit, that his (or Mr. Buoncristiano's) use actually involved continuous use of the "entire parcel" of 4087 Richmond for any twenty-one-year period.  ECF No. 79 ¶ 2. The record does support the claim that at various points Mr. Holton had scrap materials, trailers, and debris related to his scrap yard business located on 4087 Richmond, but the record is silent as to how long any of those items were on 4087 Richmond, where on 4087 Richmond they were located, how much of 4087 Richmond they actually took up, or any other facts that would demonstrate Mr. Holton's continuous use of the "entire parcel." In sum, there is nothing on the record to indicate that Mr. Holton's use of 4087 Richmond was continuous for any twenty-one-year term.

Finally, and completely fatal to Mr. Holton's adverse possession claim, Mr. Holton has also failed entirely to claim at any point that his purported use of 4087 Richmond was exclusive for any twenty-one-year period, and this Court finds, upon review of the record, that there are no facts upon which a reasonable juror could draw this conclusion. *See e.g.*, ECF 79 ¶ 10 ("My use was open, notorious [sic] continuous and hostile to the interest of the City"); ECF No. 98 at 12:3–11 (Plaintiff's counsel stating at oral argument that Mr. Holton's use of 4087 Richmond that "was open….notorious.…[and] continuous [and that] [a]ll of the necessary elements for adverse possession are there," but failing to assert Plaintiff's use was exclusive or provide any evidence to this effect); *see also Showalter*, 2010 PA Super 212, 9 A.3d at 235 ("One who claims

---

[13] There is also evidence that indicates that Mr. Holton rented a portion of 4087 Richmond to another individual named Kevin Creedon at some point between 2010 and 2018. ECF No. 74 at Ex. E at19:23–20:2.

title by adverse possession must prove actual, continuous, **exclusive**, visible, notorious, distinct and hostile possession of the land for twenty-one years. **Each of these elements must exist**; otherwise, the possession will not confer title.") (emphasis added). Absent any evidence or even claim that Mr. Holton's alleged use of 4087 Richmond was "exclusive" Mr. Holton cannot survive summary judgment, as exclusive use is an essential element of his adverse possession claim for which he bears the burden of proof. *Showalter*, 2010 PA Super 212, 9 A.3d at 235.

As the Third Circuit has articulated, "summary judgment is essentially **'put up or shut up'** time for the non-moving party," and Mr. Holton has quite frankly failed to "put up" evidence (credible, clear, definitive or otherwise) to support the necessary elements to prove he owns 4087 through adverse possession. *Berckeley Inv. Grp., Ltd.*, 455 F.3d at 201 (internal citations omitted) ("the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument…[and] if the non-moving party **has the burden of proof at trial, that party must set forth facts sufficient to establish the existence of an element essential to that party's case**."). Thus, for the reasons above, this Court finds, that no reasonable trier of fact could conclude Mr. Holton acquired ownership of 4087 Richmond through adverse possession, and accordingly, Mr. Holton does not have a legally cognizable property interest on which to sustain his Fifth Amendment takings

claim related to 4087 Richmond.[14,15]

### 2. Plaintiff's Fifth Amendment Claim Fails Because No Genuine Dispute of Material Fact Exists as to Whether 4087 Richmond is Municipal Property Held for Public Use and is Therefore Immune from Adverse Possession.

Even if Plaintiff Holton had been able to establish a material dispute of fact as to whether or not he met the elements of adverse possession with respect to 4087 Richmond, his claim would still fail because 4087 Richmond is immune from adverse possession as it is municipal property held for public use. Although under Pennsylvania law, generally an individual may adversely possess property owned by political subdivisions of the Commonwealth of Pennsylvania, such as the City of Philadelphia, "the high burden that adverse possessors must satisfy to obtain title under the doctrine" is maintained, and the rule is not without exception, and in this case, 4087 Richmond clearly falls within the scope of an exception. *Galdo*, 217 A.3d at

---

[14] Additionally, although this Court considered the facts set forth in the Holton Affidavit in the light most favorable to Mr. Holton in its analysis of Defendants' Motion for Summary Judgment, this Court also notes that, due to the fact that the Affidavit is, in part, unsupported and contradicted by the record, as well as incredibly conclusory, this Court is skeptical as to whether the Affidavit (ECF No. 79) was submitted for any purpose other than "defeating summary judgment," and would thus constitute a "sham affidavit." *Doherty v. Allstate Indem. Co.*, 734 F. App'x 817, 823 (3d Cir. 2018). "[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Id.* (citing *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

[15] Upon a careful review of the record, this Court finds that the broad conclusory statements put forth in the Holton Affidavit are not only vague and unsupported and thus fall well below the standard of clear, definitive, credible evidence, but are also, in part, contradictory to the record. Namely, in connection with his second Motion for a Preliminary Injunction against enforcement of the Cease Operations Order related to Mr. Holton's use of 4087 Richmond, Mr. Holton argued that "commencing in 2006," the City had been attempting to "acquire portions of real estate owned by [Mr.] Holton, ostensibly for development located at the Richmond Street/Delaware Avenue address," which is at odds with his contention that he and Mr. Buoncristiano continuously used the land for a period of twenty-one years beginning in 1990. ECF No. 25 ¶¶ 1, 4; *see Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 818 (Pa. Super. Ct. 1998) ("[I]n order for adverse possession to ripen into title, it is necessary that such possession had been **continuous and uninterrupted** for the full statutory period.") (emphasis added). Additionally, throughout the majority of this case, Mr. Holton maintained that he believed he was the owner of 4087 Richmond pursuant to the Holton Property Deed, which is, at least seemingly, inconsistent with his contention in the Holton Affidavit that he believed the City abandoned the Frankford-Creek-Right-of-Way. ECF No. 79 ¶ 12.

822 ("While we acknowledge the vast number of condemned properties that the City oversees, **we emphasize the high burden that adverse possessors must satisfy to obtain title under the doctrine** and observe that the City need only intervene to prevent adverse possessors on each municipal property at some point prior to the end of the twenty-first year after the purpose of the condemnation has lapsed") (emphasis added). More specifically, "an exception to this general rule is where the property is devoted to a public use," and this Court finds 4087 Richmond constitutes municipal property held for public use making it immune from adverse possession. *Id.* at 823–4 (emphasis added); *see also Reading Area Water Authority v. Schuylkill River Greenway Ass'n*, 627 Pa. 357, 100 A.3d 572, 580 (2014) (holding that for purposes of eminent domain, "[t]he question of what constitutes a public use is highly fact-dependent"); *see also Dornan v. Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834, 840 (1938) (opining that "judicial interpretation of 'public use' has not been circumscribed in our State by mere legalistic formulas or philological standards ...," but "has been left, as indeed it must be, to the varying circumstances and situations which arise, with special reference to the social and economic background of the period in which the particular problem presents itself for consideration").

It is undisputed that the Frankford Creek Right-of-Way, and in particular the section constituting 4087 Richmond, was obtained for public use by the City through eminent domain in the 1950s. ECF No. 74 Ex. G. According to Defendants the Frankford Creek Right-of-Way was "condemned for the purpose of redirecting the Frankford Creek and creating an adjacent floodway" and that these "floodways constitute open lands on either side of the creek specifically created and maintained along with the creek to provide for drainage, to allow space for the creek to flood and to foster vegetation that helps filter that [sic] the surface water that drains into the creek." ECF No. 93 at p. 4. Defendant Gatti, who served as Chief Engineer of the City of

Philadelphia and as President of the Board of Surveyors of the Philadelphia Streets Department during the relevant time period, testified to this effect at the Preliminary Injunction Hearing explaining that the public interest in keeping the Frankford Creek Right-of-Way clear to avoid the danger of polluting the City's drinking water. ECF No. 25 Ex. M at 38:15–39:13. Mr. Gatti, also testified in his deposition related to this case that 4087 Richmond has been "in continuous use by the City…since its purchase back in the 1950s." ECF No. 74 Ex. E at 23:10–14.

Mr. Holton contends in his Opposition to Defendants' Motion for Summary Judgment that "the City abandoned the Frankford Creek tract and later sought to reclaim it by removing [Mr. Holton]." ECF No. 80 at p. 1. Outside of this conclusory statement, there is no evidence on the record that suggests the City abandoned the Frankford Creek Right-of-Way or that it was not serving its intended public use purpose during the time periods material to this case. In relation to his Second Motion for a Preliminary Injunction to restrain L&I from enforcing the Cease Operations Order Mr. Holton contended that the Pennsylvania Department of Environmental Protection and the United States Environmental Protection Agency assured him "in writing that the property owned by [Mr. Holton] at the Frankford Creek Right of Way was free of contaminants, including the watercourse." ECF No. 25 Ex. P at ¶ 10. Crediting this representation, however, does not change this Court's determination because whether or not Mr. Holton actually ever contaminated the Frankford Creek Right-of-Way or Philadelphia's drinking water is a completely separate determination from whether or not the City has a legitimate public interest in creating and maintaining a clear floodway adjacent to the Delaware River, and, the record contains no evidence that speaks to the latter in support of Mr. Holton's assertion that it does not.

Thus, this Court finds that even considering the facts in the light most favorable to Mr.

Holton, no reasonable juror could conclude that the Frankford Creek Right-of-Way, and in particular the portion identified as 4087 Richmond, was not held by the City for public use during the entire time Mr. Holton claims to have been using it, and that accordingly, as a matter of law, that portion of land is immune from any adverse possession claim. *See Galdo*, 217 A.3d at 823–24; *see also Jones*, 214 F.3d at 407 (finding that in relation to a motion for summary judgment, the non-moving party may not "rely on unsupported allegations but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."); *Jersey Cent. Power & Light Co.*, 772 F.2d at 1109–10 ("finding that arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.").

### D. <u>Plaintiff Holton has Failed to Create a Genuine Dispute of Material Fact as to Whether He Acquired a Legally Cognizable Ownership Interest in 4087 Richmond via Ingress and Egress.</u>

The day before Oral Argument on Defendants' Motion for Summary Judgment, Mr. Holton submitted a Supplemental Response to Defendants' Motion for Summary Judgment (ECF No. 95). Within this briefing, Mr. Holton argued that both he and his predecessor, Mr. Buoncristiano, used 4087 Richmond as "ingress and egress" to the Holton Property, and that Richmond Street is the "primary access to [P]laintiff's…property" as well as the "principal entrance to [P]laintiff's business," and that the "[t]aking of ingress and egress is compensable as a [t]aking of the entire parcel under applicable law, characterized as 'inverse condemnation.'" ECF No. 95 at p. 5. Although Mr. Holton does not fully brief this argument, this Court will attempt to address it.[16] Mr. Holton appears to contend that his removal from 4087 Richmond

---

[16] To support this argument, Mr. Holton cites to *MCS Partners v. Lamson*, asserting that in that case, a trial judge "recognize[d] a taking where successive owners [were] deprived of ingress and egress for a period in excess of 21 years by tacking." 2012, Phila.Com Pl. LEXIS 38. In that case, the Philadelphia County Court of Common Pleas found that a temporary injunction was warranted to prohibit the

constitutes a taking insofar as it prevents ingress and egress to the property he owns via deed—
the Holton Property.

To some degree, Mr. Holton is correct as "the right of access is a constitutionally[-]
protected property interest, incidental to ownership or occupancy of the land, and may be denied
only under compelling circumstances." *York Rd. Realty Co., L.P. v. Cheltenham Twp.*, 136 A.3d
1047, 1054 (Pa. Commw. Ct. 2016). Pennsylvania courts have found that a "de facto taking" can
occur when a "property owner's access to the street upon which his property abuts and not every
impairment of access, as such, to the general system of public streets constitutes a taking which
entitles him to compensation. Such compensation must rest upon the property owner's showing
of a Substantial [sic] impairment." *In re Mitchell*, 209 Pa. Super. 288, 295, 228 A.2d 53, 57
(1967).

Here, however, this doctrine is inapplicable as Mr. Holton's property does not even abut
Richmond Street as evidenced by the Holton Property Deed. ECF No. 74 Ex. B. Moreover, even
if it were applicable, outside of the claims made by Mr. Holton's counsel in briefing and Oral
Argument, there is no evidence to suggest that Mr. Holton consistently used 4087 Richmond as
ingress and egress to the Holton Property. *Berckeley Inv. Grp., Ltd.*, 455 F.3d at 201 (internal
citations omitted) ("**the non-moving party must rebut the motion with facts** in the record and
**cannot rest solely on assertions made in the pleadings, legal memoranda, or oral
argument**") (emphasis added).  Further, Mr. Holton, through counsel, conceded at Oral
Argument that he has two other modes of ingress and egress to the Holton Property and has not
set forth *any facts* upon which a reasonable jury could find that he has suffered a "substantial

---

immediate erection of fences because the Plaintiff in that case had "made a case for actual possession"
based on a theory of adverse possession. *Id.* at *1–2. In the present case, as discussed at length above, Mr.
Holton has *not* made a case for actual possession through adverse possession.

impairment" related to his inability to use 4087 Richmond as ingress and egress to the Holton

Property. ECF No. 98 at 15:17–21; *In re Mitchell*, 209 Pa. Super. 288, 295, 228 A.2d 53, 57

(1967) (A takings claim premised on the government's taking of ingress and egress "must rest

upon the property owner's showing of a Substantial [sic] impairment.")*.*

E.  **Plaintiff's Claim for Conspiracy Fails as a Matter of Law Because He Has Failed to Establish the Unlawful Act Underlying the Alleged Conspiracy.**

Having determined that Defendants did not "take" any property owned by Mr. Holton,

and therefore that, Mr. Holton's takings claim cannot survive summary judgment, this Court

finds that no actionable claim of conspiracy against Defendants can be maintained because

Defendants were merely performing their public duties by securing what they believed to be (and

what the record shows undoubtedly is) City-owned property for its intended public use.

Specifically, this Court finds that Plaintiff's claim for conspiracy (Count I, Civil Conspiracy)

fails as a matter of law because, as set forth above, Plaintiff's Fifth Amendment Takings Claim

(Count II, Fifth Amendment Violation) has failed to survive summary judgment. *Boyanowski v.*

*Cap. Area Intermediate Unit*, 215 F.3d 396, 406 (3d Cir. 2000) ("[U]nder Pennsylvania law,

when a party fails 'to sufficiently allege in [other] counts any unlawful act or unlawful means'

the conspiracy claim must also fail when it is based on these claims.") (citing *Raneri v. DePolo*,

441 A.2d 1373, 1376 (Pa.Cmwlth.1982).

To establish a claim for conspiracy pursuant to Title 42 of the United States Code Section

1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a

deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."

*Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (citing *Gale v.*

*Storti*, 608 F.Supp.2d 629, 635 (E.D. Pa. 2009)). Alleging an actual agreement between co-

conspirators is a crucial element of a conspiracy claim under § 1983, and thus "[t]o state a claim

for conspiracy under § 1983, plaintiff must make 'factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events. *Hammond v. Creative Financial Planning Org.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992) (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974).

In the Second Amended Complaint, Mr. Holton contends that "[Defendant ] Henon, in concert with Defendants Jefferson and Gatti, conspired to unlawfully deprive Plaintiff of a large portion of the Holton Property without payment of just compensation…[and that] to effect [sic] the conspiracy…Defendants relocated the lot lines of the Holton Property, took exclusive possession thereof, removed Plaintiff under threat of arrest for defiant trespass, removed valuable scrap metal consisting of damaged motor vehicles, parts and other components, and exercised dominion and control of the Holton Property on behalf of the City of Philadelphia." ECF No. 21 ¶ 14. Plaintiff Holton further maintains that after the alleged relocation of lot lines, the "illegal taking" was carried out in "phases by issuance of citations for violations of regulatory ordinances, followed by orders to cease operations…" related to his use of the land that he claimed to have originally owned by deed, but that was allegedly taken from him through the illicit relocation of lot lines. ECF No. 21 ¶ 17.

In the Holton Affidavit, Mr. Holton reemphasizes his conspiracy argument, stating that "the central point of [his] lawsuit is the conspiracy between Mr. Henon and other City officials to take [his] property..." ECF No. 79 ¶ 16. Mr. Holton further explains his allegations stating that Mr. Henon "is currently on criminal trial in the Eastern District of Pennsylvania for abuse of his office in using City Departments to punish his enemies and the enemies of his co-defendant John Dougherty…[and that he] anticipate[s] that Mr. Henon [if deposed] would acknowledge that he

was instrumental in having the Department of Licenses and Inspection remove me from the property." ECF No. 79 ¶¶ 16 –17. At Oral Argument, Plaintiff's counsel provided further clarification to the basis of Mr. Holton's conspiracy claim, arguing that "because Mr. Henon made some vendetta, personal vendetta, to get rid of the {quote} {unquote} "junkyards" in the neighborhood, they [the Defendants] began through L&I, to cite him for violations. This is exactly the same thing that Mr. Henon was convicted of in front of Judge Schmehl in this federal courthouse." ECF No. 98 at 16:10–19.

Outside of these speculative assertions made by Mr. Holton and his counsel, however, there is no record evidence that supports a finding that the lot lines of Mr. Holton's property were relocated at all, at any time, by anyone, or that Mr. Henon's separate criminal case is in any way linked to the present case or the moving of lot lines. There is likewise no evidence that the relevant City ordinances or the L&I violations cited to Mr. Holton pursuant to City ordinances were in any way manipulated (unless City officials merely enforcing City ordinances in line with the exact purpose they were enacted to address is equivalent to manipulation), and in fact, as the procedural history of this case outlines, the validity of these L&I violations was tested and upheld on multiple occasions by the L&I Review Board and state court. By contrast, the record demonstrates that the title-description for the Holton Property has not changed since Mr. Holton's purchase of the Holton Property in 2004. *See e.g.,* ECF No. 21 Ex. B.  Indeed, Mr. Holton has conceded this in as much as he has deserted his lot line argument and replaced it with an adverse possession claim, for which there are no associated "lot lines," as his description of the land he claims to own through adverse possession consists, essentially, of nothing more than a description of what his eyes can see from river to road. *See e.g.*, ECF Nos. 72, 80. In fact, at the Sanctions Hearing held before this Court on September 7, 2021, Plaintiff's counsel represented

to the Court that "Mr. Holton believed when he bought the property in 1991[17] [sic] that he bought everything, the piece that he is currently using, and the piece that the [City] has called the Frankford Creek right of way," despite the fact that the metes and bounds in the Holton Property Deed are written in language a lay-person could understand, and there is no indication Mr. Holton's predecessor represented to Mr. Holton that he was selling him any land outside of the deed. *See* ECF No. 72 at 6:16–23; *see also* ECF No. 21 Ex. A. Specifically, in addition to providing the technical metes and bounds, the Holton Property Deed describes the Holton Property's western boundary as "along the center line of the former Balfour Street," and makes no mention of Richmond Street. ECF No. 21 Ex. A.

Despite switching gears to an adverse possession theory, counterintuitively on October 15, 2021, Plaintiff's counsel filed a Motion to Defer Consideration of Defendants' Motion for Summary Judgment based largely on the grounds that "Plaintiff [Holton] should be entitled to discovery from [D]efendant Henon" related to the Plaintiff's conspiracy claim including the alleged "manipulation of officials of the Department of Licenses and Inspections to falsify ordinance violations and issue cease operations orders predicated thereon." ECF No. 75 at p. 3. The logic outlined in the Second Amended Complaint is that the L&I violations and cease operations orders were faulty because the lot lines of the Holton Property had been changed pursuant to an alleged conspiracy. Thus, once the lot line argument has been disproved by the record and abandoned by Plaintiff, there is no basis upon which Plaintiff Holton can sustain an argument that there was a conspiracy to "falsify ordinance violations and issue cease operations orders predicated thereon" in relation to 4087 Richmond. *Id.*

In any case, to the extent Mr. Holton believed he had purchased 4087 Richmond when he

---

[17] Both parties agree Mr. Holton bought the Holton Property in 2004 *not* 1991. *See* e.g., ECF No. 79 at ¶ 4.

purchased the Holton Property it is conceivable that, as a lay-person with a mistaken understanding of ownership, he genuinely believed the issuance of L&I violations as to his use of 4087 Richmond and ultimate removal from that portion of the Frankford Creek Right-of-Way were part of an illegal conspiracy to force him off land the land he mistakenly thought he owned (but that in reality, was outside the scope of the Holton Property Deed). Yet, what is bewildering, is that Mr. Holton's attorneys ran with this false notion from the beginning without ever even obtaining a survey of the relevant land. Indeed, one begins to wonder if there was, even at this case's inception, an awareness of this lack of ownership and whether it was because the City proceeded with license violations rather than eviction, that Mr. Holton's counsel believed the best course of action was to move forward on the contention Mr. Holton owned, by deed, the land he was removed from despite there being absolutely no evidence to support this claim. Revealingly, current Plaintiff's counsel, who entered the case long after its inception, appears to have realized that the deed-ownership approach has no basis in fact, and that, thus, adverse possession is the only avenue left. *Compare* ECF No. 21 *with* ECF No. 80. Transitioning into an adverse possession argument, however, then also takes the foundation out of the "conspiracy to relocate property lines" allegation and consequently also out of the conspiracy to "falsify ordinance violations and issue cease operations ordinances predicated thereon" allegation. ECF No. 21 ¶¶ 14–17. A City Councilman's promise to constituents to remove junkyards from the area is not actionable whether or not he enlisted the help of others to do so. In fact, it is commendable if a City Councilman seeks to remove scrap metal, debris, and trailers located on a floodway owned by the City. It simply does not follow that because "Mr. Henon…was convicted…of bribery charges…" in a completely separate criminal matter, a conspiracy to deprive Mr. Holton of his constitutional rights through the illegal taking of his property exists in

the present matter. ECF No. 98 at 10:16–17.

Finally, to the extent Mr. Holton maintains that he is entitled to depose Defendant Henon at this point in the case, this Court finds such contention is without merit for the following reasons. As previously mentioned, on October 15, 2021, Plaintiff's counsel filed a Motion to Defer Consideration of Defendants' Motion for Summary Judgment based largely on the grounds that "Plaintiff [Holton] should be entitled to discovery from [D]efendant Henon" related to the Plaintiff's conspiracy claim including the alleged "manipulation of officials of the Department of Licenses and Inspections to falsify ordinance violations and issue cease operations orders predicated thereon." ECF No. 75 at p. 3. This Court denied that Motion on October 21, 2022. ECF No. 78.

Mr. Holton's conspiracy claim was premised, at the beginning of this case, on the assertion that Defendant Henon "in concert with Defendants Jefferson and Gatti" conspired to unlawfully "relocate[] the lot lines" of the Holton Property and then, after "issu[ing]…citations for violations of regulatory ordinances, followed by orders to cease operations…," removed Mr. Holton from land he claimed to own by deed. *See* ECF No. 21 ¶¶ 13–17; *Id.* ¶ 16 ("At all times material to Count One [Civil Conspiracy], Plaintiff [Holton] owned the Holton property in fee, free and clear, pursuant to a Deed dated November 23, 2004, recorded May 16, 2004…attached hereto."). Yet as the case developed, it became clear to everyone involved, including evidently Mr. Holton's new counsel, that there is no evidence to support the contention that Mr. Holton was removed from *any* land he owned by deed or that the lot lines stated on the Holton Property Deed had *ever* changed (through nefarious means or otherwise). Accordingly, by the time Mr. Holton raised the issue of further discovery as to Defendant Henon (i.e., in Plaintiff's October 15, 2021 Motion to Defer Summary Judgment), it had also become clear to this Court that should

Defendant Henon be deposed there would be nothing he could offer relevant to the conspiracy claim because Mr. Holton himself had already abandoned the argument that any lot lines were relocated[18] or that Mr. Holton was removed from any land he owned by deed and replaced it with an adverse possession argument. *See e.g.,* ECF No. 72 at 19:10–24 (Plaintiff's counsel acknowledging at the September 7, 2021 Sanctions Hearing that Mr. Holton was proceeding on a theory of adverse possession); *see also* ECF No. 80 (further demonstrating a complete abandonment of any claim related to the relocation of lot lines and proceeding on a theory of adverse possession). Had Mr. Holton, at the time he requested additional discovery on Defendant Henon in connection to his conspiracy claim, provided *any* indication that the lot lines of the land he owned by deed had been changed or that any aspect of his conspiracy claim had merit, this Court would have likely allowed the deposition of Defendant Henon.[19] As it stood then and

---

[18] Despite seemingly abandoning the lot line argument and replacing it with a theory of adverse possession, Defense counsel counterintuitively appears to maintain the argument that the issuance for violations of regulatory ordinances associated with Plaintiff's use of 4087 Richmond were "falsified" as part of the alleged conspiracy, even though this claim is facially dependent on the lot line argument. *See e.g.,* ECF No. 75 at p. 3.

[19] Additionally, at Oral Argument Plaintiff Holton's counsel represented he has been precluded from taking Defendant Henon's deposition due to the representation that Defense counsel would raise the high-ranking official defense should a deposition of Mr. Henon be sought. *See* ECF No 98 at 10:15–24 (Plaintiff's counsel stating, "I've on numerous occasion [sic], asked to take the deposition of Mr. Henon…I've been refused the opportunity to take Mr. Henon's deposition because {quote} "he was a high[-]ranking city official" and therefore I wasn't entitled to take it without taking all the underlying depositions. So I did take the underlying depositions and I'm still refused the opportunity to take Mr. Henon's deposition and he is no longer a high ranking city official. He resigned last week."). Although this Court's denial of Mr. Holton's request for additional discovery on Mr. Henon related to his conspiracy claim was based entirely on this Court's determination that such discovery was neither relevant nor proportional to the needs of the case, this Court notes that during the time period relevant to this case, Mr. Holton was a high-ranking city official and would have been exempt from deposition absent a showing of extraordinary circumstances. *See Buono v. City of Newark*, 249 F.R.D. 469, 470 n. 2 (D.N.J. 2008) ("Absent extraordinary circumstances, good cause exists to preclude the deposition of a high[-]level government official because there is a public policy interest in ensuring that high level government officials are permitted to perform their official tasks without disruption or diversion… To determine if extraordinary circumstances exist, courts consider whether or not the party seeking the deposition has shown: (1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; (3) the deposition would not significantly

as it stands now, however, Mr. Holton's claim for conspiracy rests primarily on facts that he has effectively conceded are not true (i.e. that he ever owned any portion of 4087 Richmond via deed). *See generally* ECF No. 80.

## IV.   <u>CONCLUSION</u>

For the reasons stated above Defendants Motion for Summary Judgment (ECF No. 74) is hereby **GRANTED**.

**BY THE COURT:**

DATED: <u>March 9, 2022</u>                    <u>/s/ *Chad F. Kenney*</u>

CHAD F. KENNEY, J.

---

interfere with the ability of the official to perform his government duties; and (4) that the evidence sought is not available through any alternative source or less burdensome means."). As the record stands, there is no evidence to suggest that Mr. Holton's counsel would have been able to establish that Mr. Henon's testimony would have been necessary to obtain relevant information, that Mr. Henon had first-hand information that could not reasonably obtained from other sources, that such testimony was *essential* to Mr. Holton's case, or that such evidence would have been unobtainable from less burdensome means. S*ee e.g.*, ECF No 98 at 10:15–24 (discussing Plaintiff's counsel's failure to serve interrogatories on Defendant Henon).